SEWAGE SERVICE CONTRACT

CITY OF DETROIT — CITY OF HIGHLAND PARK

THIS AGREEMENT is made this _____ day of _____, 1982, between the CITY OF DETROIT, a municipal corporation organized under the laws of the State of Michigan, by its Board of Water Commissioners (hereinafter referred to as the "BOARD"), party of the first part, and the CITY OF HIGHLAND PARK, a municipal corporation organized under the laws of the State of Michigan (hereinafter referred to as "HIGHLAND PARK"), party of the second part.

WITNESSETH:

WHEREAS, the BOARD operates a wastewater treatment works which is composed of a sewage treatment plant, located in the City of Detroit at 9300 West Jefferson Avenue, along with certain appurtenant interceptors and pumping stations, located principally at various places within the City of Detroit, but some of which are located outside the City of Detroit, which are necessary to transport the sewage to the treatment plant, and

WHEREAS, the BOARD has at various times entered into contracts with a number of suburban communities whereby the BOARD has agreed to make available its treatment works to provide sewage treatment and disposal service to the suburban communities, and the suburban communities have agreed to pay rates established by the BOARD for providing such service, and

WHEREAS, these sewage service contracts are for the protection of the public health, safety and welfare of the people in the community, in the county, in the state, in the nation and neighboring nations, and

RECEIVED by MCOA 2/2/2016 5:13:43 PM

WHEREAS, the BOARD has provided wastewater treatment and disposal service to the CITY OF HIGHLAND PARK without a formal written contract, the parties having been guided in their legal relationship by the Opinion of the Michigan Supreme Court in the matter entitled City of Detroit v City of Highland Park, 326 Mich 78 (1949), and

WHEREAS, the calculation and allocation of costs of providing sewage treatment and disposal service, including transportation of the sewage, have been the subject of some disagreement between the BOARD and the suburban communities, and the rates and charges resulting from the calculation and allocation of costs have been the subject of litigation, and

WHEREAS, in an effort to avoid further litigation about rates and charges for sewage treatment and disposal service, including transportation of the sewage, the BOARD and all of the suburban communities then under contract for such service, entered into a Settlement Agreement which was filed in the United States District Court for the Eastern District of Michigan on July 19, 1978, (hereinafter referred to as the 1978 Settlement Agreement) and

WHEREAS, the 1978 Settlement Agreement contains rate making principles which shall govern the methods of calculating and allocating costs and the resultant rates and charges, and the Settlement Agreement also requires that all service contracts shall be amended to incorporate these rate making principles therein, and

WHEREAS, an Amended Consent Judgment was entered in United States District Court Civil Action Numbers 77-71100 and 80-71613 which required all communities and agencies under contract with the City of Detroit for sewage treatment services to

2

RECEIVED by MCOA 2/2/2016 5:13:43 PM

enact and diligently enforce sewer use and industrial waste control ordinances consistent with and at least as stringent as those of the City of Detroit, and

WHEREAS, a Settlement Agreement filed with the United States District Court for the Eastern District of Michigan on August 26, 1980 resolved matters of rates, allocation of the costs of the interceptor collapse at the intersection of Hayes and 15 Mile Road, User Charge System, Industrial Cost recovery and other matters related to rates effective January 17, 1980, (hereinafter referred to as the 1980 Settlement Agreement) and

WHEREAS, a Settlement Agreement filed with the United States District Court for the Eastern District of Michigan in May, 1982 resolved matters of rates, allocation of the costs of the interceptor collapse in the Edison Corridor, Sterling Heights, Michigan; amended in part, paragraph 5B of the 1978 Rate Settlement Agreement dealing with the principle of maximum debt financing in connection with application of the additional bond test required by Section 10 of Ordinance 517-E of the City of Detroit, and other matters related to rates effective during the fiscal year July 1, 1981 through June 30, 1982 (hereinafter referred to as the 1982 Settlement Agreement), and

WHEREAS, the United States Environmental Protection Agency has given the Board approval under the Step 3 grants provisions of Public Law 92-500 and Public Law 95-217 conditioned upon the signing of the service agreements between the Board and each contract customer providing for implementation of satisfactory user charge systems, sewer use ordinances or regulations and the Board's Industrial Cost Recovery System by each community served by the BOARD, and

3

RECEIVED by MCOA 2/2/2016 5:13:43 PM

WHEREAS, the Court in Civil Action No. 77-71100 issued an Order Re Service Contract Amendments dated April 15, 1982 requiring the parties to amend their contracts as aforesaid,

NOW, therefore, in consideration of the promises and the covenants herein made, the parties hereto agree that they should continue to be guided by the principles set forth in the Michigan Supreme Court decision in The City of Detroit v City of Highland Park, 326 Mich 78 (1949), referred to above, but except as provided therein, in order to make uniform the terms and conditions of service between Detroit and all suburban communities, the parties agree as follows:

    1.   HIGHLAND PARK shall pay the BOARD for sewage treatment and disposal service at such rates as the BOARD may establish from time to time. The BOARD shall review the rates annually and shall adjust them as may be necessary to maintain a proportionate distribution of costs among user classes, and to generate sufficient revenue to pay the total costs of the sewage system. Rate adjustments shall be determined according to the following principles:

    A.   Revenue Requirements. Revenue requirements shall be based upon the finances required to meet all operating, maintenance, capital requirements including debt financing and coverage, and any obligations imposed by law, and shall reflect not only recent cost experience but also a recognition of the reasonably estimated future cost levels during the period for which the rates are being established.

4

RECEIVED by MCOA 2/2/2016 5:13:43 PM

(1)   Operating and maintenance expenses of
the system.

    (a)   Operating and maintenance expenses
shall include replacement of pro-
cess equipment, accessories, or
appurtenances which are necessary
to maintain the capacity and per-
formance for which the treatment
works is designed and constructed.

    (b)   The rate for operation and mainte-
nance expenses, including replace-
ment, shall include a factor to be
applied to the volume of sewage
delivered by HIGHLAND PARK, and
shall also include surcharges to
be applied to the discharges of
individual users whose loadings of
specified pollutants exceed normal
loadings. The BOARD shall specify
the pollutants to be surcharged,
and shall define normal loadings
of these pollutants.   The rate
shall conform to Section 204(b)(1)
(A) of Public Law 92-500, as
amended, and regulations of the
United States Environmental Pro-
tection Agency (hereinafter refer-
red to as the U.S. EPA), being 40
CFR, 35.929 through 35.929-3.

(2)   Maximum Debt Financing.   The BOARD
shall obtain capital funds for the
expansion, renewal and reconstruction

5

RECEIVED by MCOA 2/2/2016 5:13:43 PM

of common use or solely suburban use
major capital assets or improvements
from the issuance of revenue bonds, to
the maximum extent possible together
with maximum use of coverage monies
generated thereby.  "Coverage" means
the excess of revenues required to meet
the coverage test over revenue require-
ments determined without respect to the
coverage test.  "Coverage Test" means
the requirement imposed by Section 10
of Ordinance 517-E of the City of
Detroit which provides that in the year
of issuance of revenue bonds of stand-
ing equal to those presently outstand-
ing, estimated net revenues shall be
equal to at least one and one-half (1
1/2) times the largest amount of com-
bined principal and interest to fall
due in any future operating year on any
bonds then payable out of the net reve-
nues of the system, including such
additional bonds then being issued.
Detroit shall apply the principle of
maximum debt financing set forth herein
consistent with an interpretation of
the additional bonds test which incor-
porates the following principles:

> (a)   Estimated investment income
>       of the DWSD will not be in-
>       cluded in determining
>       revenues.

6

RECEIVED by MCOA 2/2/2016 5:13:43 PM

(b) Future operating and main-
tenance expenses estimated to
result from the addition of
capital facilities for which
bonds are issued, shall be
included as an expense in
determining net revenues only
with respect to the periods
in which it is reasonably
estimated that they will be
incurred. The parties
acknowledge that Detroit can
comply with the additional
bonds test by setting future
rates sufficient to defray
estimated future operation
and maintenance expenses in
the periods in which they
will be incurred.

(3) Depreciation. User charges shall not
reflect a charge for the depreciation
of physical assets, which together with
a rate of return and provision for
operation and maintenance expense would
generate revenues in excess of system
revenue requirements including coverage.

B. Uniform Allocations of Costs Incurred. The
recovery of costs incurred by the system
shall be accomplished through the institu-
tion of rates which assign, allocate and
apportion such costs to all ratepayers on

7

RECEIVED by MCOA 2/2/2016 5:13:43 PM

the basis of principles uniformly applicable
to all, it being the intention of the par-
ties that such rates (whether designed on
the utility or cash basis) will, as nearly
as is practical, recover from each customer
class the respective costs of providing ser-
vice regardless of the ratepayer's loca-
tion.   In particular:

(1)   If rates are based upon a system of
      charging a percentage rate of return on
      net asset or capital structure rate
      base, (through the use of the so-called
      utility basis of rate making) there
      shall be no differential in the rate of
      return charged to customers residing or
      located within the City of Detroit and
      customers residing or located without
      the City of Detroit.   Nothing herein
      contained shall prohibit the BOARD from
      designing its rates on the so-called
      cash basis.

(2)   If rates for the transportation charge
      to customers served by the Oakland-
      Macomb interceptor are based upon the
      utility basis with a percentage rate of
      return, such rate of return shall be
      the same as the rate of return charged
      to other customers of the system.
      Nothing contained herein shall prohibit
      the BOARD from employing the cash basis
      of ratemaking, including ratemaking for

8

RECEIVED by MCOA 2/2/2016 5:13:43 PM

customers served by the Oakland-Macomb interceptor. "Transportation Charge" means the aggregate of all costs assigned or allocated to contracting parties served by the Macomb-Oakland interceptor which are not costs incurred for service in common with other customers, including all costs of operation and maintenance, depreciation, and, to the extent rates are based on a rate of return or other charge based on plant value, the cost resulting from application of such charge or rate to the inceptor and related equipment.

(3) Should the cash basis be used in any future rate study, the allocation of debt service costs to all customers or facilities shall be based upon the system weighted average interest rate at the time.

(4) Surcharges shall be utilized to recover incremental operating, maintenance and replacement costs incurred in treating sewage which, at the point of discharge, contains specified pollutants in concentrations exceeding those of normal domestic sewage, as defined by the BOARD.

(5) All costs other than those costs recovered by surcharges as hereinbefore set forth, may be recovered by volume

9

RECEIVED by MCOA 2/2/2016 5:13:43 PM

alone, or by volume and surcharges, or
by any method which provides a distri-
bution of costs reasonably related to
the service provided.

C. Following the computation of rates for cus-
tomers residing or located within the City
of Detroit and customers residing or located
without the City of Detroit pursuant to the
principles set forth in this contract, such
rates shall be further adjusted by deducting
from the revenues to be charged customers
within the City of Detroit and adding to the
revenues to be charged customers without the
City of Detroit, and making appropriate
adjustments of the rates for sewage service
to be charged to such customers, an amount
determined as follows:

(1) For the fiscal year 1981 (July 1, 1980
through June 30, 1981), such amounts
shall be the sum of $1,102,500. For
each fiscal year thereafter, such
amount shall be increased by 5%, deter-
mined upon a compounded basis. For
example, the amount for fiscal 1982
shall be the sum of $1,157,625. For
fiscal 1983, this amount shall be the
sum of $1,215,506, and similarly for
succeeding fiscal years.

(2) This payment shall be made, and rates
so adjusted as a payment to reflect the
cost of indirect benefits or services

10

RECEIVED by MCOA 2/2/2016 5:13:43 PM

provided by the City of Detroit to the
BOARD for common use facilities within
the City of Detroit, such as police and
fire protection, the risk of tort lia-
bility, the loss of tax base that the
City loses as a result of the BOARD's
tax exemption, and the fact that the
suburbs receive sewage treatment with-
out having to devote any of their land
to a tax free utility.

(3)   In the event that the City of Detroit
shall at any time hereafter render
billings or accounting statements for
indirect services to the BOARD such as
police and fire protection, risk of
tort liability, loss of tax base or any
other type of contribution in lieu of
taxes with the effect that such bill-
ings or statements become part of the
BOARD budget for ratemaking purposes,
then the amount of such charges allo-
cated or apportioned to the contracting
customers shall be deducted from the
amount determined pursuant to subsec-
tion 5.C.(1) above, and shall in no
event exceed the amount determined pur-
suant to subsection 5.C.(1) above.

D.   The amount charged to the suburbs for pay-
ment for indirect benefits and services set
forth in Paragraph 5.(c) above shall be
allocated among suburban customers in the

11

RECEIVED by MCOA 2/2/2016 5:13:43 PM

same manner in which treatment costs are
allocated.

E.  The BOARD may continue to include in its
rates charges for direct services which the
City currently renders and bills to the
BOARD.  Such "direct services" shall be
limited to the kind of services historically
provided by offices, departments or agencies
of the City of Detroit such as various kinds
of licenses and permits, electricity, steam,
water, paving, vehicles, and rubbage pickup;
the Ombudsman, the cost of which will be
allocated between the customers within the
City of Detroit and the customers without
the City of Detroit based upon the propor-
tionate number of complaints or inquiries by
each such class of customers; and those
which were included in the BOARD's budget
for fiscal 1978.

No additional charges may be made for
"direct services" provided by other or addi-
tional City offices, departments and/or
agencies without the prior agreement of the
contracting parties.  Such agreement shall
not be unreasonably denied or delayed should
it appear that the particular service or
services result in a legitimate, direct
benefit to the system and its customers.

F.  Whenever the BOARD shall undertake any study
which may result in the revision of rates,

12

RECEIVED by MCOA 2/2/2016 5:13:43 PM

including any study relating to industrial
cost recovery charges, user charges, or
other matters relating to the requirements
of P. L. 92-500, 33 U.S.C.A. 1251 et seq. as
amended, it shall notify the appropriate
agents of Oakland, Wayne and Macomb Coun-
ties, and its other contract customers of
such study, and shall, during the course of
any such study, make available, upon
request, to such contract customers, their
agents, consultants and attorneys, any
interim or preliminary reports and final
reports prepared in the course of such study.

In conjunction with furnishing the aforesaid
reports, the City of Detroit and its consul-
tants at the request of the contracting par-
ties will have a conference with the con-
tracting parties and representatives in
order to explain and discuss the reports
being provided.  The requesting party shall
reimburse the BOARD for any out-of-pocket
costs incurred in meeting such request.
Nothing contained herein shall require the
City of Detroit to undertake any activity
which may impede it in complying with the
requirements of the consent judgment dated
September 14, 1977 or other orders of the
Court entered pursuant to P. L. 92-500, 33
U.S.C.A. 1251, et seq, as amended.  In addi-
tion, such presentation will be done in a
manner, place, and time mutually convenient

13

RECEIVED by MCOA 2/2/2016 5:13:43 PM

to all of the parties involved including the
City of Detroit's consultants.

2.   HIGHLAND PARK agrees that it shall adopt and
enforce rules and regulations to implement and
maintain a revenue system whereby, as a minimum, the
operation, maintenance and replacement portion of the
BOARD's rates are distributed proportionately to each
user or user class that is tributary to the BOARD's
treatment works.  In particular, these rules and regu-
lations shall provide that surcharges established by
the BOARD for the recovery of incremental operation,
maintenance and replacement costs of treating extraor-
dinary concentrations of sewage, shall be billed to
and collected from individual firms as identified by
the BOARD in its billings.  These rules and regula-
tions shall conform to Section 204(b)(1)(A) of Public
Law 92-500, as amended, and regulations of the United
States Environmental Protection Agency (hereinafter
referred to as the U.S. EPA), being 40 CFR, 35.929
through 35.929-3, and shall achieve a proportionate
User Charge System which is effective throughout the
BOARD's service area.  The rules and regulations shall
provide for monitoring of commercial, governmental and
industrial users and shall be consistent with the mon-
itoring rules and regulations of the City of Detroit.
The Board shall have the right under said rules and
regulations to audit all monitoring activities includ-
ing the right to perform monitoring tests itself to
verify the accuracy of monitoring results.

14

RECEIVED by MCOA 2/2/2016 5:13:43 PM

3.   HIGHLAND PARK agrees that it shall adopt and enforce rules and regulations pertaining to the use, design and construction of sewers, and the discharge of industrial or commercial wastes into sewers, where such sewers are tributary to the BOARD's treatment works.  Such rules and regulations shall be consistent with and at least as stringent as all applicable provisions of the pertinent ordinances adopted by the City of Detroit, these being the 1979 amendments to Chapter 56, Article 1, and Chapter 56, Article 6, of the Municipal Code of the City of Detroit as they may be adopted and amended from time to time.  In the event any municipality or other governmental unit shall fail to adopt an ordinance as required herein, or shall fail to diligently enforce the same, the BOARD shall take appropriate action which may include suit in an appropriate court of general jurisdiction alleging such municipality's failure to adopt or enforce an ordinance, and following a hearing on the merits, should the court find that the allegations in the BOARD's petition are true, it is agreed that such court may, in such instance, grant appropriate injunctive relief against said municipality or any individual discharger there; terminate the municipality's contractual right to discharge waste waters into the BOARD's system and/or to grant the BOARD such other relief as may be appropriate under the circumstances.  These actions shall enable the BOARD to:

15

RECEIVED by MCOA 2/2/2016 5:13:43 PM

A. Deny or condition new or increased contributions of pollutants or changes in the nature of pollutants, to the waste collection system by Industrial and Commercial Users. The terms "Industrial and Commercial" user shall mean those users defined in Section 56-6-3(H) and (P) of Detroit Ordinance No. 353-H of Chapter 56 of Article 6 passed on November 7, 1979 and as may be amended from time to time.

B. Require compliance with applicable current and future National Pretreatment Standards and other more restrictive requirements as may be imposed by the BOARD promulgated by the U.S. EPA under the Federal Water Pollution Control Act, 33 U.S.C. 1251 et seq.

C. Control, through permit, contract order, or similar means, the contribution to the waste collection system by Industrial and Commercial Users to ensure compliance with paragraph B above.

D. Require the development of compliance schedules by Industrial and Commercial Users for the installation and facilities required to meet applicable National Pretreatment Standards and other more restrictive requirements as may be imposed by the BOARD.

16

RECEIVED by MCOA 2/2/2016 5:13:43 PM

E.   Require the submission of notices and self-
     monitoring reports from Industrial and Com-
     mercial Users to assess and assure compli-
     ance with National Pretreatment Standards
     and other more restrictive requirements as
     may be imposed by the BOARD.

F.   Carry out all inspection, surveillance and
     monitoring procedures necessary to deter-
     mine, independent of information supplied by
     Industrial and Commercial Users, compliance
     or noncompliance with applicable National
     Pretreatment Standards and other more
     restrictive requirements as may be imposed
     by the BOARD. It being further understood
     that the BOARD may contract with qualified
     parties to carry out the inspection, sur-
     veillance and monitoring procedures of this
     paragraph.

G.   Seek injunctive relief for noncompliance
     with National Pretreatment Standards and
     other more restrictive requirements as may
     be imposed by the BOARD.

H.   Require Industrial and Commercial Users to
     install containment facilities to protect
     the treatment works from accidental spills
     of critical or hazardous materials.

4.   This amendment shall inure to the benefit of
and be binding upon the respective parties hereto,
their successors and assigns.

RECEIVED by MCOA 2/2/2016 5:13:43 PM

5.   This amendment shall take effect upon its adoption and execution by the respective parties hereto, its approval by the City Council of the City of Detroit, and its approval by the appropriate authorities of the City of Highland Park.

18

RECEIVED by MCOA 2/2/2016 5:13:43 PM

Witness (Highland Park)

_Jean Green_ (signed)

_Jean Green, City Clerk_ (typed)

Witness (Highland Park)

_Leonard Roberts_ (signed)

_Dep City Clerk_ (typed)

Witness (Board of Water Commissioners)

_Phyllis Fuller_ (signed)

PHYLLIS FULLER (typed)

Witness (Board of Water Commissioners)

_Rita L. Madison_ (signed)

RITA L. MADISON (typed)

FINANCE DEPARTMENT

No._____ Date_____ I hereby certify that an appropriation has been made to cover the expense to be incurred under this contract.

_____
Chief Accounting Officer

The original and _____ copies of this contract have been duly executed.

This contract was confirmed by the Detroit City Council

_____    _____
      Date                Page

HIGHLAND PARK
A Michigan Municipal Corporation

By _Robert B Blackwell_ (signed)

Robert B Blackwell, Mayor (typed)

Title _____

Address _____

_____

_____

Telephone Number _____

OK as to form

_____
Assistant City Attorney

THE CITY OF DETROIT
A Michigan Municipal Corporation, by its Board of Water Commissioners

By _Charlie J Williams_ (signed)

CHARLIE J. WILLIAMS, DIRECTOR (typed)

Title _____

Address  735 Randolph Street

         Detroit, Michigan 48226

Telephone Number   313-224-4701

LAW DEPARTMENT

Approved as to form and execution subject to approval by the Purchasing Director and the City Council.

_____
Corporation Council

Purchasing Department for the City of Detroit

_____
Purchasing Director

ATTEST _Jeffrey D Blair_
      JEFFREY D. BLAIR
      DEPUTY CITY CLERK

RECEIVED by MCOA 2/2/2016 5:13:43 PM

WATER:

202

The following communication was received from the Water Director:

"Pursuant to the order dated 4-15-82 of the United States District Chief Judge John Feikens, we are required to enter into a Service contract with the City of Detroit for the Sewage treatment of our waste water.

Would your Honorable body authorize the Mayor and the City Clerk, to sign the attached agreement with the City of Detroit, as required by Court Order."

Moved by Councilman Dabout
Supported by Councilman Davis

That the Mayor and the City Clerk be authorized to sign the Sewage Service Contract with the City of Detroit, as required by Chief Judge John Feikens' order. Yeas, (4); Nays, (0); Absent, (1).

***

STATE OF MICHIGAN
COUNTY OF WAYNE      ss.
CITY OF HIGHLAND PARK



I, Jean Green, Clerk of the City of Highland Park, do hereby certify that the annexed is a true copy of C.L. 202 of the Recessed and Regular Council Meeting pertaining to the signing of the Sewage Service Contract with the City of Detroit, as required by Chief Judge John Feikens' Order, in as appears by the files and records in my office, that I have compared the same with the original and it is a true transcript, therefrom and of the whole thereof.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed the corporate seal of the City of Highland Park this 8th day of June 1983.

_Jean Green_
City Clerk

RECEIVED by MCOA 2/2/2016 5:13:43 PM