# STATE OF MICHIGAN

## IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

**CITY OF HIGHLAND PARK**
**A Municipal Corporation,**

             **Plaintiff,**                                      **Case No. 15-014322-CZ**

**v.**                                                            **Hon. Annette J. Berry**   15-014322-CZ

**WAYNE COUNTY,**                                                 FILED IN MY OFFICE
                                                                 WAYNE COUNTY CLERK
             **Defendant.**                                      7/26/2016 4:20:57 PM
                                                                 CATHY M. GARRETT

---

## <u>ORDER</u>                                    /s/ Cheryl Bascomb

             At a session of said Court held in the Coleman A.
             Young Municipal Center, Detroit, Wayne County,
             Michigan,
             on this:_____7/26/2016_____

             **PRESENT:**_____Annette J. Berry_____


        The Court being advised in the premises and for the reasons stated in the foregoing

Opinion,

        **IT IS ORDERED** that Defendant's motion for summary disposition is hereby

**GRANTED**;

        **IT IS FURTHER ORDERED** that Plaintiff's complaint is hereby **DISMISSED**;

        **IT IS FURTHER ORDERED** that this resolves the last pending claim and closes the

case.


                                          _____
                                                /s/ Annette J. Berry
                                                   Circuit Judge

**STATE OF MICHIGAN**

**IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE**

**CITY OF HIGHLAND PARK**
**A Municipal Corporation,**

      **Plaintiff,**                           **Case No. 15-014322-CZ**

**v.**                                          **Hon. Annette J. Berry** 15-014322-CZ

**WAYNE COUNTY,**                                FILED IN MY OFFICE
                                            WAYNE COUNTY CLERK
        **Defendant.**                      7/26/2016 4:20:31 PM
                                            CATHY M. GARRETT

---

**OPINION**                /s/ Cheryl Bascomb

     This matter is before the Court on a "Motion for Summary Disposition in Lieu of an Answer to Plaintiff's Amended Complaint, filed by Defendant, Wayne County." For the reasons stated below, the Court will grant the motion.

**I. PROCEDURAL AND FACTUAL BACKGROUND**

     This case involves a dispute between the parties as to which governmental unit is obligated to pay for the treatment of storm water run-off. Plaintiff is a municipal corporation that borders the City of Detroit. Defendant maintains and controls roadways within Highland Park. These roadways include McNichols Road and the Davison Freeway Service Drive. Plaintiff's sewer system connects to the Detroit Water and Sewerage Department (DWSD). The DWSD collects and treats storm water that enters Plaintiff's sewer system from roadways and freeways. Plaintiff is billed based on the total volume of water that is treated by the DWSD. Plaintiff claims that it is entitled to payment from Defendant for the treatment of the storm water collected from McNichols Road and the Davison Freeway Service Drive. Plaintiff alleges that it

was unaware that DWSD's billing has included the volumes of water collected from McNichols Road and the Davison Freeway Service Drive. Since 1986, Defendant has never been charged for nor has paid for the cost of treating the McNichols Road and Davison Freeway Service Drive storm water.

The instant motion for summary disposition arises out of an amended complaint for breach of contract, quantum meruit, and breach of implied contract filed by Plaintiff, City of Highland Park (the City), against Defendant, Wayne County (the County).  Plaintiff also claims that Defendant was aware that the DWSD is only charging it for the treatment of storm water within the Detroit City limits. Therefore, Plaintiff argues that it is entitled to reimbursement for the storm water treatment charges it has incurred.

Plaintiff had previously filed a motion for a preliminary injunction, which the Court denied on March 17, 2016.[1]

## II. STANDARDS FOR DETERMINING MOTIONS FOR SUMMARY DISPOSITION PURSUANT TO MCR 2.116(C)(5), (7), (8) AND (10)

Defendant brings its motion pursuant to MCR 2.116(C)(5), (C)(8), and (C)(10), or, in the alternative, that Plaintiff's claims are outside the application statute of limitations pursuant to MCR 2.116(C)(7).

MCR 2.116(C)(5) provides that summary disposition may be granted where "[t]he party asserting the claim lacks the legal capacity to sue." Defendant claims that Plaintiff lacks standing under MCR 2.116(C)(5). In other words, Defendants contend that Plaintiff lacks the legal capacity to sue. *Pontiac Police & Fire Retiree Prefunded Group Health & Ins Trust Bd of*

---

[1]

The residents of Highland Park have also filed a class action lawsuit against Plaintiff. Third Circuit Court, Case No. 15-014492-CZ.  In the lawsuit, Highland Park residents are challenging the rates that the residents have been charged for water and sewer services in Highland Park.

*Trustees v Pontiac No 2*, 309 Mich App 611, 619; 873 NW2d 783 (2015). In reviewing a motion brought pursuant to MCR 2.116(C)(5), the court must consider the pleadings, depositions, admissions, affidavits, and other documentary evidence submitted by the parties. *Jones v Slick*, 242 Mich App 715, 718; 619 NW2d 733 (2000).

A court may grant summary disposition under MCR 2.116(C)(8) if "[t]he opposing party has failed to state a claim on which relief can be granted."  A motion brought under subrule (C)(8) tests the legal sufficiency of the complaint based solely on the pleadings. *Corley v Detroit Bd of Ed*, 470 Mich 274, 277; 681 NW2d 342 (2004).  When deciding a motion under (C)(8), the court accepts all well-pleaded factual allegations as true and construes them in the light most favorable to the nonmoving party. *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999). Summary disposition should be granted only when the claim "is so clearly unenforceable as a matter of law that no factual development could possibly justify a right to recovery." *Kuhn v Secretary of State*, 228 Mich App 319, 324; 579 NW2d 101 (1998).

In reviewing a motion under MCR 2.116(C)(10), a court must consider the pleadings, admissions, affidavits, and other relevant documentary evidence submitted in the light most favorable to the nonmoving party. *Corley v Detroit Bd of Ed*, 470 Mich 274, 278; 681 NW2d 342 (2004).  If no genuine issue of material fact is established, the moving party is entitled to judgment as a matter of law. *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v General Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).

Under MCR 2.116(C)(7), summary disposition is proper when a claim is barred by the statute of limitations. *Waltz v Wyse*, 469 Mich 642, 647; 677 NW2d 813 (2004). In deciding

whether to grant summary disposition under MCR 2.116(C)(7), the court considers all documentary evidence submitted by the parties, accepting as true the contents of the complaint unless affidavits or other appropriate documents specifically contradict them. *Id* at 647-648.

Now before the Court is Defendant's motion for summary disposition as to all of Plaintiff's claims

### III. <u>ANALYSIS</u>

#### A. <u>Breach of Contract</u>

Plaintiff contends that a contract between Defendant County, the Michigan Department of Transportation (MDOT), and itself, [Defendant's Exhibit 1], is evidence that the parties intended that the County be responsible for the cost of treatment of the storm water water run-off on McNichols Road and the Davison Freeway Service Drive. This contract was signed by all authorized signators, the County Executive, MDOT's Department Director, Highland Partk's Mayor, and Highland Park's City Clerk. The County Commission also approved the contract and entered a resolution authorizing the contract.

To establish a claim for breach of contract, a plaintiff must establish both the elements of a contract and the breach of it. See *Pawlak v Redox Corp*, 182 Mich App 758, 765; 453 NW2d 304 (1990). The essential elements of a valid contract are: (1) parties competent to contract, (2) proper subject matter, (3) legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation. *Hess v Cannon Twp*, 265 Mich App 582, 592; 696 NW2d 742 (2005). A plaintiff must also demonstrate that the contract was breached and that he or she suffered damages as a result. See *Lawrence v Will Darrah & Assoc, Inc*, 445 Mich 1, 6-8; 516 NW2d 43 (1994). In interpreting a contract, it is a court's obligation to determine the intent of the parties by

examining the language of the contract according to its plain and ordinary meaning. *In re Smith Trust*, 480 Mich 19, 24; 745 NW2d 754 (2008).

Nothing in the contract mentions storm water treatment, yet it does refer to both Plaintiff's and Defendant's obligation to "[p]roperly maintain or provide for the maintenance and operation of the PROJECT, including: …; drainage facilities,… making ample provisions each year for the performance of such maintenance work as may be required." [Defendant's Exhibit 1, p 8].[2] This provision refers to maintenance and operation of the drainage facilities as it related to the construction project, and not for the purpose of allocating a payment structure for storm water treatment. The contract also provides that "(4) [t]he parties will continue to make available, without cost, their sewer and drainage structures and facilities for the drainage of the PROJECT." [Defendant's Exhibit 1, p 4].  As indicated in the contract, the "Department's sole reason for entering into this contract [was] to enable the parties to obtain" federal funding and funds from a state grant to build the new service drive. [Id at p 10]. Hence, this contract does not obligate Defendant to pay for storm water treatment from McNichols Road and/or the Davison Freeway Service Drive, only to maintain and make available the sewer and drainage structures "for drainage" for the construction project.

Plaintiff further contends that a letter from MDOT, dated April 30, 1992, is also evidence of Defendant's agreement to pay for storm water treatment and evidence of mutuality of agreement. [Defendant's Exhibit 3]. This letter set forth MDOT's intentions as to its obligations regarding sewer lines. It also specifically allocates responsibility for maintenance or replacement of sewers to either the County or the City. [Defendant's Exhibit 3, p 2-3].

---

[2]   This exhibit is a letter with two different page numbers on it, one typed as part of the letter and one that is handwritten. The Court has chosen to use the numbers which are typed as part of the letter and on any other exhibit with the same type of numbering.

The sewers are owned by Plaintiff.  It claims that Defendant breached the contract by refusing to pay for the storm water treatment. Neither the contract nor the letter expresses any intention by the parties that Defendant be obligated for the costs of storm water treatment.

Mutuality "is the centerpiece to forming any contract." *Quality Products & Concepts Co v Nagel Precision, Inc*, 469 Mich 362, 364; 666 NW2d 251 (2003).  Most of the elements of a valid contract "reflect the fact that the parties to a contract must have 'a meeting of the minds on all essential terms of a contract.'" *Calhoun Co v Blue Cross Blue Shield Michigan*, 297 Mich App 1, 13; 824 NW2d 202 (2012), quoting *Burkhardt v Bailey,* 260 Mich App 636, 655; 680 NW2d 453 (2004). "'Where mutual assent does not exist, a contract does not exist.'" *Id*, quoting, *Quality Prod & Concepts Co, supra* at 372.  "'A meeting of the minds is judged by an objective standard, looking to the express words of the parties and their visible acts, not their subjective states of mind.'" *Stanton v Dachille,* 186 Mich App 247, 256; 463 NW2d 479 (1990), quoting *Heritage Broadcasting Co v Wilson Communications, Inc,* 170 Mich App 812, 818; 428 NW2d 784 (1988).

Contrary to Plaintiff's assertion, there was no meeting of the minds between Plaintiff and Defendant that Defendant was to assume all costs for the treatment of storm water.  The April 1992 letter was not signed by any of the authorized signators of the City or the County and was merely a letter of notice and intent by MDOT to explain the various aspects of the construction project. Thus, the letter is neither a contract nor an agreement for the parties to be mutually bound with respect to the payment for storm water treatment services. Another letter written on June 10, 1992 by the County Executive and signed by the Assistant County Executive and the Mayor of Highland Park is a detail of the issues not resolved prior to the signing of the 1993 contract. The June 10, 1992 letter explicitly accepts that the State would not pay for right-of-way

charges in Highland Park. Nothing indicates that the County agreed to pay the charges. Both letters leave open further discussion on matters not yet resolved.

Another actual contract, dated November 20, 1992, was entered into by the City of Highland Park and MDOT. [Defendant's Exhibit 13]. Defendant was not a party to this contract. The contract was for the rehabilitation or replacement of certain sewers located within Highland Park under the "influence" of the new east and westbound service roadways. [Id at p 1]. This contract specifies the allocation of the sewer project's costs. [Id at p 2]. The County is not included in this contract, nor does it have any cost obligation under the contract. Hence, the only valid contract between the County and the City is the original contract to build the service drive and Defendant is entitled to summary disposition under MCR 2.116(C)(10).

## B. Quantum Meruit and Implied Contract

Plaintiff also contends that it is entitled to reimbursement for the water treatment services under the theories of quantum meruit and implied contract. The theory underlying quantum meruit is that the law will imply a contract in order to prevent unjust enrichment when one party inequitably receives and retains a benefit from another. *Martin v East Lansing School District*, 193 Mich App 166, 177; 483 NW2d 656 (1992). The elements of a claim for unjust enrichment are: (1) receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting to the plaintiff because of the retention of the benefit by the defendant. *Dumas v Auto Club Ins Ass'n*, 437 Mich 521, 546; 473 NW2d 652 (1991). In such instances, the law operates to imply a contract in order to prevent unjust enrichment. *Martin, supra.* "However, a contract will be implied only if there is no express contract covering the same subject matter." *Belle Isle Grill Group v Detroit*, 256 Mich App 463, 478; 666 NW2d 271 (2003).

Because there is a valid express contract between Plaintiff and Defendant, the Court finds that the contract is controlling and thus, the theories quantum meruit and implied contract alleged by Plaintiff are inapplicable. The Court will not imply a contract when an express contract already exists. *Id.*

As indicated above, pursuant to the parties' agreement to construct the Davison Freeway Service Drive, the parties are to provide each other with sewer services. The contract states "(4) [t]he parties will continue to make available, without cost, their sewer and drainage structures and facilities for the drainage of the PROJECT." [Defendant's Exhibit 1, p 4]. The contract does not provide any language to suggest that Defendant was to assume financial responsibility for the usage of Highland Park's sewer system during or after the construction of the project consisting of relocating and reconstructing the Davison Freeway Service Drive. Furthermore, it should be noted that the debt Plaintiff has accumulated is from Highland Park's usage of the DWSD's sewer system. Yet, the DWSD and the City of Detroit are not parties to this contract.

Plaintiff's claims of quantum meruit and implied contract are inapposite because there is a valid express contract covering the subject matter. *Id.* Therefore, Plaintiff has failed to state a claim upon which relief can be granted. MCR 2.116(C)(8).

**C. State Law, Wayne County Charter, and Wayne County Code of Ordinances**

Defendant also argues that, under state law, MCL 123.232, the Wayne County Charter, §3.115(3) and the Wayne County Code of Ordinances, §120-121(c), any agreement or contract for services must be approved and resolved by the "legislative body of each contracting political subdivision," MCL 123.232, which in this case is the Wayne County Commission. Under the Wayne County Charter, the Commission has the power and duty to "[a]pprove the making of all contracts by the County." County Charter §3.115(3). The County Ordinances also specify that

the "commission retains full approval authority for all agreements with other units of government and agreements regarding revenue collection, distribution, or expenditure." Wayne County Code of Ordinances §120-121(c). Although the Wayne County Commission entered a resolution approving the contract to construct the new service drive, that contract never specified that the County was obligated to pay for water treatment services. Hence, with respect to state law, the Charter, and the Code of Ordinances, pursuant to MCR 2.116(C)(8), Plaintiff's claim "is so clearly unenforceable as a matter of law that no factual development could possibly justify a right to recovery." *Kuhn, supra.*

## C. The Federal Clean Water Pollution Control Act (the Clean Water Act) and the Michigan Revenue Bond Act

Plaintiff next claims that Defendant's failure to pay for water treatment services contravenes the Federal Clean Water Pollution Control Act, commonly known as the Clean Water Act, and the Michigan Revenue Bond Act. With respect to the Clean Water Act, Plaintiff claims that, because the 1993 contract to construct the service drive incorporated into it a requirement that each jurisdiction must "comply with all of the requirements of … Section 308 of the Federal Clean Water Pollution Control Act, and all regulations and guidelines issued thereunder," [Defendant's Exhibit 1, p 12], Defendant is obligated to pay for storm water treatment services.

Under the Clean Water Act, 33 USC § 1251, *et seq,* "the Administrator shall not approve any grant for any treatment works under section 1281(g)(1)[3] of this title after March 1, 1973, unless he shall first have determined that the applicant (A) has adopted or will adopt a system of

---

[3]   33 U.S.C. §1281(g)(1) provides in pertinent part:

The Administrator is authorized to make grants to any State, municipality, or intermunicipal or interstate agency for the construction of publicly owned treatment works.

charges to assure that each recipient of waste treatment services within the applicant's jurisdiction, as determined by the Administrator, will pay its proportionate share (except as otherwise provided in this paragraph) of the costs of operation and maintenance (including replacement) of any waste treatment services provided by the applicant…" 33 U.S.C. §1284(b)(1)(A). Thus, a federal grant for the purpose of constructing a waste treatment system cannot be given unless the proposed treatment provider has developed a charging scheme.

In this case, the federal grant was not for the purpose of constructing the Davison Freeway Service Drive and not for the construction of a waste water treatment plant. Furthermore, the treatment services are provided by the DSWD, which charges each municipality. For almost 30 years, Plaintiff has never sought reimbursement from Defendant for charges associated with water treatment services.

In the Court's view, even if the Clean Water Act was applicable to the case at bar, Plaintiff has no standing under the Clean Water Act to sue Defendant. The Court finds persuasive the reasoning in *City of Detroit, By & Through Detroit Water & Sewerage Dept v State of Mich*, 538 F Supp 1169, 1170–71 (ED Mich 1982), reversed on other grounds, *City of Detroit, By & Through Detroit Water & Sewerage Dept v State of Mich, supra,* although lower federal court decisions are not binding on state courts. *Abela v Gen Motors Corp*, 469 Mich 603; 677 NW2d 325 (2004). In that case, Judge Feikens found "that these sections [of the Clean Water Act] adequately provide for enforcement by the Administrator and no private cause of action can be implied."[4]  Therefore, pursuant to MCR 2.116(C)(5), Plaintiff lacks standing to sue based upon the Clean Water Act.

_____

[4]

Judge Feikens explained the criteria for finding an implied private cause of action by quoting  *Cort v Ash*, 422 US 66, 78; 95 S Ct 2080, 2088; 45 L Ed 2d 26 (1975) as follows:

Plaintiff next claims the Michigan Revenue Bond Act, specifically MCL 141.118, prohibits Plaintiff from giving free water treatment services to Defendant. Under the Revenue Bond Act, "municipalities are authorized to issue 'revenue bonds,' which are bonds payable from the income of the projects erected or constructed." [Footnote omitted] 18 Mich Civ Jur Municipal and Public Bonds § 7. See *Petition of City of Detroit*, 339 Mich 62; 62 NW2d 626 (1954) (holding that automobile parking meters were a public improvement within the meaning of the Revenue Bond Act, authorizing the acquisition of off-street facilities for the purpose of parking motor vehicles and that revenue from street parking meters could be combined with municipally owned and operated off-street parking facilities for the purpose of financing the issuance of revenue bonds to acquire the facilities).

MCL 141.118 provides:

> (1) Except as provided in subsection (2), free service shall not be furnished by a public improvement to a person, firm, or corporation, public or private, or to a public agency or instrumentality. The reasonable cost and value of any service rendered to a public corporation, including the borrower, by a public improvement shall be charged against the public corporation and shall be paid for as the service accrues from the public corporation's current funds or from the proceeds of taxes which the public corporation, within constitutional limitations, is hereby authorized and required to levy in an amount sufficient for that

---

The Court said:

First, is the plaintiff "one of the class for whose especial benefit the statute was enacted," ... that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States so that it would be inappropriate to infer a cause of action based solely on federal law? (citations omitted).

*City of Detroit, By & Through Detroit Water & Sewerage Dept v State of Mich*, 538 F Supp 1169, 1171 (ED Mich 1982).

> purpose, or both, and those charges, when so paid, shall be accounted for in the same manner as other revenues of the public improvement.

Notwithstanding the lack of a valid agreement to obligate Defendant to pay for water treatment, Plaintiff contends that, under MCL 141.118, Defendant cannot continue its usage of Highland Park's sewer system without payment. However, in the instant case, no bonds were issued to construct the service drive. Yet, to support its claim Plaintiff cites *City of Detroit, By & Through Detroit Water & Sewerage Dep't v State of Mich, Michigan Dep't of Transp, Wayne Cty*, 803 F2d 1411, 1421 (6th Cir 1986) which held that the use of the sewer system to remove storm water from the roadways constitutes a service rendered under MCL 141.118. See also *Bolt v City of Lansing*, 238 Mich App 37, 46-47; 604 NW2d 745, (1999) (In a Headlee Amendment dispute, the court explained that fees for use of sewer system were user fees and not a tax.). However, the *City of Detroit* case did not hold that the plaintiff was required to charge for the services. Instead, it held that plaintiff had a statutory right to charge for the use of the sewer system. Therefore, Plaintiff herein does have a statutory right to charge the County for the use of the Highland Park sewer system. But, nothing in the *City of Detroit* case requires the County to pay for the service, unless it is charged. For almost 30 years, since 1986, Defendant has not been charged for this so-called service.

In the Court's view, the Revenue Bond Act is inapplicable because no bonds were issued and there never was a commitment made by any of the parties that income from the improvements would be used to pay back the bonds. Hence, Defendant cannot be obligated to pay for the service and fund Highland Park when there is no bond supporting the improvement to the Davison Freeway Service Drive, particularly in light of the fact that Defendant was never

charged for it.[5] Therefore, under MCR 2.116(C)(8), based on Plaintiff's reliance on the Clean Water Act and the Michigan Revenue Bond Act, Plaintiff has failed to state a claim on which relief can be granted.

## **CONCLUSION**

Therefore, for the reasons stated above, the Court will grant Defendant's motion for summary disposition pursuant to MCR 2.116(C)(5), MCR 2.116(C)(8), and MCR 2.116(C)(10).

**DATED:** 7/26/2016

/s/ Annette J. Berry

Circuit Judge

---

[5]
It also should be noted that the sewer lines running under McNichols Road are within the jurisdiction of the City of Detroit. The City of Detroit is not a party to this lawsuit.