# EXHIBIT O



Return to Excellence

OFFICE OF THE MAYOR
HUBERT YOPP

March 3, 2016
Via Certified Mail – Return Receipt Requested

Robert Kaplan, Acting Administrator
USEPA REGION 5
77 West Jackson Boulevard
*Mail Code:* R-19J
Chicago, IL 60604-3507

Water Enforcement Division
U. S. Environmental Protection Agency
1200 Pennsylvania Ave, N.W. (MC 2243A)
Washington, DC 20460

U.S. Department of Justice
Environment and Natural Resources Division
Law and Policy Section
950 Pennsylvania Avenue, N.W.
Washington, DC 20530-0001

Keith Creagh, Director
Michigan Department of Environmental Quality
525 West Allegan Street
Constitution Hall
Lansing, MI 48909-7973

Sue McCormick, Executive Director
Great Lakes Water Authority
735 Randolph, Suite 1900
Detroit, MI 48226

Re: Notice of Alleged Violation of (1) Section 204(b)(1), User Charge Provisions of the Clean Water Act and Regulations thereunder, and (2) the EPA Combined Sewer Overflow (CSO) Policy issued April 19, 1994

Request for Review under Executive Order 12898 of February 11, 1994, "Federal Actions to Address Environmental Justice in Minority Populations and Low-Income Populations"

ROBERT B. BLACKWELL MUNICIPAL BUILDING
12050 Woodward Avenue
Highland Park, Michigan 48203
Phone: 313-252-0050 ext. 240
Fax: 313-852-7320
hyopp@highlandparkcity.org



Return to Excellence

OFFICE OF THE MAYOR

HUBERT YOPP

Outline of Contents:

A.   Purpose of Statutory Notice and Request ............................................. 2
B.   Background Facts. ................................................................................ 2
C.   Violation of Mandatory requirements of Section 204(b .......................... 6
D.   Violation of the Combined Sewer Overflow Control Policy ................... 8
E.   Detroit put sewer fees on the City's ad valorem tax, which clearly violates the Mandatory provisions of the Clean Water Act. ................................ 9
F.   Environmental Justice .......................................................................... 10

To Notice Recipients:

### A. Purpose of Statutory Notice and Request

This Notice is delivered under 33 U.S.C. § 1365(b), which provides that no action may be commenced against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under the Clean Water Act, 33 USCS §§ 1251 et seq., (the "Act" or "CWA"), which is not discretionary with the Administrator, prior to notice.

As a separate and independent matter, the City of Highland Park, Michigan ("Highland Park") has included in this letter a request under Executive Order 12898 of February 11, 1994, "Federal Actions to Address Environmental Justice in Minority Populations and Low-Income Populations," which focuses on the impact of Michigan Department of Transportation's (MDOT) failure to pay their fair, proportionate share of the cost of provided sanitary sewers in Highland Park where MDOT is the largest sewer system user.

### B. Background Facts.

On March 3, 2014, Detroit filed suit against Highland Park claiming $18 million in past due sewer fees. The Complaint claimed that a contract settlement agreement from 1996 required Highland Park to pay 65% of a designated amount to be collected from water users who bought water from Highland Park's water plant. The Complaint did not allege that Highland Park had been charged a proportionate share for sewer services as proscribed by the Act.

From 1990 until 2014, the City's population has declined as follows:

ROBERT B. BLACKWELL MUNICIPAL BUILDING
12050 Woodward Avenue
Highland Park, Michigan 48203
Phone: 313-252-0050 ext. 240
Fax: 313-852-7320
hyopp@highlandparkcity.org



OFFICE OF THE MAYOR

HUBERT YOPP

| 1990 | 20,121 | −27.9% |
| --- | --- | --- |
| 2000 | 16,746 | −16.8% |
| 2010 | 11,776 | −29.7% |
| Est. 2014 | 10,375 | −11.9% |

Per the U.S. Census, the number of households in 2013 was 4,534, and the Median Household Income (MHI) was $18,981. Because 70% of the billings generally go to household accounts, the 2014 billing of $6,887,428 (see chart below) represents a combined sewer fee of approximately $4,821,199 divided by 4,534 or $1,063 per household. The $1,063 per household divided by a MHI of $18,981 is 5.6% of MHI. The upper end of reasonableness for a sewer fee is 2% of MHI.

As stated in the EPA's "Combined Sewer Final Overflows Guidance for Financial Capability Assessment and Schedule Development," dated February 1997, page 19:

"To assess the financial impact CSO controls may have on the permittee's residential users, the Residential Indicator is compared to the financial impact ranges that reflect EPA's previous experience with water pollution control programs. These ranges are as follows:

| Financial Impact | Residential Indicator (CPH as % MHI) |
| --- | --- |
| Low | Less than 1.0 Percent of MHI |
| Mid-Range | 1.0 - 2.0 Percent of MHI |
| High | Greater than 2.0 Percent of MHI" |

As shown in the chart below, over the last 8 years, the sewer fee per capita for Highland Park residents has *tripled*—from $222 per capita in 2006 to $663 per capita in 2014.

ROBERT B. BLACKWELL MUNICIPAL BUILDING
12050 Woodward Avenue
Highland Park, Michigan 48203
Phone: 313-252-0050 ext. 240
Fax: 313-852-7320
hyopp@highlandparkcity.org

| YEAR | HIGHLAND PARK POPULATION | DWSD ANNUAL SEWER FEES AND CHARGES (Source: DWSD) | ANNUAL CHARGES PER CAPITA |
|---|---|---|---|
| 2006 | 15,161 | 3,370,616 | 222.32 |
| 2007 | 14,644 | 3,666,450 | 250.37 |
| 2008 | 14,133 | 4,363,746 | 308.76 |
| 2009 | 13,850 | 4,438,562 | 320.47 |
| 2010 | 11,674 | 3,965,206 | 339.66 |
| 2011 | 11,315 | 4,497,397 | 397.47 |
| 2012 | 10,942 | 4,840,249 | 442.36 |
| 2013 | 10,463 | 5,007,724 | 478.61 |
| 2014 | 10,375 | 6,887,428 | 663.85 |

Source: Column 1, Population U.S. Census; Column 2, Great Lakes Water Authority (formerly DWSD)

In 1993 MDOT acquired the Davison Freeway and widened it with a federal grant. At the time MDOT had been paying Detroit for stormwater runoff for the Lodge, I-75 and other freeways since a 1986 6th Circuit decision (*City of Detroit v State of Michigan and County of Wayne*, 803 F.2d 1411 (6th Cir. 1986). However, Detroit continued to bill Highland Park for stormwater runoff for Davison and all other State-owned freeways. The DWSD failed to follow the requirements of its 1982 sewer agreement to impose on MDOT the same obligation to pay Highland Park. The 1982 Agreement provides, in relevant part, the board shall:

D. Carry out all inspection, surveillance and monitoring procedures necessary to determine, independent of information supplied by Industrial and Commercial Users, compliance or noncompliance with applicable National Pretreatment Standards and other more restrictive requirements as may be imposed by the BOARD,

F. Carry out all inspection, surveillance and monitoring procedures necessary to determine, independent of information supplied by Industrial and Commercial Users, compliance or noncompliance with applicable National Pretreatment Standards and other more restrictive requirements as may be imposed by the BOARD.

Rather than comply with its fiduciary, contractual and CWA duties, Detroit overwhelmed Highland Park with legal expenditures. Highland Park could not match these legal expenditures, as a small subscriber, to forge a consent decree in 1996 where the entire sewer bill was paid by a formula which excluded from Detroit billings any payments from MDOT and Wayne County as large government users with extraordinary concentrations of stormwater runoff.

4



Return to Excellence

OFFICE OF THE MAYOR

HUBERT YOPP

To be sure this consent decree did not reflect the CWA formula for residential cost for sewer treatment, to wit:

$$\underline{Residential\ Share\ of\ Treatment\ Costs} = Total\ Costs\ X\ \frac{\underline{Residential\ Wastewater\ Flow}}{Total\ Wastewater\ flow}$$

As shown above, although the population and residential wastewater flow of Highland Park continued to decrease, the sewer bill tripled on a per capita basis.

Highland Park's recent engineering studies show that a large percentage of the impervious parts of Highland Park, which is only three square miles, are attributable to the Davison and a minor part of the Lodge Freeways, and various State roads managed by MDOT and Wayne County Michigan. It is estimated that MDOT is an institutional user contributing between 15% and 25% of the total wastewater flow each year from stormwater runoff. Detroit failed to develop any plan to collect from MDOT for the portion of the Davison (and small portion of the Lodge) located in Highland Park. The entire billing of DWSD was based on water meter flow, which allowed that wastewater users without water meters like MDOT and Wayne County to avoid paying their proportionate share.

Highland Park is only three square miles, MDOT-controlled roadways are impervious surfaces and represent a major percentage of the total impervious land mass of Highland Park. MDOT is the largest stormwater sewer user in Highland Park, but is allowed by grantee DWSD to get free service paid primarily by residents. When Highland Park's population continued to decline, and the largest stormwater sewer user, MDOT, was getting free service paid by the declining number of residents. The sewer bill continued to increase, resulting in loans from Highland Park's "general fund" to help residents pay the DWSD sewer bill. This ultimately resulted in Highland Park's inability to generate sufficient revenue to keep its water plant in good repair, resulting in a financial takeover by the State, and the shutting down the water plant ordered by the State.

Following the water plant shut down, Detroit supplied water, and the combined sewer and water bill was too much to pay given the income level, low population level, and free sewer service provided to the State of Michigan. The stormwater runoff, which primarily benefitted roadway transportation for the entire metropolitan area, became an increasingly larger portion of the bill owed by Highland Park.

Highland Park has attempted to get Detroit to explain the basis for the City's sewer bill and why Detroit did not develop a plan to collect from MDOT, but has received no response. In fact, the only response was the notice of a potable water supply termination or shut off, which Highland Park had stop through a temporary injunction granted by the

ROBERT B. BLACKWELL MUNICIPAL BUILDING
12050 Woodward Avenue
Highland Park, Michigan 48203
Phone: 313-252-0050 ext. 240
Fax: 313-852-7320
hyopp@highlandparkcity.org



Return to Excellence

OFFICE OF THE MAYOR

HUBERT YOPP

court. The City Administrator continues to request the basis for the Detroit sewer bills, to no avail.

### C. Violation of Mandatory Requirements of Section 204(b)

Under the user charge provisions of the Act, the EPA administrator shall not approve a grant unless having first determined that the applicant:

> (A) has adopted or will adopt a system of charges to assure that each recipient of waste treatment services within the applicant's jurisdiction, as determined by the Administrator, will pay its proportionate share (except as otherwise provided in this paragraph) of the costs of operation and maintenance (including replacement) of any waste treatment services provided by the applicant * * *. 33 U.S.C. § 1284(b)(1) (Supp.1982) (hereinafter referred to as "section 204(b)(1)).

The EPA regulations specify what requirements a user charge system must meet in order to satisfy section 204(b)(1).) In general, the user charge system proposed by a grantee such as the GLWA must, in order to meet approval, ensure that "each user . . . pays its proportionate share of operation and maintenance (including replacement) costs of treatment works within the grantee's service area, based on the user's proportionate contribution to the total waste water loading from all users. . . ." 40 C.F.R. § 35.2140. Moreover, a "regional treatment system accepting wastewaters from other municipalities," such as GLWA, was mandated to require that "the subscribers receiving waste treatment services from the grantee shall adopt user charge systems in accordance with section 204(b)(1)(A) of the Act (quoted above) and §§ 35.929 through 35.929-3" of the regulations. (Reserved as of December 14, 2014.)

*GLWA/Detroit charges to Highland Park have not been proportionate to its use, it currently includes costs based upon the charges being based on water use only and the free treatment given to MDOT for rainwater runoff.*

In 1993 the EPA issued a guide on "Evaluating Municipal Wastewater User Charge Systems, which captures the violation as follows:

> WHY ARE PROPORTIONAL CHARGES IMPORTANT?
>
> Next, look at the user charge rate structure. Does each user (or user class) pay its fair share of operation, maintenance, and replacement (OM&R)? Users who understand the value of wastewater service – and who feel they 'are being treated fairly in comparison to other users – are willing to pay for the service. <u>Only user charge systems that charge in proportion to use comply with the regulations.</u>

ROBERT B. BLACKWELL MUNICIPAL BUILDING
12050 Woodward Avenue
Highland Park, Michigan 48203
Phone: 313-252-0050 ext. 240
Fax: 313-852-7320
hyopp@highlandparkcity.org



Return to Excellence

OFFICE OF THE MAYOR

HUBERT YOPP

Proportionate use of the sewer system includes consideration of discharge quality as well as discharge quantity.

To determine if the user charge rate passes the "fair share" test, examine the wastewater rate structure and answer questions 16 through 22.

Does each user receive a bill for services?

All users should be identified and billed for wastewater services. <u>*Systems that allow some users to receive free service aren't treating paying customers fairly*</u>.

In this case the largest user of Highland Park's sewer pipes, with the greatest number of gallons of water throughput on an annual basis—MDOT—was allowed by the grantee GLWA to get free service subsidized by one of the lowest MHI cities in the State of Michigan. The 1996 Settlement Agreement between Highland Park and Detroit came 10 years after Detroit had been collecting from MDOT for stormwater runoff for the same freeways it signed a consent decree to have Highland Park residents pay for [MDOT] as a part of their sewer bill. So User fees were not proportionate in violation of 204(b)(1) for two reasons:

1. MDOT was getting free service and was the largest commercial user.
2. Detroit's sewer user fees were increasing based on false water use figures even as population and water use declined.

The User Charge System Guide defines "industrial user" as a user producing discharge volume of 25,000 gallons a day or more. MDOT appears to fit that category.

Does each Industrial user pay its fair share of OM&R costs based upon actual use of the wastewater facility?

"A 'significant industrial user' is a user that contributes more than 10 percent of the flow or pollutants for which the treatment plant is designed to handle.

Does the utility have any significant industrial users?

The CFR requires significant industrial users to pay that portion of the grant amount associated with the treatment of its wastes. This addresses capital project (not OM&R) costs.

ROBERT B. BLACKWELL MUNICIPAL BUILDING
12050 Woodward Avenue
Highland Park, Michigan 48203
Phone: 313-252-0050 ext. 240
Fax: 313-852-7320
hyopp@highlandparkcity.org



There has been a breach of the fiduciary duty owed Highland Park. The EPA regulations specify what requirements a user charge system must meet in order to satisfy section 204(b)(1).) In general, the user charge system proposed by a grantee such as the GLWA must, in order to meet approval, ensure that "each user . . . pays its proportionate share of operation and maintenance (including replacement) costs of treatment works within the grantee's service area, based on the user's proportionate contribution to the total waste water loading from all users. . . ." 40 C.F.R. § 35.2140 Moreover, a "regional treatment system accepting wastewaters from other municipalities," such as the GLWA, was mandated to require that "the subscribers receiving waste treatment services from the grantee shall adopt user charge systems in accordance with section 204(b)(1)(A) of the Act [quoted above] and §§ 35.929 through 35.929-3" of the regulations. (Reserved as of December 14, 2014.)

### D. Violation of the Combined Sewer Overflow Control Policy

Part 403 of Chapter 40 of the Code of Federal Regulations provides for approval and authorization of the local publically-owned treatment works ("POTW") as control authorities, as defined in 40 CFR § 403.3(o). GLWA operates a POTW in southeastern Michigan. GLWA/Detroit applied for and received grants for the construction of its POTW pursuant to 33 USC § 1281, *et seq*. At all times relevant to this notice, GLWA has been providing, and still provides, sewage treatment services to Highland Park, charging Highland Park disproportionately for such services.

Implementation of EPA Combined Sewer Overflow (CSO) Policy, issued April 19, 1994, is mandatory. The Policy reads:

> "E. NPDES authorities (authorized States or EPA Regional Offices, as appropriate) are responsible for implementing this Policy. *It is their responsibility to assure that CSO permittees develop long-term CSO control plans and that NPDES permits meet the requirements of the CWA*. Further, they are responsible for coordinating the review of the long-term CSO control plan and the development of the permit with the WQS authority to determine if revisions to the WQS are appropriate. In addition, they should determine the appropriate vehicle (i.e., permit reissuance, information request under CWA section 308 or State equivalent or enforcement action) to ensure that compliance with the CWA is achieved as soon as practicable."

One of the Guides published for implementing a long term Plan is the "Combined Sewer Overflows, Guidance for Funding Options." It states in pertinent part the mandatory obligation of permittees like GLWA/DWSD to manage proportionate fee collections from major stormwater users like MDOT:

ROBERT B. BLACKWELL MUNICIPAL BUILDING
12050 Woodward Avenue
Highland Park, Michigan 48203
Phone: 313-252-0050 ext. 240
Fax: 313-852-7320
hyopp@highlandparkcity.org

 Return to Excellence

OFFICE OF THE MAYOR
HUBERT YOPP

"First, many communities are establishing separate fees, and in some cases, separate utilities, to fund storm water management requirements. Because storm water management is closely related to combined sewer overflow occurrences....".

\*\*\*

"The primary restriction is that a user fee system must be in place *that ensures that each user or user group pays its proportionate share of operating costs, based on the quantity and quality of wastes discharged. As a result, taxes may not be used to pay operating costs for these project combined sewer overflows.*"
P. 40

Further violations by GLWA of mandatory requirements include:
- Billing only based on sewer flows or water flows where stormwater runoff is not measured by any metering system because the stormwater is let into a holding area or into the river.
- Failure to develop and implement an industrial and high risk runoff program, e.g., Detroit totally disregarded their hands-on knowledge that the State MDOT did not pay Highland Park, even though DWSD collected stormwater runoff fees for the same freeways at the point they traversed Detroit city limits.
- Failure to develop a complete inventory of industrial and high risk facilities and failure to inspect facilities for compliance with the NPDES storrnwater permittee requirements.
- Failure to develop and implement an adequate free service search and recovery process, and an illicit discharge identification and elimination program, for large highway stormwater dischargers, e.g., MDOT and Wayne County.
- Failure to conduct an investigation to implement its stormwater program in its constituent wholesale users or subscribers like Highland Park.

E. **Detroit put sewer fees on the City's ad valorem tax which clearly violates the Mandatory provisions of the Clean Water Act.**

Detroit sued to collect the overcharges and after judgment put them on the ad valorem tax base, which also violates the CWA, because charges were not proportionate to use and resulted in many ad valorem property taxpayers who had paid their water/sewer bill having to pay twice.

ROBERT B. BLACKWELL MUNICIPAL BUILDING
12050 Woodward Avenue
Highland Park, Michigan 48203
Phone: 313-252-0050 ext. 240
Fax: 313-852-7320
hyopp@highlandparkcity.org



Return to Excellence

OFFICE OF THE MAYOR

HUBERT YOPP

F. Environmental Justice

GLWA/Detroit recognizes that Highland Park as a service area includes minority and low income populations. The actions of GLWA and the State of Michigan violate the concepts of environmental justice reflected in Executive Order 12898 of February 11, 1994, "Federal Actions to Address Environmental Justice in Minority Populations and Low-Income Populations." The median household income for Highland Park is $18,981 and 51.1 percent of the population is below the poverty level. In contrast, the median household income for the State of Michigan is $48,411 and 16.8 percent of the population is below the poverty level. The violations of the CWA by GLWA, in greatly overcharging Highland Park, caused it to fund sewer payments out of its general fund, significantly causing its financial default and depleting the cash flow required to maintain its water plant. As a result, Highland Park incurred substantial additional costs to purchase water from Detroit, which has to be pumped through a standby piping system that is old and corroded. This old and corroded standby system is a potential health threat.

We are asking the EPA to enjoin GLWA's further collection of excess sewer charges, charging Highland Park only for actual, proportionate costs and not for the use by MDOT and Wayne County. We are also asking that the EPA mandate the State and Wayne County repay the past amounts of sewer system deferred maintenance caused by their nonpayment since 1993. The MDOT past due amount, alone, is approximately $26 million according to engineering reports. This remedy will allow continued maintenance of the sewer pipes connected to the MDOT and Wayne County highways and roadways. Payment of these past due amounts generate funding for capital expenditures which will reduce the possibility of a sewer main break releasing polluted combined stormwater and sewer flows onto Highland Park streets and waterways and benefit all Highland Park residents and surrounding rivers and lakes.

Payments of overdue MDOT and Wayne County sewer bills will also allow Highland Park to repay its general fund which has subsidized MDOT and Wayne County for the last twenty years resulting in inadequate revenues to maintain its own water plant. These payments will be used to rehabilitate the water plant, thus avoiding the continued use of the standby system.

It is requested that EPA use its grant power and that of other federal agencies to require that the State Department of Environmental Services insist that MDOT pay its $26 million of deferred maintenance costs for the Highland Park sewer system. This will allow Highland Park to repay GLWA an amount equal to actual costs for services rendered and put its water plant back in operation for the health and benefit of all Highland Park residents, most of whom meet the environmental justice criteria.

ROBERT B. BLACKWELL MUNICIPAL BUILDING
12050 Woodward Avenue
Highland Park, Michigan 48203
Phone: 313-252-0050 ext. 240
Fax: 313-852-7320
hyopp@highlandparkcity.org



Return to Excellence

OFFICE OF THE MAYOR
HUBERT YOPP

We have been overwhelmed with years of costly litigation on overcharges by the grantee, DWSD, now GLWA, to the point that the litigation costs are no longer sustainable for a small city such as ours. We have had to go to Court to get an injunction to prevent all our potable water from being shut off by DWSD. Because of twenty years of having to subsidize the cost of sewer treatment for State roadway runoffs, we were forced into a State financial takeover. Highland Park subsidies provided State stormwater treatment, estimated by our engineers to be $26 million, were taken out of our general fund and our declining residential customer base, which caused further flight from our city and decimated net operating revenue needed to keep our water plant operational. We are now paying over $600 per capita per year for sewer service, 5.6% of MHI, which is two and one half times greater than the highest end of reasonableness for sewer treatment service—with no end in sight.

We would like to meet with EPA as soon as possible to provide the detail behind this matter and request.

Very truly yours,

Hubert Yopp
Mayor, City of Highland Park

ROBERT B. BLACKWELL MUNICIPAL BUILDING
12050 Woodward Avenue
Highland Park, Michigan 48203
Phone: 313-252-0050 ext. 240
Fax: 313-852-7320
hyopp@highlandparkcity.org