# EXHIBIT O - I

GREAT LAKES
WATER AUTHORITY
OFFICE OF THE CHIEF EXECUTIVE OFFICER

735 RANDOLPH STREET
DETROIT, MICHIGAN 48226
WWW.GLWATER.ORG

A must
read!

April 11, 2016



Honorable Hubert Yopp
Mayor, City of Highland Park
Robert B. Blackwell Municipal Building
12050 Woodward Avenue
Highland Park, MI  48203

Re:     Notice of Alleged Violation of Section
(1) §204(b)(1) User Charge Provisions of the Clean Water Act and Regulations
Thereunder and (2) the EPA Combined Sewer Overflow (CSO) Policy Issued April 19, 1994

Request for Review under Executive Order 12898 of February 11, 1994, "Federal Actions to Address Environmental Justice and Minority Populations and Low Income Populations"

Dear Mayor Yopp:

### A.   General Statements and Purpose

This letter is in response to the City of Highland Park's ("Highland Park") March 3, 2016 letter which was received roughly a week after its purported date of preparation.  The Great Lakes Water Authority (GLWA) is somewhat perplexed by all of the legal permutations in the letter since it appears to be a combination of different legal notices, most of which are inapplicable to GLWA.  First, the letter appears to include a notice as a precursor to a citizen's civil suit under 33 USC §1365(b).  GLWA does not see where it would necessarily be a proper party to any such suit and objects to any assertion that it would be a proper party to such a suit.  GLWA will aggressively defend against such an action given its implications and the frivolous nature of any such action against the GLWA.

Second, the GLWA is not exactly sure what request is being made to it with respect to Executive Order 12898 of February 11, 1994.  These assertions were never made in the current litigation with Highland Park or in any of the preceding litigation.

### B.   Background Facts

With respect to the background facts asserted by Highland Park, GLWA does not understand the relevance of these facts to Highland Park's failure to pay its water and sewer bills, which led to the action that resulted in the City of Detroit's April 30, 2015 Judgment (the "Judgment") against Highland Park. The

Honorable Hubert Yopp
Mayor, City of Highland Park
April 11, 2016
Page 2

Judgment was entered against Highland Park for its failure to pay its water and sewer bills. The background facts asserted by Highland Park with respect to its population decreases were neither offered on the record below, nor constitute a viable defense for Highland Park's failure to pay its bills.

In addition, GLWA sees no relevance to Highland Park's reference to a Combined Sewer Overflow Guidance for Financial Capability and Assessment Schedule and Development document to these proceedings. Again, this latest assertion was not part of the record below and is not germane to Highland Park's current refusal to pay its water and sewer bills which has been a continuous and ongoing problem since 1996.

Furthermore, Highland Park's assertion of per capita population based analysis vis-à-vis water and sewer charges has no bearing on the water and sewer bills that were unpaid by Highland Park that were part of the Judgment. Highland Park includes comparisons only as far back as 2006, which does not correspond to the period of time that serves as the basis for the Judgment at issue in this particular situation. Moreover, Highland Park's newly minted defenses would clearly run afoul of the statute of limitations applicable to the underlying action itself.

Highland Park, again, has attempted to interject its alleged claims against the County of Wayne and the State of Michigan for storm water runoff, charges that Highland Park itself never billed to anyone, into these proceedings. As you should be aware, Highland Park at the eleventh hour, attempted to interject these very same issues into the trial court proceedings below and Judge Murphy rejected this eleventh hour defense. It is now surprising that this matter is again being alleged in a separate communication to various agency heads, when Highland Park basically abandoned this argument even in its appeal to the Michigan Court of Appeals from Judge Murphy's decision. None of the issues related to the storm water runoff concept or Highland Park's actions against the State of Michigan and County of Wayne were part of Highland Park's briefing before the Michigan Court of Appeals. At this juncture, GLWA would have to assume that this issue will be deemed abandoned by Highland Park on appeal.

Even more importantly, Highland Park has an independent action pending against the State of Michigan and the County of Wayne in the Court of Claims. Given the pendency of this litigation among these parties, GLWA does not believe it is prudent for it to comment on the merit of Highland Park's independent efforts to address the assertion that some portion of its unpaid water and sewer bills which now exceed $20 Million Dollars under the Judgment and which on an actual basis exceed $25 Million Dollars, are the responsibility of the defendants in Highland Park's action against the County of Wayne and the State of Michigan. As Highland Park is well aware, as a retail water provider within its corporate limits, it is its responsibility to determine its retail rates, including those charged the State and County, while meeting its payment obligations to GLWA. GLWA does not have a role in that process.

C.  Violation of Mandatory Requirements of Section 204(b)

Again, Highland Park raises the issue that the existing user charge system employed by GLWA is inconsistent with 33 USC §1284(b). This issue is an issue that was raised with the trial court below again, at the eleventh hour. The trial court rejected Highland Park's position. This issue is now pending before

Honorable Hubert Yopp
Mayor, City of Highland Park
April 11, 2016
Page 3

the Michigan Court of Appeals since it is the only issue Highland Park raised in its appeal. At this stage, since the trial court has rejected Highland Park's position on this legal claim, GLWA has to conclude that Highland Park's position is unfounded.

For the record, in the trial court, GLWA submitted expert testimony (by way of affidavit) from its expert, Bart Foster, that its user charge system complied with the Clean Water Act. This evidence was unrefuted in the record then and remains unrefuted now. Mere allegations are insufficient to refute the record. The current letter continues the same shell game. Highland Park complains but never presents the necessary evidence to support its complaints.

Highland Park's efforts to combine this issue with the process for developing an industrial user charge based system for regulating secondary discharges, is simply unfounded. Highland Park appears to confuse the requirements of the overall user charge based system and the regulation of secondary discharges under the Industrial Waste Control Program. In any event, this confusion is also irrelevant and inappropriate since Highland Park has paid none of the water, sewer or industrial waste control charges leading to the Judgment and the pending litigation.

D. Violation of the Combined Sewer Overflow Control Policy

Highland Park's claims that there was an alleged violation of a Combined Sewer Overflow Control Policy issued in April 1994 is an exceedingly delayed and unusually frivolous assertion. At this stage it seems peculiar that Highland Park has waited over 20 years to assert this claim. It is further astounding that Highland Park would assert this claim over 2 years after the litigation was filed against it in the Wayne County Circuit Court and nearly a year after a final judgment was issued. While complaining about legal fees and costs, Highland Park appears to be voluntarily incurring them as it manufactures defenses after the fact and ignores its bills.

At this stage, it is clear that Highland Park's claims are simply those of a litigant that has not managed to prevail in the litigation and the assertions simply lack merit. Therefore, GLWA asserts that these frivolous aspersions are not even before the Court and should not be before the agencies to whom Highland Park writes.

E. Environmental Justice

It is confounding that Highland Park, who is one of the largest debtors of GLWA, now complains about environmental justice. The cost associated with Highland Park's failure to pay its bills for these many years is not simply a cost that evaporates into thin air. That cost is borne by the other users of the system, which include the City of Detroit and other struggling municipalities who may view Highland Park's refusal to pay its bills as unjust to them as well. This is not about environmental justice as much as it is about a failure to pay.

Honorable Hubert Yopp
Mayor, City of Highland Park
April 11, 2016
Page 4

While Highland Park complains about the cost associated with continuing to prosecute litigation and defend its frivolous positions, it continues to engage multiple law firms in the pursuit of frivolous claims that are simply unfounded.  At this stage, GLWA thinks that this letter is just another smokescreen that is designed to evade the issues and further derail any attempts to work cooperatively with Highland Park toward a meaningful resolution of this matter.

Very truly yours,

William M. Wolfson
Chief Administrative and Compliance Officer/
General Counsel

SM/
cc:     Mr. Robert Kaplan, Acting Administrator, Environmental Protection Agency
Water Enforcement Division, United States Environmental Protection Agency
United States Department of Justice
Mr. Keith Creagh, Director, Michigan Department of Environmental Quality
Avery F. Williams, Williams Acosta

S:\DWSD - 2318\City of Highland Park - 2321\L-Mayor Hubert Yopp 3-21-16.doc



# CITY OF HIGHLAND PARK

Return to Excellence

Hubert Yopp
Mayor

May 23, 2016

William M. Wolfson
Chief Administrative and Compliance Officer/General Counsel
*Great Lakes Water Authority*
Office of the Chief Executive Officer
35 Randolph Street
Detroit, Michigan 48226
www.glwater.org

Dear Mr. Wolfson:

In response to your letter of April 11, 2016, attached is a detailed response to 14 paragraphs of your April 11, 2016, response to my March 3, 2016, letter to the EPA and other State and Federal agencies. Please permit me to give you an overview of our reply. I took on the responsibilities of Mayor of Highland Park effective January 1 of this year. During this roughly six-month timeframe I have been completely astounded at actions taken against Highland Park by DWSD, now called the GLWA (referred to collectively as GLWA), in complete disregard to its obligations as the NPDES permit holder for this region and the recipient of all EPA Clean Water Act grant funds.

In February 2014 you sued Highland Park for accumulated unpaid sewer bills of $19 million and about $2 million of water bills. My engineering department has now told me that GLWA has no meter readings to back up the charges. The amount charged has nothing to do with any proportionate share of costs attributable to Highland Park since no meters measuring Highland Park's sewerage flow exists. The record shows Highland Park has repeatedly requested supporting data for sewer charges with no response. Your judgment in State Court is based on your bills for which you have no supporting data and which, as shown in paragraph 8 of the chart, have increased as much as five times higher than other wholesale customers. According to §1284(b), the EPA Administrator has a mandate to require GLWA to charge "in proportion to the contribution of Highland Park to the total cost of operation and maintenance." Mr. Wolfson, your response completely ducks the issue of whether you have met this requirement or can even provide any evidence of Highland Park's contribution to your operation and maintenance costs.

The biggest issue facing Highland Park and all the wholesale customers is that GLWA, according to the 2014 audit report, is making its users pay for $500 million of borrowed money lost from mismanagement and corruption. The audit report shows you are passing through principal and interest on $3.3 billion in debt when the assets purchased are only worth $2.8 billion. This means that GLWA is insolvent. GLWA has a debt to asset ratio of 1.17. Any ratio



# CITY OF HIGHLAND PARK

Return to Excellence

Hubert Yopp
Mayor

over 1 means you are insolvent. Your assets are worth half a billion dollars less than your debt and it will be difficult to collect sufficient revenues to cover this worthless debt operating off a negative asset base.   How could the GLWA go through bankruptcy without writing this worthless debt down to $2.8 billion and now unconscionably pass it through to wholesale and retail customers who get nothing for it? (See, Report par 14). GLWA is charging Highland Park over 5% of average annual Median Household Income when the CWA Guidelines have the high end of reasonableness at 2% of MHI. (par. 14).    This half billion dollars of excess worthless debt adds 15% a year to the sewer fees and charges.  The debt you claim Highland Park owes (which we do not owe) only adds 1%.

Section 1284 of the CWA says these things are mandated:

1. GLWA has to charge each user class (retail, industrial and governmental) its proportionate share. MDOT has been allowed to get free subsidized service from Highland Park even though GLWA is charging MDOT for the same freeways in Detroit.
2. GLWA has to have  legal, institutional, managerial, and financial capability to insure adequate construction, operation, and maintenance of treatment works—which is not possible given the fact that the debt asset ratio is 1.17, showing gross mismanagement.
3. GLWA cannot put any sewer charges on Highland Park's *ad valorem* taxpayers.

Highland Park does not think patent violations of the CWA and overcharges in your bills to Highland Park are, as you say, frivolous.   We need to continue our discussions on ways to correct our bills consistent with the 1996 settlement agreement and have GLWA come clean about how they have managed to come up with sewer bills out of "thin air" with no metered records. The rest of the report speaks for itself, and I would hope we could continue our dialogue without more lawyer's fees.

Very truly yours,

*Hubert Yopp*
Hubert Yopp
Mayor Highland Park

CC: all in Wolfson Letter

Robert B. Blackwell Municipal Building
12050 Woodward Avenue
Highland Park, Michigan  48203
313-252-0050 ext. 252
313-852-7320 fax

## REPORT TO MAYOR HUBERT YOPP

Dated:  May 23, 2016

DETAILED REPLY OF

CITY OF HIGHLAND PARK

TO RESPONSES OF THE

GREAT LAKES WATER AUTHORITY

(Successor to Detroit Water and Sewer  department)

From

William M. Wolfson

Chief Administrative and Compliance Officer/ General Counsel

Dated:  April 11, 2016

To letter to EPA from Mayor Hubert Yopp

Dated: March 3, 2016

| Great Lakes Response | Highland Park Reply |
|---|---|
| 1.  The Great Lakes Water Authority (GLWA) is somewhat perplexed by all of the legal permutations in the letter since it appears to be a combination of different legal notices, most of which are inapplicable to GLWA | 1. The letter sets forth violations of the Clean Water Act (CWA) that have resulted in Highland Park residents being charged disproportionately based on CWA mandatory requirements. In plain English, Highland Park has been overcharged by Detroit, DWSD, and now their successor to the NPDES permit GLWA since the 1996 consent decree.  All mandatory provisions of the CWA are applicable to GLWA. |
| 2. First, the letter appears to include a notice as a precursor to a citizen's civil suit under 33 USC §1365(b). GLWA does not see where it would necessarily be a proper party to any such suit and objects to any assertion that it would be a proper party to such a suit. GLWA will aggressively defend against such an action given its implications and the frivolous nature of any such action against the GLWA. | 2. Under 33 USC §1362 (5) The term "person" means an individual, corporation, partnership, association, State, municipality, commission, or political subdivision of a state, or any interstate body. 33 USCS § 1362.  Under 33 USCS § 1365 "Citizen" defined. For the purposes of this section the term "citizen" means a person or persons having an interest which is or may be adversely affected. Highland Park is a person for purposes of a citizens' suit under 33USC §1365(a) with standing to sue GLWA for violations of CWA, 33 USCS §§ 1251-1387, or National Pollutant Discharge Elimination System permit provision (Am. Canoe Ass'n v D.C. Water & Sewer Auth. (2004, DC Dist Col) 306 F Supp 2d 30), unless the EPA takes action against GLWA and secures consent decree against violations outlined in the letter. |
| 3. Second, the GLWA is not exactly sure what request is being made to it with respect to Executive Order 12898 of February 11, 1994. These assertions were never made in the current litigation with Highland Park or in any of the preceding litigation. | 4. Executive Order 12898 applies only to the EPA not to GLWA directly.  It requires EPA to make achieving environmental justice part of its CWA enforcement mission by identifying and addressing, as appropriate, disproportionately high sewer charges and bills and adverse human health or environmental effects on Highland Park, a predominantly minority and low income community, resulting from GLWA's and predecessor City of Detroit's failure to follow the CWA mandatory requirements applicable to GLWA as outlined in the letter. |
| 5. With respect to the background facts asserted by Highland Park, GLWA does not understand the relevance of these facts to Highland Park's failure to pay its water and sewer bills, which led to the action that resulted in the City of Detroit's April | 5. Judge Murphy's Order dated July 31, 2014, granted DWSD a summary judgement based on enforcement of the 1983 court approved settlement agreement and damages based upon "Account Stated." Judge Murphy held that DWSD could enforce bills or "accounts stated" of |

| | |
|---|---|
| 30, 2015 Judgment (the "Judgment") against Highland Park | $18,197,620 .22 and $1,047,218.31, for sewer and water, respectively.  Because Highland Park has failed to object to the account stated within a reasonable time.  (See, Exhibit A p. 9-11) *This Order did not consider or resolve the primary basis for the letter that Highland Part was charged, and continues to be charged by GLWA, significantly more than its proportionate share of sewer system costs under CWA rules.*  Further the Order did not consider the fact that MDOT and Detroit knew MDOT was getting a "free ride" on the costs of Stormwater Runoff Treatment Services once MDOT roadways or freeways entered Highland Park from Detroit and continued back into Detroit because MDOT paid Detroit right up to the Highland Park border; and concealed its obligation to pay Past Due MDOT Fees due for Stormwater runoff (see, *Bennett v. County of Eaton*, 340 Mich. 330 (Mich. 1954) overruling and distinguishing *Tower vs. Township of Somerset*, 143 Mich. 195, 201 cited on page 10 of MDOT's Drainage Manual stating:  "The principle of law enunciated in the *Tower* Case cannot be construed to give public authorities the right to divert surface water that would in the natural state disperse over a large area, and cast such in concentrated form upon the lands of the abutting owner to his damage *without compensation* to him."). |
| 6. Judgment was entered against Highland Park for its failure to pay its water and sewer bills. The background facts asserted by Highland Park with respect to its population decreases were neither offered on the record below, nor constitute a viable defense for Highland Park's failure to pay its   bills. | 6. In the record below Highland Park's Affirmative Defenses Dated March 11, 2014, state in part: 10. Plaintiff has charged Defendant much in excess of its proportionate share of costs as defined in Clean Water Act section 204(b)(1) relative to its size and population. 11. Plaintiff has failed to institute a system of user charges that reflects the poverty levels (as defined by federal guidelines) which persist in Highland Park as contemplated by the clean water act §204(b)(1) and regulation 40 CFR 35.2140 See Answer and Counterclaims attached as Exhibit A. |
| 7. In addition, GLWA sees no relevance to Highland Park's reference to a Combined Sewer Overflow Guidance for Financial Capability and | 7. The Combined Sewer Overflow guidance is a limitation for which a direct suit may be brought by Highland Park against GLWA under 33 USC |

2

| | |
|---|---|
| Assessment Schedule and Development document to these proceedings. Again, this latest assertion was not part of the record below and is not germane to Highland Park's current refusal to pay its water and sewer bills which has been a continuous and ongoing problem since 1996. | §1365(a)(1).  Federal CWA preempts the findings of the State Court in this regard.  (International Paper v Ouellette, 107 S. Ct. 805 (1987))  The CWA prohibits GLWA continued failure to charge Highland Park is proportionate share of system operations and maintenance costs and allowance of MDOT's free service for stormwater discharges of polluted roadway runoff into the combined sewer system resulting from GLWA's billing for these discharges to Highland Parks retail and industrial customers and failure to bill as a separate State governmental stormwater user class.<br><br>Exhibit A to the Detroit complaint in the record below contains the June 18, 1996 Court ordered Settlement Agreement which provides for a water rate of $12.05 per KCF and $22.65 To be charged to customers.  This Settlement Agreement obligates Highland Park to pay 65% of the amount actually received—not to have direct liability to guarantee the payment.  The Settlement Agreement reads ", 65% of any and all amounts *received by it* in payment of bills for water and wastewater treatment services rendered by it to its customers." (See Settlement Agreement pages 6-8).  The Settlement Agreement has no provision for payment of non-metered stormwater flow from MDOT or Wayne County as required by the CWA.  The judgment was erroneously based on "Account Stated" which disregards this Settlement Agreement and which are based upon unsupportable formulas without any measurements backing up assumed sewer flows from Highland Park which make up the Accounts Stated.   The Erroneous Account Stated includes overcharges not based on any metered flows and not adjusted for failure of GLWA to separately bill for the major stormwater users. (See, Exhibit B, hereto). |
| 8. Furthermore, Highland Park's assertion of per capita population based analysis vis-a-vis water and sewer charges has no bearing on the water and sewer bills that were unpaid by Highland Park that were part of the Judgment. Highland Park includes comparisons only as far back as 2006, which does not correspond to the period of time that serves as the basis for the Judgment at | 8. Attached as Exhibit C are official filings of Detroit on EMMA as follows:<br>1. 2005 page from official statement showing 220,837 MCF billed to Highland Park with $4,082,524 revenue or $18.48 per mcf.  This is over twice as much per MCF as Dearborn West was billed |

3

| | |
|---|---|
| issue in this particular situation. Moreover, Highland Park's newly minted defenses would clearly run afoul of the statute of limitations applicable to the underlying action itself. | [596,594 with $5,526,766 or $9.26 per MCF.<br><br>2. 2008 page from official statement showing 177,452 MCF billed with $3,666,450 revenue or $20.65 per mcf.  This is over twice as much as Dearborn West was billed [594,472 with $5,848,583 or $9.8 per MCF.<br><br>3. 2011 page from official statement showing 151,053 MCF billed with $4,490,709 revenue or $29.7 per mcf.  This is almost three times as much as Dearborn West was billed [567,934 with $6,770,430 or $11.92 per MCF<br><br>4. 2013 page from official statement showing 105,589 MCF billed with $5,007,724 revenue or $47.42 per mcf.  This is over three and one/half times as much as Dearborn West was billed [510,176 with $699894 or $13.7 per MCF<br><br>5. 2014 page from official statement showing 109,927 MCF billed with $6,887,428 revenue or $62.654 per mcf.  This is five times as much as Dearborn West was billed [598,452 with $7,668,651 or $12.8 per MCF.<br><br>These official public disclosures on EMMA show Highland Park sewer charges with a declining population, at or near the poverty level, based on DWSD records have increased at five times the rate of other wholesale customers.   This disproportionate charges are included in the $19 million GLWA claims Highland Park owes. *In actuality the records show Highland Park, a City of low income, fixed income and indigent sewer users, has been overcharged to subsidized both the other wholesale customers and the State Highways department --MDOT.* |
| 9. Highland Park, again, has attempted to interject its alleged claims against the County of Wayne and the State of Michigan for storm water runoff, charges that Highland Park itself never billed to anyone, into these proceedings. As you should be aware, Highland Park at the eleventh hour, attempted to interject these very same issues into the trial court proceedings below and | 9. GLWA has failed, and continues to fail, as required under the CWA, to establish a user class in its bill to Highland Park for major governmental stormwater runoff producers.  Highland Park initially brought its third party claims that MDOT owed most of the $19 million claimed by DWSD in Judge Murphy's court. GLWA cannot turn a blind eye to free service provided to major |

4

| | |
|---|---|
| Judge Murphy rejected this eleventh hour defense. It is now surprising that this matter is again being alleged in a separate communication to various agency heads, when Highland Park basically abandoned this argument even in its appeal to the Michigan Court of Appeals from Judge Murphy's decision. None of the issues related to the storm water runoff concept or Highland Park's actions against the State of Michigan and County of Wayne were part of Highland Park's briefing before the Michigan Court of Appeals. | dischargers whether industrial or governmental. Furthermore GLWA is prohibited under the CWA from placing the overcharges for service set forth above and the overcharges for the free service obtained by MDOT on the ad valorem tax rolls where those Highland Park users who have paid their bills and 65% has been paid to DWSD as provided in the 1996 settlement agreement, will have to pay twice for subsidies to other DWSD customers and MDOT.  As set forth in the letter: [CWA guidelines] state in pertinent part the requirement of permittees such as GLWA to collect from users in the position of MDOT. "First, many communities are establishing separate fees, and in some cases, separate utilities, to fund storm water management requirements. Because storm water management is closely related to combined sewer overflow occurrences," *** <br><br> The primary restriction is that a user fee system must be in place that ensures that each user or user group pays its proportionate share of operating costs, based on the quantity and quality of wastes discharged. As a result, taxes may not be used to pay operating costs for these project combined sewer overflows. P. 40 |
| 10. Again, Highland Park raises the issue that the existing user charge system employed by GLWA is inconsistent with 33 USC §1284{b}. This issue is an issue that was raised with the trial court below again, at the eleventh hour.  The trial court rejected Highland Park's position.  This issue is now pending ... | 10. Section 1284(b) provides, in part: "(b) Additional determinations; issuance of guidelines; approval by Administrator; system of charges. <br><br> (1)  Notwithstanding any other provision of this title [33 USCS §§ 1281 et seq.], the Administrator shall not approve any grant for any treatment works under section 201(g)(1) [33 USCS § 1281(g)(1)] after March 1, 1973, unless he shall first have determined that the applicant (A) has adopted or will adopt a system of charges to assure that each recipient of waste treatment services within the applicant's jurisdiction, as determined by the Administrator, will pay its proportionate share (except as otherwise provided in this paragraph) of the costs of operation and maintenance (including replacement) of any waste treatment services provided by |

5

| | the applicant; and (B) has legal, institutional, managerial, and financial capability to insure adequate construction, operation, and maintenance of treatment works throughout the applicant's jurisdiction, as determined by the Administrator. In any case where an applicant which, as of the date of enactment of this sentence [enacted Dec. 27, 1977], uses a system of dedicated ad valorem taxes and the Administrator determines that the applicant has a system of charges which results in the distribution of operation and maintenance costs for treatment works within the applicant's jurisdiction, to each user class, in proportion to the contribution to the total cost of operation and maintenance of such works by each user class (taking into account total waste water loading of such works, the constituent elements of the wastes, and other appropriate factors), |
|---|---|
| | Contrary to your response the issue of proportionate share was raised in our answer to the complaint as set forth above in March of 2014 not at the eleventh hour.  We also raised the fact that GLWA putting the "account stated" bills  on the Highland Park ad valorem tax rolls was also in violation of §1284(b), since these taxes were  not in place before 1977.  (See, *Middlesex County Utilities Authority v. Sayreville*, 690 F.2d 358 (3d Cir. N.J. 1982)) GLWA's placement of sewer charges on ad valorem tax rolls and failure to require MDOT to pay its proportionate share as a major stormwater user class are fundamental violations of Highland Park's rights under the CWA.  (See e.g. Natural Resources Defense Council, Inc. v. United States EPA, 966 F.2d 1292 (9th Cir. 1992)) |
| 11. For the record, in the trial court, GLWA submitted expert testimony (by way of affidavit) from its expert, Bart Foster that its user charge system complied with the Clean Water Act. This evidence was unrefuted in the record then and remains unrefuted now. Mere allegations are insufficient to refute the record. The current letter continues the same shell game. Highland | 11. Highland Park continues to request the empirical data showing Highland Park is paying  its proportionate share.  Now our staff have determined that there have never been metered records of Highland Parks flow which is in direct violation of §1284(b) absent a detailed report showing our bills to retail and other user classes are "in proportion to the contribution to the total |

| | |
|---|---|
| Park complains but never presents the necessary evidence to support its complaints. | cost of operation and maintenance of such works by each user class (taking into account total waste water loading of such works, the constituent elements of the wastes, and other appropriate factors." |
| 12. Violation of the Combined Sewer Overflow Control Policy<br><br>Highland Park's claims that there was an alleged violation of a Combined Sewer Overflow Control Policy issued in April 1994 is an exceedingly delayed and unusually frivolous assertion. At this stage it seems peculiar that Highland Park has waited over 20 years to assert this claim. ***At this stage, it is clear that Highland Park's claims are simply those of a litigant that has not managed to prevail in the litigation and the assertions simply lack merit. Therefore, GLWA asserts that these frivolous aspersions are not even before the Court and should not be before the agencies to whom Highland Park writes. | 12. The claim of ongoing violations of the Combined Sewer Overflow to the Federal Regulators is still very timely.  This is an administrative claim at this point.  We were hopeful that GLWA would respond to the assertions of violative conduct and either admit or deny such conduct.  The letter fails to address any substantive issues by claiming this letter is about the litigation or it is barred by a statute of limitations.  The litigation was started by Detroit not Highland Park.  This is a separate administrative proceeding under Federal Law being advanced currently with the DWSD litigation but wholly separate from the litigation.  Because, the litigation was initiated by Detroit- our posture has been defensive.  This administrative proceeding under the Clean Water Act is a Highland Park's initiative. |
| 13. Environmental Justice<br>It is confounding that Highland Park, who is one of the largest debtors of GLWA, now complains about environmental justice. The cost associated with Highland Park's failure to pay its bills for these many years is not simply a cost that evaporates into thin air. That cost is borne by the other users of the system, which include the City of Detroit and other struggling municipalities who may view Highland Park's refusal to pay its bills as unjust to them as well. This is not about environmental justice as much as it is about a failure to pay. | 13.<br><ul><li>Highland Park is a debtor of GLWA only because it has not been charged more than its proportionate share.  What is confounding is that GLWA does not express the same amount of outrage against the State of Michigan that DWSD has known since have been receiving free service.  The total amount of the free service estimated at $26 million exceeds the amount of the judgment of $19 million that is now on appeal.  Allowing the State MDOT to not pay while putting MDOT's stormwater bill on the ad valorem tax rolls of one of the poorest cities in Michigan is the height of hypocrisy. As stated in our letter:</li><li>Failure to develop and implement an industrial and high risk runoff program, e.g., Detroit totally disregarded their hands on knowledge that the State MDOT did not develop a complete inventory of industrial and high risk facilities and did not inspect facilities for</li></ul> |

- compliance with the NPDES stormwater permittee requirements;
- Failure to develop and implement an adequate free service, illicit discharge identification and elimination program, for large highway e.g., Detroit did not conduct investigation to implement its stormwater program in its constituent wholesale users or subscribers like Highland Park, instead

Detroit put sewer fees on the City's ad valorem tax which clearly violates the Mandatory provisions of the Clean Water Act.

- Detroit sued to collect the overcharges and then after judgment put them on the advalorem tax base that also violates the CWA...

Environmental Justice

GLWA/Detroit recognize that service area includes minority and low income populations. The actions of GLWA and the State of Michigan violate the concepts of Environmental Justice reflected in the attached Executive Order 12898 of February 11, 1994. "Federal Actions to Address Environmental Justice in Minority Populations and Low-Income Populations." The median household income for Highland Park is $18,981 and 51.1 percent of the population is below the poverty level. In contrast, the median household income for the State of Michigan is $48,411 and 16.8 percent of the population is below the poverty level. The violation by GLWA in greatly overcharging the City which caused it fund sewer payment out of its general fund causing its financial default and depleting the cash flow required to maintain its water plant.

Highland Park has received in discovery correspondence showing the DWSD knew that MDOT which discharged millions of dollars of stormwater effluent each year was not paying its proportionate share of the treatment costs. DWSD also knew that its bills for sewer services were not based on any metered flow and that the sewer charges continued to increase even though the Highland Park retail and industrial base continued to decline. At this point the record shows that since 1/2010  Highland Park has paid

8

| | |
|---|---|
| | $13,090,188.85 to the DWSD/GLWA for sewer treatment and water services. |
| 14. While Highland Park complains about the cost associated with continuing to prosecute litigation and defend its frivolous positions, it continues to engage multiple law firms in the pursuit of frivolous claims that are simply unfounded. At this stage, GLWA thinks that this letter is just another smokescreen that is designed to evade the issues and further derail any attempts to work cooperatively with Highland Park toward a meaningful resolution of this matter. | 14. The problem with this picture is that rather than looking at Highland Park as the scapegoat for bad management the GLWA should look at its own house. <br><br> Section 1284(b) provides that the Administrator shall not make a grant to GLWA unless it determines that the recipient "has legal, institutional, managerial, and financial capability to insure adequate construction, operation, and maintenance of treatment works throughout the applicant's jurisdiction, as determined by the Administrator."  Highland Park's sewer charges are over 5% of Median Household Income and Highland Park is subsidizing the treatment costs of MDOT and Wayne county –huge stormwater dischargers. If you look at the Sewer Department financial statements the mismanagement leading to unconscionably high sewer fees and costs across the board  is obvious.  As just one example, in 2005 you have $2.947 billion in net capital assets and $2.639 in long term debt [$300 million more assets than debt]; by 2014 you have $3.385 billion in long term liabilities and $2.87 billion in net capital assets [$500 million less in assets than debt] Highland Park and other wholesale customers are charged for debt $500 million more than the assets purchased. Having $500 million less in assets than liabilities means GLWA is insolvent based on the balance sheet test. Detroit just completed a Chapter 9 bankruptcy and failed to correct this structural balance sheet insolvency in its sewer enterprise. The insolvency of GLWA is reflected in its debt to asset ratio of 1.17. When the ratio is over 1.0 the enterprise is technically insolvent with an unsolvable, risky debt cost in its operations budget... This high debt to assets ratio means the wholesale users and ultimate consumers are being charged rates for service that is $500 million greater than value of the underlying assets providing the service. The EPA has to look at whether GLWA as an insolvent permittee can continue to provide required services to its constituents. (See, Exhibit D Financial statements). |

# EXHIBIT A

## SETTLEMENT AGREEMENT

THIS SETTLEMENT AGREEMENT (hereinafter "Agreement") is made this /8th day of June, 1996, among and between the CITY OF DETROIT, a municipal corporation, acting through its Board of Water Commissioners and the Detroit Water and Sewerage Department (hereinafter "Detroit"), the CITY OF HIGHLAND PARK, a municipal corporation (hereinafter "Highland Park"), and CHRYSLER CORPORATION, a Delaware corporation (hereinafter "Chrysler").

WHEREAS, Detroit provides sewage treatment and disposal services to Highland Park and its citizens, pursuant to a certain Sewage Service Contract dated June 8, 1983, in which Highland Park agreed, among other things, to pay Detroit for those services at such rates as Detroit may establish from time to time; and

WHEREAS, Chrysler and Highland Park entered into an agreement dated December 1, 1993, whereby Chrysler agreed to pay Highland Park $30 million in various installments and the last installment in the amount of $5 million is due on December 1, 1996; and

WHEREAS, on November 22, 1992, Detroit instituted suit against Highland Park in the U.S. District Court for the Eastern District of Michigan, Southern Division, in civil action no. 92-CV-76775 to recover arrears due from Highland Park to Detroit for sewage wastewater treatment services provided to Highland Park by Detroit; and

WHEREAS, Detroit obtained a Judgment against Highland Park in civil action no. 92-CV-76775 on June 28, 1993, in the amount of $8,093,865.02, for wastewater treatment services provided through March 29, 1993; and

WHEREAS, on August 12, 1994, Detroit instituted suit against Highland Park in the U.S. District Court for the Eastern District of Michigan, Southern Division, in civil action no. 94-CV-73135 to recover arrears due from Highland Park to Detroit for sewage wastewater treatment services provided to Highland Park by Detroit after March 29, 1993; and

WHEREAS, on October 19, 1994, the U.S. District Court, in civil action no. 92-CV-76775 issued a Writ of Mandamus requiring Highland Park to place the full amount of the June 28, 1993 Judgment on its next tax roll; and

WHEREAS, Highland Park filed a motion to set aside or, in the alternative, to reconsider the Writ of Mandamus entered on October 19, 1994, which was denied by Order of the District Court dated November 18, 1994; and

WHEREAS, Highland Park filed a motion to set aside the Judgment or the Writ of Mandamus under Rule 60(b)(6) and for an

evidentiary hearing on the merits which was denied by Order of the District Court dated December 22, 1994; and

WHEREAS, on January 12, 1995, Highland Park filed a Notice of Appeal from the December 22, 1994 order of the District Court denying Highland Park's post-judgment motion to set aside the Writ of Mandamus, being Appeal No. 95-1076 in the U.S. Court of Appeals for the Sixth Circuit; and

WHEREAS, Chrysler was granted leave to intervene in civil action no. 92-CV-76775 by Order of the District Court dated February 2, 1995; and

WHEREAS, Detroit obtained a second judgment against Highland Park in civil action no. 94-CV-73135, on February 21, 1995, in the amount of $2,505,210.44 for wastewater treatment services provided through November 1994; and

WHEREAS, on February 28, 1995, the District Court entered a post-judgment Order For Satisfaction Of Judgments, requiring, among other things, that Highland Park pay to Detroit the amount of $1,800,000 within one week from the date of the order and that Chrysler pay directly to Detroit monies otherwise due to Highland Park under a certain agreement between Chrysler and Highland Park dated December 1, 1993; and

WHEREAS, pursuant to the District Court's February 28, 1995 Order For Satisfaction Of Judgments, Highland Park paid to Detroit $1,800,000 on March 7, 1995; and

WHEREAS, on March 24, 1995, Chrysler filed a Notice of Appeal with the U.S. Court of Appeals for the Sixth Circuit

-3-

from the post-judgment Order For Satisfaction Of Judgment of the District Court dated February 28, 1995, being appeal no. 95-1373, alleging among other things, that the District Court's October 19, 1994 Writ of Mandamus was unconstitutional and further that the District Court's order requiring it to pay directly to Detroit the monies otherwise due to Highland Park under the December 1, 1993 agreement was unlawful; and

WHEREAS, Detroit maintains and has maintained that the October 19, 1994 Writ of Mandamus and the February 28, 1995 Order For Satisfaction of Judgments issued by the District Court are lawful, valid orders binding upon both Highland Park and Chrysler and should be affirmed by the U.S. Court of Appeals for the Sixth Circuit; and

WHEREAS, during the pendency of the above-described appeals, the U.S. Court of Appeals for the Sixth Circuit entered an amended order on November 30, 1995, granting a motion by Highland Park and Chrysler to stay that portion of the district court's post-judgment order requiring Chrysler to make direct payment to Detroit monies Chrysler owed Highland Park on the condition that the payments be placed in an escrow account, provided further that alternatively, on the agreement of the parties, the money may be deposited with the Clerk of the U.S. District Court, Eastern District of Michigan, Southern Division (the "Court Escrow"); and

WHEREAS, pursuant to the above-described November 30, 1995 Order of the U.S. Court of Appeals for the Sixth Circuit,

-4-

and with the agreement of the parties, Chrysler has paid into the Court Escrow the sum of $8 million, otherwise due to Highland Park under the December 1, 1993 Agreement between them; and

WHEREAS, the above appeals have been briefed by the parties and oral argument has been heard by the U.S. Court of Appeals for the Sixth Circuit on December 5, 1995; and

WHEREAS, during the pendency of the above-referenced appeals, Highland Park has fallen further into arrears for wastewater treatment services provided by Detroit from December 1994 through the service month of March 1996 (after credit for a payment of $146,817.76 received by Detroit in May, 1996), in the amount of $701,665.05; and

WHEREAS, Detroit, Highland Park and Chrysler mutually desire to amicably resolve the disputes among and between them; to avoid the delays and uncertainties attendant upon further protracted, burdensome and costly litigation; and to provide a means by which Highland Park will be able to satisfy its current and future obligations to Detroit for wastewater treatment services; and

WHEREAS, Chrysler, in order to avoid the risks inherent in litigation and in furtherance of its real estate interests in Highland Park, will (1) provide an advance payment of $2 million on or before June 18, 1996 to Highland Park; (2) stagger payment to Highland Park of the remaining $3 million (both of which payments are due pursuant to the 1993 Agreement between Chrysler

and Highland); and (3) pay $2 million to Detroit not otherwise due or payable to Highland Park.

NOW THEREFORE, it is mutually agreed as follows:

1.    (a)  Highland Park will adopt a water/wastewater rate increase applicable to service provided by Highland Park to its customers in the amount of 14% and 68%, respectively, or a composite increase of 44%. The resulting water rate will be $12.05 per kcf and resulting wastewater rate will be $22.66 per kcf. The rate increase will be effective July 1, 1996 on all bills rendered on or after August 1, 1996. As a condition precedent to Detroit's acceptance of this settlement agreement, Highland Park shall provide Detroit with a certified copy of the City Council resolution enacting such rate increase.

(b)  Highland Park further covenants to take whatever further lawful measures that may be necessary to meet timely its obligations to Detroit under the terms of the June 8, 1983 Sewage Service Contract between them.

2.    Chrysler shall pay to Highland Park the sum of $2 million on or before June 18, 1996.

3.    On or before June 18, 1996, Highland Park shall enter into a Stipulation, in the U.S. Court of Appeals for the Sixth Circuit, with Detroit and Chrysler, to dismiss the appeals pending in that Court and to obtain an order providing that $4.5 million of the funds currently being held in the Court Escrow by the United States District for the Eastern District of Michigan, Southern Division, pursuant to the Court's November 30, 1995 Order, be disbursed to Detroit, and that the

-6-

balance of the Court Escrow, plus any and all interest accrued thereon (less any fees authorized by the Judicial Conference of the United States), be disbursed to Highland Park.

4.   The sum of $4.5 million to be received by Detroit from the U.S. District Court, shall be applied as follows:

(a)  $701,665.05 shall be applied to satisfy arrears incurred by Highland Park to Detroit for the period December 1994 through March 1996;

(b)  The balance thereof, or $3,798,335.95, shall be applied by Detroit toward satisfaction of the unpaid balance of the Judgments entered in favor of Detroit against Highland Park in civil actions nos. 92-CV-76775 and 94-CV-73135 referred to above.

.5... .(a)...The parties will further stipulate to the entry of an Amended Consent Judgment, in the form and content attached hereto, and entry of an Order of Withdrawal and Closure of Escrow Account, in the U.S. District Court.

(b)  The mutual rights and obligations of the parties to this Settlement Agreement are contractual and not a mere recital, and shall remain in full force and effect, notwithstanding entry of the Consent Judgment.

6.   (a) Highland Park shall maintain the existing escrow account at Omni Bank, account no. 651-000-127. Highland Park shall continue to deposit into said account, on a daily basis, through July 31, 1996, 55% of any and all amounts received by it in payment of bills for water or wastewater treatment services rendered by it to its customers. Beginning

August 1, 1996 and thereafter, Highland Park shall deposit into said account, on a daily basis, 65% of any and all amounts received by it in payment of bills for water or wastewater treatment services rendered by it to its customers. Any and all amounts so deposited shall be held in trust solely for the benefit of the City of Detroit and shall be paid over to the City of Detroit through its Detroit Water and Sewerage Department, on a monthly basis, on or before the 10th day of each month.

(b) Highland Park shall make the financial and accounting records of its Water and Sewerage Department, including bank statements from the above-referenced escrow account, available for inspection, review and copying by Detroit within 15 days after receipt of a written request for such inspection and review. Any inspection, review and copying shall be conducted by Detroit during normal business hours.

(c) Detroit shall first apply any and all amounts received by it from the above-referenced escrow account to satisfy or reduce any existing arrears and then to current services. In the event that any such payments by Highland Park to Detroit result in a surplus in excess of any arrears and current services, such surplus will be returned to Highland Park within 5 days of the end of the month in which such surplus was created.

7. On or before June 18, 1996, Highland Park shall execute and deliver to Detroit a promissory note in the amount

-8-

of $1 million, payable July 1, 1997 (the "Highland Park" Note). On or before June 18, 1996, Chrysler shall execute and deliver a promissory note to Highland Park in the amount of $1 million payable July 1, 1997 (the "Chrysler A Note"). On or before June 18, 1996, Highland Park shall assign to Detroit all of its right, title and interest in the Chrysler A Note, which assignment shall have immediate effect. Detroit will accept such assignment in full and complete discharge of Highland Park's obligation to it under the Highland Park Note.

8.   On or before June 18, 1996, Chrysler shall execute and deliver to Detroit a promissory note in the amount of $500,000 payable July 1, 1997 (the "Chrysler B Note"), and a promissory note in the amount of $1.5 million payable July 1, 1998 (the "Chrysler C Note").

9.   Upon receipt by Detroit of $4.5 million from the Court Escrow as provided in paragraphs 3 and 4 above, and receipt by Detroit of the Highland Park Note, the Assignment by Highland Park to Detroit of the Chrysler A Note, the Chrysler B Note and the Chrysler C Note, Detroit will file full and complete satisfactions of judgments in civil actions no. 92-CV-76775 and 94-CV-73135.

10.   All written notices or other communications concerning the Settlement Agreement shall be delivered or mailed to the following addresses:

(1) Highland Park:          City Clerk
                            City of Highland Park
                            3 Gerald Avenue
                            Highland Park, Michigan 48203

(2) Detroit:

Detroit Board of Water
Commissioners
506 Water Board Building
735 Randolph Street
Detroit, Michigan 48226

(3) Chrysler:

Office of the General Counsel
Automotive Legal Affairs
1000 Chrysler Drive
Auburn Hills, Michigan 48326

11.   In the event that Highland Park fails to pay Detroit for current or future services, Detroit may take any action it deems necessary or appropriate to obtain and ensure payment for the same and to seek any further relief as may be appropriate under the circumstances.

12:   (a)   This Settlement Agreement shall take effect upon: its execution by the Director of the Detroit Water and Sewerage Department on behalf of the City of Detroit; the Honorable Linsey Porter, Mayor of the City of Highland Park; an authorized representative of Chrysler; approval by the Board of Water Commissioners and the City Council of the City of Detroit; approval by the City Council of the City of Highland Park; entry of the Amended Consent Judgment referred to in paragraph 5 above; receipt by Detroit of the monies referred to in paragraphs 3 and 4 above; and execution and delivery of the promissory notes and assignment referred to in paragraphs 7 and 8 above.

(b)   The approval of this Settlement Agreement by the Board of Water Commissioners and the City Council of the City of Detroit shall be obtained on or before June 12, 1996. Detroit will provide to Highland Park a certified copy of the

-10-

resolution of the Board of Water Commissioners and the City Council approving this Settlement Agreement on or before June 17, 1996.

(c)  The approval of this Settlement Agreement by the City Council of the City of Highland Park shall be obtained on or before June 17, 1996.  Highland Park will provide to Detroit a certified copy of the resolution of its City Council approving this Settlement Agreement on or before June 18, 1996.

IN WITNESS WHEREOF, this Agreement has been executed on the date first above written.

CITY OF DETROIT, a
municipal corporation

By: _____
STEPHEN GORDEN

Its: Director, Detroit Water
and Sewerage Department

CHRYSLER CORPORATION, a
Delaware corporation

By: _____
W. FRANK FOUNTAIN

Its: Vice President
Government Affairs

CITY OF HIGHLAND PARK, a
municipal corporation

By: _____
LINSEY PORTER

Its: _____ MAYOR _____

CITY OF HIGHLAND PARK, a
municipal corporation

By: _____

Its: _____ CITY CLERK _____

6273