

GREAT LAKES
WATER AUTHORITY
OFFICE OF THE CHIEF EXECUTIVE OFFICER

735 RANDOLPH STREET
DETROIT, MICHIGAN  48226
WWW.GLWATER.ORG

April 11, 2016



Honorable Hubert Yopp
Mayor, City of Highland Park
Robert B. Blackwell Municipal Building
12050 Woodward Avenue
Highland Park, MI  48203

Re:  **Notice of Alleged Violation of Section**
(1) **§204(b)(1) User Charge Provisions of the Clean Water Act and Regulations Thereunder and(2) the EPA Combined Sewer Overflow (CSO) Policy Issued April 19, 1994**

**Request for Review under Executive Order 12898 of February 11, 1994, "Federal Actions to Address Environmental Justice and Minority Populations and Low Income Populations"**

Dear Mayor Yopp:

### A.  General Statements and Purpose

This letter is in response to the City of Highland Park's ("Highland Park") March 3, 2016 letter which was received roughly a week after its purported date of preparation.  The Great Lakes Water Authority (GLWA) is somewhat perplexed by all of the legal permutations in the letter since it appears to be a combination of different legal notices, most of which are inapplicable to GLWA.  First, the letter appears to include a notice as a precursor to a citizen's civil suit under 33 USC §1365(b).  GLWA does not see where it would necessarily be a proper party to any such suit and objects to any assertion that it would be a proper party to such a suit.  GLWA will aggressively defend against such an action given its implications and the frivolous nature of any such action against the GLWA.

Second, the GLWA is not exactly sure what request is being made to it with respect to Executive Order 12898 of February 11, 1994.  These assertions were never made in the current litigation with Highland Park or in any of the preceding litigation.

### B.  Background Facts

With respect to the background facts asserted by Highland Park, GLWA does not understand the relevance of these facts to Highland Park's failure to pay its water and sewer bills, which led to the action that resulted in the City of Detroit's April 30, 2015 Judgment (the "Judgment") against Highland Park.  The

Honorable Hubert Yopp
Mayor, City of Highland Park
April 11, 2016
Page 2

Judgment was entered against Highland Park for its failure to pay its water and sewer bills. The background facts asserted by Highland Park with respect to its population decreases were neither offered on the record below, nor constitute a viable defense for Highland Park's failure to pay its bills.

In addition, GLWA sees no relevance to Highland Park's reference to a Combined Sewer Overflow Guidance for Financial Capability and Assessment Schedule and Development document to these proceedings. Again, this latest assertion was not part of the record below and is not germane to Highland Park's current refusal to pay its water and sewer bills which has been a continuous and ongoing problem since 1996.

Furthermore, Highland Park's assertion of per capita population based analysis vis-à-vis water and sewer charges has no bearing on the water and sewer bills that were unpaid by Highland Park that were part of the Judgment. Highland Park includes comparisons only as far back as 2006, which does not correspond to the period of time that serves as the basis for the Judgment at issue in this particular situation. Moreover, Highland Park's newly minted defenses would clearly run afoul of the statute of limitations applicable to the underlying action itself.

Highland Park, again, has attempted to interject its alleged claims against the County of Wayne and the State of Michigan for storm water runoff, charges that Highland Park itself never billed to anyone, into these proceedings. As you should be aware, Highland Park at the eleventh hour, attempted to interject these very same issues into the trial court proceedings below and Judge Murphy rejected this eleventh hour defense. It is now surprising that this matter is again being alleged in a separate communication to various agency heads, when Highland Park basically abandoned this argument even in its appeal to the Michigan Court of Appeals from Judge Murphy's decision. None of the issues related to the storm water runoff concept or Highland Park's actions against the State of Michigan and County of Wayne were part of Highland Park's briefing before the Michigan Court of Appeals. At this juncture, GLWA would have to assume that this issue will be deemed abandoned by Highland Park on appeal.

Even more importantly, Highland Park has an independent action pending against the State of Michigan and the County of Wayne in the Court of Claims. Given the pendency of this litigation among these parties, GLWA does not believe it is prudent for it to comment on the merit of Highland Park's independent efforts to address the assertion that some portion of its unpaid water and sewer bills which now exceed $20 Million Dollars under the Judgment and which on an actual basis exceed $25 Million Dollars, are the responsibility of the defendants in Highland Park's action against the County of Wayne and the State of Michigan. As Highland Park is well aware, as a retail water provider within its corporate limits, it is its responsibility to determine its retail rates, including those charged the State and County, while meeting its payment obligations to GLWA. GLWA does not have a role in that process.

### C.   Violation of Mandatory Requirements of Section 204(b)

Again, Highland Park raises the issue that the existing user charge system employed by GLWA is inconsistent with 33 USC §1284(b). This issue is an issue that was raised with the trial court below again, at the eleventh hour. The trial court rejected Highland Park's position. This issue is now pending before

Honorable Hubert Yopp
Mayor, City of Highland Park
April 11, 2016
Page 3

the Michigan Court of Appeals since it is the only issue Highland Park raised in its appeal.  At this stage, since the trial court has rejected Highland Park's position on this legal claim, GLWA has to conclude that Highland Park's position is unfounded.

For the record, in the trial court, GLWA submitted expert testimony (by way of affidavit) from its expert, Bart Foster, that its user charge system complied with the Clean Water Act.  This evidence was unrefuted in the record then and remains unrefuted now.  Mere allegations are insufficient to refute the record.  The current letter continues the same shell game.  Highland Park complains but never presents the necessary evidence to support its complaints.

Highland Park's efforts to combine this issue with the process for developing an industrial user charge based system for regulating secondary discharges, is simply unfounded.  Highland Park appears to confuse the requirements of the overall user charge based system and the regulation of secondary discharges under the Industrial Waste Control Program.   In any event, this confusion is also irrelevant and inappropriate since Highland Park has paid none of the water, sewer or industrial waste control charges leading to the Judgment and the pending litigation.

### D.   Violation of the Combined Sewer Overflow Control Policy

Highland Park's claims that there was an alleged violation of a Combined Sewer Overflow Control Policy issued in April 1994 is an exceedingly delayed and unusually frivolous assertion.  At this stage it seems peculiar that Highland Park has waited over 20 years to assert this claim.  It is further astounding that Highland Park would assert this claim over 2 years after the litigation was filed against it in the Wayne County Circuit Court and nearly a year after a final judgment was issued.  While complaining about legal fees and costs, Highland Park appears to be voluntarily incurring them as it manufactures defenses after the fact and ignores its bills.

At this stage, it is clear that Highland Park's claims are simply those of a litigant that has not managed to prevail in the litigation and the assertions simply lack merit.  Therefore, GLWA asserts that these frivolous aspersions are not even before the Court and should not be before the agencies to whom Highland Park writes.

### E.   Environmental Justice

It is confounding that Highland Park, who is one of the largest debtors of GLWA, now complains about environmental justice.  The cost associated with Highland Park's failure to pay its bills for these many years is not simply a cost that evaporates into thin air.  That cost is borne by the other users of the system, which include the City of Detroit and other struggling municipalities who may view Highland Park's refusal to pay its bills as unjust to them as well.  This is not about environmental justice as much as it is about a failure to pay.

Honorable Hubert Yopp
Mayor, City of Highland Park
April 11, 2016
Page 4

While Highland Park complains about the cost associated with continuing to prosecute litigation and defend its frivolous positions, it continues to engage multiple law firms in the pursuit of frivolous claims that are simply unfounded. At this stage, GLWA thinks that this letter is just another smokescreen that is designed to evade the issues and further derail any attempts to work cooperatively with Highland Park toward a meaningful resolution of this matter.

Very truly yours,

William M. Wolfson
Chief Administrative and Compliance Officer/
General Counsel

SM/
cc:    Mr. Robert Kaplan, Acting Administrator, Environmental Protection Agency
       Water Enforcement Division, United States Environmental Protection Agency
       United States Department of Justice
       Mr. Keith Creagh, Director, Michigan Department of Environmental Quality
       Avery F. Williams, Williams Acosta

S:\DWSD - 2318\City of Highland Park - 2321\L-Mayor Hubert Yopp 3-21-16.doc



Return to Excellence

OFFICE OF THE MAYOR
HUBERT YOPP

March 3, 2016
Via Certified Mail – Return Receipt Requested

Robert Kaplan, Acting Administrator
USEPA REGION 5
77 West Jackson Boulevard
*Mail Code:* R-19J
Chicago, IL 60604-3507

Water Enforcement Division
U. S. Environmental Protection Agency
1200 Pennsylvania Ave, N.W. (MC 2243A)
Washington, DC 20460

U.S. Department of Justice
Environment and Natural Resources Division
Law and Policy Section
950 Pennsylvania Avenue, N.W.
Washington, DC 20530-0001

Keith Creagh, Director
Michigan Department of Environmental Quality
525 West Allegan Street
Constitution Hall
Lansing, MI 48909-7973

Sue McCormick, Executive Director
Great Lakes Water Authority
735 Randolph, Suite 1900
Detroit, MI 48226

Re:    Notice of Alleged Violation of (1) Section 204(b)(1), User Charge Provisions of the Clean
       Water Act and Regulations thereunder, and (2) the EPA Combined Sewer Overflow (CSO)
       Policy issued April 19, 1994

Request for Review under Executive Order 12898 of February 11, 1994, "Federal Actions to
Address Environmental Justice in Minority Populations and Low-Income Populations"

ROBERT B. BLACKWELL MUNICIPAL BUILDING
12050 Woodward Avenue
Highland Park, Michigan 48203
Phone: 313-252-0050 ext. 240
Fax: 313-852-7320
hyopp@highlandparkcity.org



Return to Excellence

**OFFICE OF THE MAYOR**

HUBERT YOPP

Outline of Contents:

A.   Purpose of Statutory Notice and Request ................................................... 2

B.   Background Facts. ....................................................................................... 2

C.   Violation of Mandatory requirements of Section 204(b ............................ 6

D.   Violation of the Combined Sewer Overflow Control Policy...................... 8

E.   Detroit put sewer fees on the City's ad valorem tax, which clearly violates the Mandatory provisions of the Clean Water Act. ........................................ 9

F.   Environmental Justice............................................................................. 10

To Notice Recipients:

### A.  Purpose of Statutory Notice and Request

This Notice is delivered under 33 U.S.C. § 1365(b), which provides that no action may be commenced against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under the Clean Water Act, 33 USCS §§ 1251 *et seq*, (the "Act" or "CWA"), which is not discretionary with the Administrator, prior to notice.

As a separate and independent matter, the City of Highland Park, Michigan ("Highland Park") has included in this letter a request under Executive Order 12898 of February 11, 1994, "Federal Actions to Address Environmental Justice in Minority Populations and Low-Income Populations," which focuses on the impact of Michigan Department of Transportation's (MDOT) failure to pay their fair, proportionate share of the cost of provided sanitary sewers in Highland Park where MDOT is the largest sewer system user.

### B.  Background Facts.

On March 3, 2014, Detroit filed suit against Highland Park claiming $18 million in past due sewer fees. The Complaint claimed that a contract settlement agreement from 1996 required Highland Park to pay 65% of a designated amount to be collected from water users who bought water from Highland Park's water plant. The Complaint did not allege that Highland Park had been charged a proportionate share for sewer services as proscribed by the Act.

From 1990 until 2014, the City's population has declined as follows:

ROBERT B. BLACKWELL MUNICIPAL BUILDING
12050 Woodward Avenue
Highland Park, Michigan 48203
Phone: 313-252-0050 ext. 240
Fax: 313-852-7320
hyopp@highlandparkcity.org



Return to Excellence

**OFFICE OF THE MAYOR**

HUBERT YOPP

| 1990 | 20,121 | −27.9% |
|------|--------|--------|
| 2000 | 16,746 | −16.8% |
| 2010 | 11,776 | −29.7% |
| Est. 2014 | 10,375 | −11.9% |

Per the U.S. Census, the number of households in 2013 was 4,534, and the Median Household Income (MHI) was $18,981. Because 70% of the billings generally go to household accounts, the 2014 billing of $6,887,428 (see chart below) represents a combined sewer fee of approximately $4,821,199 divided by 4,534 or $1,063 per household. The $1,063 per household divided by a MHI of $18,981 is 5.6% of MHI. The upper end of reasonableness for a sewer fee is 2% of MHI.

As stated in the EPA's "Combined Sewer Final Overflows Guidance for Financial Capability Assessment and Schedule Development," dated February 1997, page 19:

"To assess the financial impact CSO controls may have on the permittee's residential users, the Residential Indicator is compared to the financial impact ranges that reflect EPA's previous experience with water pollution control programs. These ranges are as follows:

| Financial Impact | Residential Indicator (CPH as % M H I) |
|------------------|----------------------------------------|
| Low | Less than 1.0 Percent of MHI |
| Mid-Range | 1.0 - 2.0 Percent of I\1HI |
| High | Greater than 2.0 Percent of MHI" |

As shown in the chart below, over the last 8 years, the sewer fee per capita for Highland Park residents has ***tripled***—from $222 per capita in 2006 to $663 per capita in 2014.

ROBERT B. BLACKWELL MUNICIPAL BUILDING
12050 Woodward Avenue
Highland Park, Michigan 48203
Phone: 313-252-0050 ext. 240
Fax: 313-852-7320
hyopp@highlandparkcity.org

| YEAR | HIGHLAND PARK POPULATION | DWSD ANNUAL SEWER FEES AND CHARGES (Source: DWSD) | ANNUAL CHARGES PER CAPITA |
|---|---|---|---|
| 2006 | 15,161 | 3,370,616 | 222.32 |
| 2007 | 14,644 | 3,666,450 | 250.37 |
| 2008 | 14,133 | 4,363,746 | 308.76 |
| 2009 | 13,850 | 4,438,562 | 320.47 |
| 2010 | 11,674 | 3,965,206 | 339.66 |
| 2011 | 11,315 | 4,497,397 | 397.47 |
| 2012 | 10,942 | 4,840,249 | 442.36 |
| 2013 | 10,463 | 5,007,724 | 478.61 |
| 2014 | 10,375 | 6,887,428 | 663.85 |

Source: Column 1, Population U.S. Census; Column 2, Great Lakes Water Authority (formerly DWSD).

In 1993 MDOT acquired the Davison Freeway and widened it with a federal grant. At the time MDOT had been paying Detroit for stormwater runoff for the Lodge, I-75 and other freeways since a 1986 6th Circuit decision (*City of Detroit v State of Michigan and County of Wayne*, 803 F.2d 1411 (6th Cir. 1986). However, Detroit continued to bill Highland Park for stormwater runoff for Davison and all other State-owned freeways. The DWSD failed to follow the requirements of its 1982 sewer agreement to impose on MDOT the same obligation to pay Highland Park. The 1982 Agreement provides, in relevant part, the board shall:

D.      Carry out all   inspection, surveillance and monitoring procedures necessary to determine, independent of information supplied by Industrial and Commercial Users, compliance or noncompliance with applicable National Pretreatment Standards and other more restrictive requirements as may be imposed by the BOARD,

F.      Carry out all inspection, surveillance and ·monitoring procedures necessary to determine, independent of information supplied by Industrial and Commercial Users, compliance or noncompliance with applicable National Pretreatment Standards and other more restrictive requirements as may be imposed by the BOARD.

Rather than comply with its fiduciary, contractual and CWA duties, Detroit overwhelmed Highland Park with legal expenditures. Highland Park could not match these legal expenditures, as a small subscriber, to forge a consent decree in 1996 where the entire sewer bill was paid by a formula which excluded from Detroit billings any payments from MDOT and Wayne County as large government users with extraordinary concentrations of stormwater runoff.

4



Return to Excellence

OFFICE OF THE MAYOR

HUBERT YOPP

To be sure this consent decree did not reflect the CWA formula for residential cost for sewer treatment, to wit:

$$\underline{Residential\ Share\ of\ Treatment\ Costs} = Total\ Costs\ \ X\ \ \frac{\underline{Residential\ Wastewater\ Flow}}{Total\ Wastewater\ flow}$$

As shown above, although the population and residential wastewater flow of Highland Park continued to decrease, the sewer bill tripled on a per capita basis.

Highland Park's recent engineering studies show that a large percentage of the impervious parts of Highland Park, which is only three square miles, are attributable to the Davison and a minor part of the Lodge Freeways, and various State roads managed by MDOT and Wayne County Michigan.   It is estimated that MDOT is an institutional user contributing between 15% and 25% of the total wastewater flow each year from stormwater runoff.  Detroit failed to develop any plan to collect from MDOT for the portion of the Davison (and small portion of the Lodge) located in Highland Park.  The entire billing of DWSD was based on water meter flow, which allowed that wastewater users without water meters like MDOT and Wayne County to avoid paying their proportionate share.

Highland Park is only three square miles, MDOT-controlled roadways are impervious surfaces and represent a major percentage of the total impervious land mass of Highland Park. MDOT is the largest stormwater sewer user in Highland Park, but is allowed by grantee DWSD to get free service paid primarily by residents. When Highland Park's population continued to decline, and the largest stormwater sewer user, MDOT, was getting free service paid by the declining number of residents. The sewer bill continued to increase, resulting in loans from Highland Park's "general fund" to help residents pay the DWSD sewer bill.  This ultimately resulted in Highland Park's inability to generate sufficient revenue to keep its water plant in good repair, resulting in a financial takeover by the State, and the shutting down the water plant ordered by the State.

Following the water plant shut down, Detroit supplied water, and the combined sewer and water bill was too much to pay given the income level, low population level, and free sewer service provided to the State of Michigan.  The stormwater runoff, which primarily benefitted roadway transportation for the entire metropolitan area, became an increasingly larger portion of the bill owed by Highland Park.

Highland Park has attempted to get Detroit to explain the basis for the City's sewer bill and why Detroit did not develop a plan to collect from MDOT, but has received no response.  In fact, the only response was the notice of a potable water supply termination or shut off, which Highland Park had stop through a temporary injunction granted by the

ROBERT B. BLACKWELL MUNICIPAL BUILDING
12050 Woodward Avenue
Highland Park, Michigan 48203
Phone: 313-252-0050 ext. 240
Fax: 313-852-7320
hyopp@highlandparkcity.org



Return to Excellence

**OFFICE OF THE MAYOR**

HUBERT YOPP

court. The City Administrator continues to request the basis for the Detroit sewer bills, to no avail.

### C.   Violation of Mandatory Requirements of Section 204(b)

Under the user charge provisions of the Act, the EPA administrator shall not approve a grant unless having first determined that the applicant:

> (A) has adopted or will adopt a system of charges to assure that each recipient of waste treatment services within the applicant's jurisdiction, as determined by the Administrator, will pay its proportionate share (except as otherwise provided in this paragraph) of the costs of operation and maintenance (including replacement) of any waste treatment services provided by the applicant * * *. 33 U.S.C. § 1284(b)(1) (Supp.1982) (hereinafter referred to as "section 204(b)(1)).

The EPA regulations specify what requirements a user charge system must meet in order to satisfy section 204(b)(1).)  In general, the user charge system proposed by a grantee such as the GLWA must, in order to meet approval, ensure that "each user . . . pays its proportionate share of operation and maintenance (including replacement) costs of treatment works within the grantee's service area, based on the user's proportionate contribution to the total waste water loading from all users. . . ." 40 C.F.R. § 35.2140. Moreover, a "regional treatment system accepting wastewaters from other municipalities," such as GLWA, was mandated to require that "the subscribers receiving waste treatment services from the grantee shall adopt user charge systems in accordance with section 204(b)(1)(A) of the Act (quoted above) and §§ 35.929 through 35.929-3" of the regulations. (Reserved as of December 14, 2014.)

***GLWA/Detroit charges to Highland Park have not been proportionate to its use, it currently includes costs based upon the charges being based on water use only and the free treatment given to MDOT for rainwater runoff.***

In 1993 the EPA issued a guide on "Evaluating Municipal Wastewater User Charge Systems, which captures the violation as follows:

WHY ARE PROPORTIONAL CHARGES  IMPORTANT?

Next, look at the user charge rate structure. Does each user (or user class) pay its fair share of operation, maintenance, and replacement (OM&R)?  Users who understand the value of wastewater service - and who feel they 'are being treated fairly in comparison to other users - are willing to pay for the service. ***Only user charge systems that charge in proportion to use comply with the regulations.***

ROBERT B. BLACKWELL MUNICIPAL BUILDING
12050 Woodward Avenue
Highland Park, Michigan 48203
Phone: 313-252-0050 ext. 240
Fax: 313-852-7320
hyopp@highlandparkcity.org



Return to Excellence

OFFICE OF THE MAYOR

HUBERT YOPP

Proportionate use of the sewer system includes consideration of discharge quality as well as discharge quantity.

To determine if the user charge rate passes the "fair share" test, examine the wastewater rate structure and answer questions 16 through 22.

Does each user receive a bill for services?

All users should be identified and billed for wastewater services. _**Systems that allow some users to receive free service aren't treating paying customers fairly**_.

In this case the largest user of Highland Park's sewer pipes, with the greatest number of gallons of water throughput on an annual basis—MDOT—was allowed by the grantee GLWA to get free service subsidized by one of the lowest MHI cities in the State of Michigan. The 1996 Settlement Agreement between Highland Park and Detroit came 10 years after Detroit had been collecting from MDOT for stormwater runoff for the same freeways it signed a consent decree to have Highland Park residents pay for [MDOT] as a part of their sewer bill. So User fees were not proportionate in violation of 204(b)(1) for two reasons:

1. MDOT was getting free service and was the largest commercial user.
2. Detroit's sewer user fees were increasing based on false water use figures even as population and water use declined.

The User Charge System Guide defines "industrial user" as a user producing discharge volume of 25,000 gallons a day or more. MDOT appears to fit that category.

Does each Industrial user pay its fair share of OM&R costs based upon actual use of the wastewater facility?

"A 'significant industrial user' is a user that contributes more than 10 percent of the flow or pollutants for which the treatment plant is designed to handle.

Does the utility have any significant industrial users?

The CFR requires significant industrial users to pay that portion of the grant amount associated with the treatment of its wastes. This addresses capital project (not OM&R) costs.

ROBERT B. BLACKWELL MUNICIPAL BUILDING
12050 Woodward Avenue
Highland Park, Michigan 48203
Phone: 313-252-0050 ext. 240
Fax: 313-852-7320
hyopp@highlandparkcity.org



Return to Excellence

**OFFICE OF THE MAYOR**

HUBERT YOPP

There has been a breach of the fiduciary duty owed Highland Park. The EPA regulations specify what requirements a user charge system must meet in order to satisfy section 204(b)(1).)  In general, the user charge system proposed by a grantee such as the GLWA must, in order to meet approval, ensure that "each user . . . pays its proportionate share of operation and maintenance (including replacement) costs of treatment works within the grantee's service area, based on the user's proportionate contribution to the total waste water loading from all users. . . ." 40 C.F.R. § 35.2140  Moreover, a "regional treatment system accepting wastewaters from other municipalities," such as the GLWA, was mandated to require that "the subscribers receiving waste treatment services from the grantee shall adopt user charge systems in accordance with section 204(b)(1)(A) of the Act [quoted above] and §§ 35.929 through 35.929-3" of the regulations. (Reserved as of December 14, 2014.)

### D.  Violation of the Combined Sewer Overflow Control Policy

Part 403 of Chapter 40 of the Code of Federal Regulations provides for approval and authorization of the local publically-owned treatment works ("POTW") as control authorities, as defined in 40 CFR § 403.3(o). GLWA operates a POTW in southeastern Michigan. GLWA/Detroit applied for and received grants for the construction of its POTW pursuant to 33 USC § 1281, *et seq*. At all times relevant to this notice, GLWA has been providing, and still provides, sewage treatment services to Highland Park, charging Highland Park disproportionately for such services.

Implementation of EPA Combined Sewer Overflow (CSO) Policy, issued April 19, 1994, is mandatory.  The Policy reads:

"E.    NPDES authorities (authorized States or EPA Regional Offices, as appropriate) are responsible for implementing this Policy. *It is their responsibility to assure that CSO permittees develop long-term CSO control plans and that NPDES permits meet the requirements of the CWA.* Further, they are responsible for coordinating the review of the long-term CSO control plan and the development of the permit with the WQS authority to determine if revisions to the WQS are appropriate. In addition, they should determine the appropriate vehicle {i.e., permit reissuance, information request under CWA section 308 or State equivalent or enforcement action) to ensure that compliance with the CWA is achieved as soon as practicable."

One of the Guides published for implementing a long term Plan is the "Combined Sewer Overflows, Guidance for Funding Options." It states in pertinent part the mandatory obligation of permittees like GLWA/DWSD to manage proportionate fee collections from major stormwater users like MDOT:

ROBERT B. BLACKWELL MUNICIPAL BUILDING
12050 Woodward Avenue
Highland Park, Michigan 48203
Phone: 313-252-0050 ext. 240
Fax: 313-852-7320
hyopp@highlandparkcity.org



Return to Excellence

**OFFICE OF THE MAYOR**

HUBERT YOPP

"First, many communities are establishing separate fees, and in some cases, separate utilities, to fund storm water management requirements. Because storm water management is closely related to combined sewer overflow occurrences,...".

\* \* \*

"The primary restriction is that a user fee system must be in place *that ensures that each user or user group pays its proportionate share of operating costs, based on the quantity and quality of wastes discharged. As a result, taxes may not be used to pay operating costs for these project combined sewer overflows."* P. 40

Further violations by GLWA of mandatory requirements include:

- Billing only based on sewer flows or water flows where stormwater runoff is not measured by any metering system because the stormwater is let into a holding area or into the river.
- Failure to develop and implement an industrial and high risk runoff program, e.g., Detroit totally disregarded their hands-on knowledge that the State MDOT did not pay Highland Park, even though DWSD collected stormwater runoff fees for the same freeways at the point they traversed Detroit city limits.
- Failure to develop a complete inventory of industrial and high risk facilities and failure to inspect facilities for compliance with the NPDES stormwater permittee requirements.
- Failure to develop and implement an adequate free service search and recovery process, and an illicit discharge identification and elimination program, for large highway stormwater dischargers, e.g., MDOT and Wayne County.
- Failure to conduct an investigation to implement its stormwater program in its constituent wholesale users or subscribers like Highland Park.

**E. Detroit put sewer fees on the City's ad valorem tax which clearly violates the Mandatory provisions of the Clean Water Act.**

Detroit sued to collect the overcharges and after judgment put them on the ad valorem tax base. which also violates the CWA, because charges were not proportionate to use and resulted in many ad valorem property taxpayers who had paid their water/sewer bill having to pay twice.

ROBERT B. BLACKWELL MUNICIPAL BUILDING
12050 Woodward Avenue
Highland Park, Michigan 48203
Phone: 313-252-0050 ext. 240
Fax: 313-852-7320
hyopp@highlandparkcity.org



Return to Excellence

OFFICE OF THE MAYOR

HUBERT YOPP

### F. Environmental Justice

GLWA/Detroit recognizes that Highland Park as a service area includes minority and low income populations. The actions of GLWA and the State of Michigan violate the concepts of environmental justice reflected in Executive Order 12898 of February 11, 1994, "Federal Actions to Address Environmental Justice in Minority Populations and Low-Income Populations." The median household income for Highland Park is $18,981 and 51.1 percent of the population is below the poverty level. In contrast, the median household income for the State of Michigan is $48,411 and 16.8 percent of the population is below the poverty level. The violations of the CWA by GLWA, in greatly overcharging Highland Park, caused it to fund sewer payments out of its general fund, significantly causing its financial default and depleting the cash flow required to maintain its water plant. As a result, Highland Park incurred substantial additional costs to purchase water from Detroit, which has to be pumped through a standby piping system that is old and corroded. This old and corroded standby system is a potential health threat.

We are asking the EPA to enjoin GLWA's further collection of excess sewer charges, charging Highland Park only for actual, proportionate costs and not for the use by MDOT and Wayne County. We are also asking that the EPA mandate the State and Wayne County repay the past amounts of sewer system deferred maintenance caused by their nonpayment since 1993. The MDOT past due amount, alone, is approximately $26 million according to engineering reports. This remedy will allow continued maintenance of the sewer pipes connected to the MDOT and Wayne County highways and roadways. Payment of these past due amounts generate funding for capital expenditures which will reduce the possibility of a sewer main break releasing polluted combined stormwater and sewer flows onto Highland Park streets and waterways and benefit all Highland Park residents and surrounding rivers and lakes.

Payments of overdue MDOT and Wayne County sewer bills will also allow Highland Park to repay its general fund which has subsidized MDOT and Wayne County for the last twenty years resulting in inadequate revenues to maintain its own water plant. These payments will be used to rehabilitate the water plant, thus avoiding the continued use of the standby system.

It is requested that EPA use its grant power and that of other federal agencies to require that the State Department of Environmental Services insist that MDOT pay its $26 million of deferred maintenance costs for the Highland Park sewer system. This will allow Highland Park to repay GLWA an amount equal to actual costs for services rendered and put its water plant back in operation for the health and benefit of all Highland Park residents, most of whom meet the environmental justice criteria.

ROBERT B. BLACKWELL MUNICIPAL BUILDING
12050 Woodward Avenue
Highland Park, Michigan 48203
Phone: 313-252-0050 ext. 240
Fax: 313-852-7320
hyopp@highlandparkcity.org



Return to Excellence

OFFICE OF THE MAYOR

HUBERT YOPP

We have been overwhelmed with years of costly litigation on overcharges by the grantee, DWSD, now GLWA, to the point that the litigation costs are no longer sustainable for a small city such as ours. We have had to go to Court to get an injunction to prevent all our potable water from being shut off by DWSD. Because of twenty years of having to subsidize the cost of sewer treatment for State roadway runoffs, we were forced into a State financial takeover. Highland Park subsidies provided State stormwater treatment, estimated by our engineers to be $26 million, were taken out of our general fund and our declining residential customer base, which caused further flight from our city and decimated net operating revenue needed to keep our water plant operational. We are now paying over $600 per capita per year for sewer service, 5.6% of MHI, which is two and one half times greater than the highest end of reasonableness for sewer treatment service---with no end in sight.

We would like to meet with EPA as soon as possible to provide the detail behind this notice and request.

Very truly yours,

Hubert Yopp
Mayor, City of Highland Park

ROBERT B. BLACKWELL MUNICIPAL BUILDING
12050 Woodward Avenue
Highland Park, Michigan 48203
Phone: 313-252-0050 ext. 240
Fax: 313-852-7320
hyopp@highlandparkcity.org



# CITY OF HIGHLAND PARK

Return to Excellence                                                                                   Hubert Yopp
                                                                                                       Mayor

May 23, 2016

William M. Wolfson
Chief Administrative and Compliance Officer/General Counsel
*Great Lakes Water Authority*
Office of the Chief Executive Officer
35 Randolph Street
Detroit, Michigan 48226
www.glwater.org

Dear Mr. Wolfson:

In response to your letter of April 11, 2016, attached is a detailed response to 14 paragraphs of
your April 11, 2016, response to my March 3, 2016, letter to the EPA and other State and Federal
agencies.  Please permit me to give you an overview of our reply. I took on the responsibilities of
Mayor of Highland Park effective January 1 of this year.

The people of Highland Park are tired of paying the bill for State of Michigan's and, to a lesser
extent, Wayne County's stormwater runoffs.  This bill is now over $26 million.  Highland Park is
also tired of being charged for sewer service, arbitrarily, with per capita increases three to five
times higher than surrounding wholesale customers.  GLWA has no system of meters in place for
measurement of the sewerage flow contributed by Highland Park to the Detroit/GLWA
combined system.  Your billing continues to violate the 1996 consent decree which requires pass
through to GLWA of 65% of $12.05 per KCF and $22.65 per KCF as received by customers.

Your partial summary judgment in Judge Murphy's court, now on appeal,  is based "accounts
stated" which (1) fail to  set off subsidies Highland Park has paid for governmental stormwater
users, (2) charge Highland Park without any metered data or back up for the bills, and (3) violate
the 1996 consent decree.

During this roughly six-month timeframe I have been completely astounded at actions taken
against Highland Park by DWSD, now called the GLWA (referred to collectively as GLWA), in
complete disregard to its  obligations as the NPDES permit holder for this region and the
recipient of all EPA Clean Water Act grant funds.

In February 2014 you sued Highland Park for accumulated unpaid sewer bills of $19 million and
about $2 million of water bills.  My engineering department has now told me that GLWA has no
meter readings to back up the charges. The amount charged has nothing to do with any
proportionate share of costs attributable to Highland Park since no meters measuring Highland



# CITY OF HIGHLAND PARK

Return to Excellence                                                    Hubert Yopp
                                                                        Mayor

Park's sewerage flow exists. The record shows Highland Park has repeatedly requested supporting data for sewer charges with no response. Your judgment in State Court is based on your bills or "accounts stated" for which you have no supporting data and which, as shown in paragraph 8 of the chart, have increased as much as five times higher than other wholesale customers. According to §1284(b), the EPA Administrator has a mandate to require GLWA to charge "in proportion to the contribution of Highland Park to the total cost of operation and maintenance." Mr. Wolfson, your response completely ducks the issue of whether you have met this "proportionate share" requirement or can even provide any evidence of Highland Park's contribution to your operation and maintenance costs.

The biggest issue facing Highland Park and all the wholesale customers is that GLWA, according to the 2014 audit report, is billing its wholesale customers for its $500 million of balance sheet insolvency. GLWA is making its users pay for $500 million of borrowed money lost from mismanagement and corruption. The audit report shows you are passing through principal and interest on $3.3 billion in debt when the assets which can provide customer services are only worth $2.8 billion. ***Why didn't GLWA take care of this half billion dollar sewer system insolvency when the door was open during the bankruptcy***? Your customers are paying $500 million too much. All GLWA debt over $2.8 billion is worthless to wholesale and retail customers who were not responsible for the gross mismanagement that caused this extraordinary excessive and risky debt (See, Report par 14).

GLWA is charging Highland Park over 5% of average annual Median Household Income when the CWA Guidelines have the high end of reasonableness at 2% of MHI. (par. 14).    This half billion dollars of excess worthless debt adds 15% a year to the sewer fees and charges. The debt you claim Highland Park owes (which we do not owe) only adds less than 1%.

Section 1284 of the CWA says these things are mandated:

1. GLWA has to charge each user class (retail, industrial and governmental) its proportionate share. MDOT has been allowed to get free subsidized service from Highland Park even though GLWA is charging MDOT for the same freeways in Detroit.
2. GLWA has to have  legal, institutional, managerial, and financial capability to insure adequate construction, operation, and maintenance of treatment works—which is not possible given the fact that the debt asset ratio is 1.17, showing gross mismanagement.
3. GLWA cannot put any sewer charges on Highland Park's *ad valorem* taxpayers.

Highland Park does not think patent violations of the CWA and overcharges in your bills to Highland Park are, as you say, frivolous.    We need to continue our discussions on ways to correct our bills consistent with the 1996 settlement agreement and have GLWA come clean



# CITY OF HIGHLAND PARK

Return to Excellence

Hubert Yopp
Mayor

about how they have managed to come up with sewer bills out of "thin air" with no metered records. The rest of the report speaks for itself, and I would hope we could continue our dialogue without more lawyer's fees.

Very truly yours,


Hubert Yopp
Mayor Highland Park

CC:  all in Wolfson Letter

# <u>REPORT TO MAYOR HUBERT YOPP</u>

## Dated:  May 23, 2016

## DETAILED REPLY OF

## CITY OF HIGHLAND PARK

## TO RESPONSES OF THE

## GREAT LAKES WATER AUTHORITY

## (Successor to Detroit Water and Sewer  department)

## From

## William M. Wolfson

## Chief Administrative and Compliance Officer/ General Counsel

## Dated:  April 11, 2016

## To letter to EPA from Mayor Hubert Yopp

## Dated: March 3, 2016

| Great Lakes Response | Highland Park Reply |
|---|---|
| 1.  The Great Lakes Water Authority (GLWA) is somewhat perplexed by all of the legal permutations in the letter since it appears to be a combination of different legal notices, most of which are inapplicable to GLWA | 1. The letter sets forth violations of the Clean Water Act (CWA) that have resulted in Highland Park residents being charged disproportionately based on CWA mandatory requirements.  In plain English, Highland Park has been overcharged by Detroit, DWSD, and now their successor to the NPDES permit GLWA since the 1996 consent decree.  All mandatory provisions of the CWA are applicable to GLWA. |
| 2. First, the letter appears to include a notice as a precursor to a citizen's civil suit under 33 USC §1365{b). GLWA does not see where it would necessarily be a proper party to any such suit and objects to any assertion that it would be a proper party to such a suit. GLWA will aggressively defend against such an action given its implications and the frivolous nature of any such action against the GLWA. | 2. Under 33 USC §1362 (5) The term "person" means an individual, corporation, partnership, association, State, municipality, commission, or political subdivision of a state, or any interstate body. 33 USCS § 1362.  Under 33 USCS § 1365 "Citizen" defined. For the purposes of this section the term "citizen" means a person or persons having an interest which is or may be adversely affected. Highland Park is a person for purposes of a citizens' suit under 33USC §1365(a) with standing to sue GLWA for violations of CWA, 33 USCS §§ 1251-1387, or National Pollutant Discharge Elimination System permit provision (Am. Canoe Ass'n v D.C. Water & Sewer Auth. (2004, DC Dist Col) 306 F Supp 2d 30), unless the EPA takes action against GLWA and secures consent decree against violations outlined in the letter. |
| 3. Second, the GLWA is not exactly sure what request is being made to it with respect to Executive Order 12898 of February 11, 1994. These assertions were never made in the current litigation with Highland Park or in any of the preceding litigation. | **4. Executive Order 12898 applies** only to the EPA not to GLWA directly.  It requires EPA to make achieving environmental justice part of its CWA enforcement mission by identifying and addressing, as appropriate, disproportionately high sewer charges and bills and adverse human health or environmental effects on Highland Park, a predominantly minority and low income community, resulting from GLWA's and predecessor City of Detroit's failure to follow the CWA mandatory requirements applicable to GLWA as outlined in the letter. |
| 5. With respect to the background facts asserted by Highland Park, GLWA does not understand the relevance of these facts to Highland Park's failure to pay its water and sewer bills, which led to the action that resulted in the City of Detroit's April | 5. Judge Murphy's Order dated July 31, 2014, granted DWSD a summary judgement based on enforcement of the 1983 court approved settlement agreement and damages based upon "Account Stated." Judge Murphy held that DWSD could enforce bills or "accounts stated" of |

| | |
|---|---|
| 30, 2015 Judgment {the "Judgment") against Highland Park | $18,197,620 .22 and $1,047,218.31, for sewer and water, respectively.  Because Highland Park has failed to object to the account stated within a reasonable time.  (See, Exhibit A p. 9-11)  ***This Order did not consider or resolve the primary basis for the letter that Highland Part was charged, and continues to be charged by GLWA, significantly more than its proportionate share of sewer system costs under CWA rules***.  Further the Order did not consider the fact that MDOT and Detroit  knew MDOT was getting a "free ride" on the costs of Stormwater Runoff Treatment Services once MDOT roadways or freeways entered Highland Park from Detroit and continued back into Detroit because MDOT paid Detroit right up to the Highland Park border; and concealed its obligation to pay Past Due MDOT Fees due for Stormwater runoff (see, _Bennett v. County of Eaton_, 340 Mich. 330 (Mich. 1954) overruling and distinguishing _Tower  vs. Township  of  Somerset_, 143 Mich. 195, 201 cited on page 10 of MDOT's Drainage Manual stating:  "The principle of law enunciated in the _Tower_ Case cannot be construed to give public authorities the right to divert surface water that would in the natural state disperse over a large area, and cast such in concentrated form upon the lands of the abutting owner to his damage _without compensation_ to him."). |
| 6. Judgment was entered against Highland Park for its failure to pay its water and sewer bills. The background facts asserted by Highland Park with respect to its population decreases were neither offered on the record below, nor constitute a viable defense for Highland Park's failure to pay its   bills. | 6. In the record below Highland Park's Affirmative Defenses Dated March 11, 2014, state in part:<br><br>10. Plaintiff has charged Defendant much in excess of its proportionate share of costs as defined in Clean Water Act section 204(b)(1) relative to its size and population.<br><br>11. Plaintiff has failed to institute a system of user charges that reflects the poverty levels (as defined by federal guidelines) which persist in Highland Park as contemplated by the clean water act §204(b)(1) and regulation 40 CFR 35.2140<br>See Answer and Counterclaims attached as Exhibit A. |
| 7. In addition, GLWA sees no relevance to Highland Park's reference to a Combined Sewer Overflow Guidance for Financial Capability and | 7. The Combined Sewer Overflow guidance is a limitation for which a direct suit may be brought by Highland Park against GLWA under 33 USC |

2

| | |
|---|---|
| Assessment Schedule and Development document to these proceedings. Again, this latest assertion was not part of the record below and is not germane to Highland Park's current refusal to pay its water and sewer bills which has been a continuous and ongoing problem since 1996. | §1365(a) (1).  Federal CWA preempts the findings of the State Court in this regard.  (International Paper v Ouellette,  107 S. Ct. 805 (1987))  The CWA prohibits GLWA continued failure to charge Highland Park is proportionate share of system operations and maintenance costs and allowance of MDOT's free service for stormwater discharges of polluted roadway runoff into the combined sewer system resulting from GLWA's billing for these discharges to Highland Parks retail and industrial customers and failure to bill as a separate State governmental stormwater user class. |
| | Exhibit A to the Detroit complaint in the record below contains the June 18, 1996 Court ordered Settlement Agreement which provides for a water rate of $12.05 per KCF and $22.65 To be charged to customers.  This Settlement Agreement obligates Highland Park to pay 65% of the amount actually received—not to have direct liability to guarantee the payment.  The Settlement Agreement reads ", 65%  of  any and   all amounts ___received by it___ in payment of bills for  water and   wastewater treatment services  rendered  by it  to its customers." (See Settlement Agreement pages 6-8).  The Settlement Agreement has no provision for payment of non-metered stormwater flow from MDOT or Wayne County as required by the CWA. The judgment was erroneously based on "Account Stated" which disregards this Settlement Agreement and which are based upon unsupportable formulas without any measurements backing up assumed sewer flows from Highland Park which make up the Accounts Stated.   The Erroneous Account Stated includes overcharges not based on any metered flows and not adjusted for failure of GLWA to separately bill for the major stormwater users. (See, Exhibit B, hereto). |
| 8. Furthermore, Highland Park's assertion of per capita population based analysis vis-a-vis water and sewer charges has no bearing on the water and sewer bills that were unpaid by Highland Park that were part of the Judgment. Highland Park includes comparisons only as far back as 2006, which does not correspond to the period of time that serves as the basis for the Judgment at | 8. Attached as Exhibit C  are  official filings of Detroit on EMMA as follows:<br>    1.  2005 page from official statement showing 220,837 MCF billed to Highland Park with $4,082,524 revenue or $18.48 per mcf.  This is over twice as much per MCF as Dearborn West was billed |

| | |
|---|---|
| issue in this particular situation. Moreover, Highland Park's newly minted defenses would clearly run afoul of the statute of limitations applicable to the underlying action itself. | [596,594 with $5,526,766 or $9.26 per MCF.<br><br>2. 2008 page from official statement showing 177,452 MCF billed with $3,666,450 revenue or $20.65 per mcf.  This is over twice as much as Dearborn West was billed [594,472 with $5,848,583 or $9.8 per MCF.<br><br>3. 2011 page from official statement showing 151,053 MCF billed with $4,490,709 revenue or $29.7 per mcf.  This is almost three times as much as Dearborn West was billed [567,934 with $6,770,430 or $11.92 per MCF<br><br>4. 2013 page from official statement showing 105,589 MCF billed with $5,007,724 revenue or $47.42 per mcf.  This is over three and one/half times as much as Dearborn West was billed [510,176 with $699894 or $13.7 per MCF<br><br>5. 2014 page from official statement showing 109,927 MCF billed with $6,887,428 revenue or $62.654 per mcf.  This is five times as much as Dearborn West was billed [598,452 with $7,668,651 or $12.8 per MCF.<br><br>These official public disclosures on EMMA show Highland Park sewer charges with a declining population, at or near the poverty level, based on DWSD records have increased at five times the rate of other wholesale customers.   This disproportionate charges are included in the $19 million GLWA claims Highland Park owes*. **In actuality the records show Highland Park, a City of low income, fixed income and indigent sewer users, has been overcharged to subsidized both the other wholesale customers and the State Highways department --MDOT.** |
| 9. Highland Park, again, has attempted to interject its alleged claims against the County of Wayne and the State of Michigan for storm water runoff, charges that Highland Park itself never billed to anyone, into these proceedings. As you should be aware, Highland Park at the eleventh hour, attempted to interject these very same issues into the trial court proceedings below and | 9. GLWA has failed, and continues to fail, as required under the CWA, to establish a user class in its bill to Highland Park for major governmental stormwater runoff producers.  Highland Park initially brought its third party claims that MDOT owed most of the $19 million claimed by DWSD in Judge Murphy's court. GLWA cannot turn a blind eye to free service provided to major |

4

| | |
|---|---|
| Judge Murphy rejected this eleventh hour defense. It is now surprising that this matter is again being alleged in a separate communication to various agency heads, when Highland Park basically abandoned this argument even in its appeal to the Michigan Court of Appeals from Judge Murphy's decision. None of the issues related to the storm water runoff concept or Highland Park's actions against the State of Michigan and County of Wayne were part of Highland Park's briefing before the Michigan Court of Appeals. | dischargers whether industrial or governmental. Furthermore GLWA is prohibited under the CWA from placing the overcharges for service set forth above and the overcharges for the free service obtained by MDOT on the ad valorem tax rolls where those Highland Park users who have paid their bills and 65% has been paid to DWSD as provided in the 1996 settlement agreement, will have to pay twice for subsidies to other DWSD customers and MDOT.  As set forth in the letter: [CWA guidelines] state in pertinent part the requirement of permittees such as GLWA to collect from users in the position of MDOT. "First, many communities are establishing separate fees, and in some cases, separate utilities, to fund storm water management requirements. Because storm water management is closely related to combined sewer overflow occurrences,"<br>***<br>The primary restriction is that a user fee system must be in place that ensures that each user or user group pays its proportionate share of operating costs, based on the quantity and quality of wastes discharged. As a result, taxes may not be used to pay operating costs for these project combined sewer overflows. P. 40 |
| 10. Again, Highland Park raises the issue that the existing user charge system employed by GLWA is inconsistent with 33 USC §1284{b}. This issue is an issue that was raised with the trial court below again, at the eleventh hour.  The trial court rejected Highland Park's position.  This issue is now pending … | 10. Section 1284(b) provides, in part: "(b) Additional determinations; issuance of guidelines; approval by Administrator; system of charges.<br>(1)  Notwithstanding any other provision of this title [33 USCS §§ 1281 et seq.], the Administrator shall not approve any grant for any treatment works under section 201(g)(1) [33 USCS § 1281(g)(1)] after March 1, 1973, unless he shall first have determined that the applicant (A) has adopted or will adopt a system of charges to assure that each recipient of waste treatment services within the applicant's jurisdiction, as determined by the Administrator, will pay its proportionate share (except as otherwise provided in this paragraph) of the costs of operation and maintenance (including replacement) of any waste treatment services provided by |

5

| | the applicant; and (B) has legal, institutional, managerial, and financial capability to insure adequate construction, operation, and maintenance of treatment works throughout the applicant's jurisdiction, as determined by the Administrator. In any case where an applicant which, as of the date of enactment of this sentence [enacted Dec. 27, 1977], uses a system of dedicated ad valorem taxes and the Administrator determines that the applicant has a system of charges which results in the distribution of operation and maintenance costs for treatment works within the applicant's jurisdiction, to each user class, in proportion to the contribution to the total cost of operation and maintenance of such works by each user class (taking into account total waste water loading of such works, the constituent elements of the wastes, and other appropriate factors), |
|---|---|
| | Contrary to your response the issue of proportionate share was raised in our answer to the complaint as set forth above in March of 2014 not at the eleventh hour.  We also raised the fact that GLWA putting the "account stated" bills  on the Highland Park ad valorem tax rolls was also in violation of §1284(b), since these taxes were  not in place before 1977.  (See, *Middlesex County Utilities Authority v. Sayreville*, 690 F.2d 358 (3d Cir. N.J. 1982)) GLWA's placement of sewer charges on ad valorem tax rolls and failure to require MDOT to pay its proportionate share as a major stormwater user class are fundamental violations of Highland Park's rights under the CWA.  (See e.g. Natural Resources Defense Council, Inc. v. United States EPA, 966 F.2d 1292 (9th Cir. 1992)) |
| 11. For the record, in the trial court, GLWA submitted expert testimony (by way of affidavit) from its expert, Bart Foster that its user charge system complied with the Clean Water Act. This evidence was unrefuted in the record then and remains unrefuted now. Mere allegations are insufficient to refute the record. The current letter continues the same shell game. Highland | 11. Highland Park continues to request the empirical data showing Highland Park is paying its proportionate share.  Now our staff have determined that there have never been metered records of Highland Parks flow which is in direct violation of §1284(b) absent a detailed report showing our bills to retail and other user classes are "in proportion to the contribution to the total |

| | |
|---|---|
| Park complains but never presents the necessary evidence to support its complaints. | cost of operation and maintenance of such works by each user class (taking into account total waste water loading of such works, the constituent elements of the wastes, and other appropriate factors." |
| 12. Violation of the Combined Sewer Overflow Control Policy<br><br>Highland Park's claims that there was an alleged violation of a Combined Sewer Overflow Control Policy issued in April 1994 is an exceedingly delayed and unusually frivolous assertion. At this stage it seems peculiar that Highland Park has waited over 20 years to assert this claim. ***At this stage, it is clear that Highland Park's claims are simply those of a litigant that has not managed to prevail in the litigation and the assertions simply lack merit. Therefore, GLWA asserts that these frivolous aspersions are not even before the Court and should not be before the agencies to whom Highland Park writes. | 12. The claim of ongoing violations of the Combined Sewer Overflow to the Federal Regulators is still very timely.  This is an administrative claim at this point.  We were hopeful that GLWA would respond to the assertions of violative conduct and either admit or deny such conduct.  The letter fails to address any substantive issues by claiming this letter is about the litigation or it is barred by a statute of limitations.  The litigation was started by Detroit not Highland Park.  This is a separate administrative proceeding under Federal Law being advanced currently with the DWSD litigation but wholly separate from the litigation. Because, the litigation was initiated by Detroit-our posture has been defensive.  This administrative proceeding under the Clean Water Act is a Highland Park's initiative. |
| 13. Environmental Justice<br>It is confounding that Highland Park, who is one of the largest debtors of GLWA, now complains about environmental justice. The cost associated with Highland Park's failure to pay its bills for these many years is not simply a cost that evaporates into thin air. That cost is borne by the other users of the system, which include the City of Detroit and other struggling municipalities who may view Highland Park's refusal to pay its bills as unjust to them as well. This is not about environmental justice as much as it is about a failure to pay. | 13.<br>• Highland Park is a debtor of GLWA only because it has not been charged more than its proportionate share.  What is confounding is that GLWA does not express the same amount of outrage against the State of Michigan that DWSD has known since have been receiving free service .  The total amount of the free service estimated at $26 million exceeds the amount of the judgment of $19 million that is now on appeal.   Allowing the State MDOT to not pay while putting MDOT's stormwater bill on the ad valorem tax rolls of one of the poorest cities in Michigan is the height of hypocrisy. As stated in our letter:<br>•  Failure to develop and implement an industrial and high risk runoff program, e.g., Detroit totally disregarded their hands on knowledge that the State MDOT did not develop a complete inventory of industrial and high risk facilities and did not inspect facilities for |

compliance with the NPDES stormwater permittee requirements;

- Failure to develop and implement an adequate free service, illicit discharge identification and elimination program, for large highway e.g., Detroit did not conduct investigation to implement its stormwater program in its constituent wholesale users or subscribers like Highland Park, instead

Detroit put sewer fees on the City's ad valorem tax which clearly violates the Mandatory provisions of the Clean Water Act.

- Detroit sued to collect the overcharges and then after judgment put them on the advalorem tax base that also violates the CWA...

Environmental Justice

GLWA/Detroit recognize that service area includes minority and low income populations. The actions of GLWA and the State of Michigan violate the concepts of Environmental Justice reflected in the attached Executive Order 12898 of February 11, 1994. "Federal Actions to Address Environmental Justice in Minority Populations and Low-Income Populations." The median household income for Highland Park is $18,981 and 51.1 percent of the population is below the poverty level. In contrast, the median household income for the State of Michigan is $48,411 and 16.8 percent of the population is below the poverty level. The violation by GLWA in greatly overcharging the City which caused it fund sewer payment out of its general fund causing its financial default and depleting the cash flow required to maintain its water plant.

Highland Park has received in discovery correspondence showing the DWSD knew that MDOT which discharged millions of dollars of stormwater effluent each year was not paying its proportionate share of the treatment costs. DWSD also knew that its bills for sewer services were not based on any metered flow and that the sewer charges continued to increase even though the Highland Park retail and industrial base continued to decline.  At this point the record shows that since _____Highland park has paid $

8

|  | $7.1 million for sewer treatment and water services. |
|---|---|
| 14. While Highland Park complains about the cost associated with continuing to prosecute litigation and defend its frivolous positions, it continues to engage multiple law firms in the pursuit of frivolous claims that are simply unfounded. At this stage, GLWA thinks that this letter is just another smokescreen that is designed to evade the issues and further derail any attempts to work cooperatively with Highland Park toward a meaningful resolution of this matter. | 14. The problem with this picture is that rather than looking at Highland Park as the scapegoat for bad management the GLWA should look at its own house.<br>Section 1284(b) provides that the Administrator shall not make a grant to GLWA unless it determines that the recipient "has legal, institutional, managerial, and financial capability to insure adequate construction, operation, and maintenance of treatment works throughout the applicant's jurisdiction, as determined by the Administrator."  Highland Park's sewer charges are over 5% of Median Household Income and Highland Park is subsidizing the treatment costs of MDOT and Wayne county –huge stormwater dischargers.  If you look at the Sewer Department financial statements the mismanagement leading to unconscionably high sewer fees and costs across the board  is obvious.  As just one example, in 2005 you have $2.947 billion in net capital assets and $2.639 in long term debt [$300 million more assets than debt]; by 2014 you have $3.385 billion in long term liabilities and $2.87 billion in net capital assets [$500 million less in assets than debt] Highland Park and other wholesale customers are charged for debt $500 million more than the assets purchased.  Having $500 million less in assets than liabilities means GLWA is insolvent based on the balance sheet test.  Detroit just completed a Chapter 9 bankruptcy and failed to correct this structural balance sheet insolvency in its sewer enterprise. The insolvency of GLWA is reflected in its debt to asset ratio of 1.17.  When the ratio is over 1.0 the enterprise is technically insolvent with an unsolvable, risky debt cost in its operations budget...  This high debt to assets ratio means the wholesale users and ultimate consumers are being charged rates for service that is $500 million greater than value of the underlying assets providing the service. The EPA has to look at whether GLWA as an insolvent permittee can continue to provide required services to its constituents.  (See, Exhibit D Financial statements). |

# EXHIBIT A

**STATE OF MICHIGAN**
**IN THE WAYNE COUNTY CIRCUIT COURT**

CITY OF DETROIT, a Michigan
municipal corporation, THE DETROIT
WATER AND SEWERAGE
DEPARTMENT, a department or
branch of the City of Detroit                    Civil Action No. <u>14-001974-CK</u>

           Plaintiff,                        Hon. _____

vs.

CITY OF HIGHLAND PARK, a
municipal corporation.

           Defendant.

---

| | |
|---|---|
| WILLIAMS ACOSTA, PLLC. | TODD RUSSELL PERKINS (P55623) |
| Avery K. Williams (P34731) | NIKKIYA T. BRANCH (P68844) |
| Daimeon Cotton (P75563) | Attorneys for Defendant |
| Attorneys for Plaintiffs | Perkins Law Group, PLLC. |
| 535 Griswold, Suite 1000 | 615 Griswold, Suite 400 |
| Detroit, MI 48226 | Detroit, MI 48226 |
| (313) 963-3873 | (313) 964-1702 |
| AWilliams@williamsacosta.com | Fax (313) 964-1980 |

---

## **CITY OF HIGHLAND PARK'S ANSWER & AFFIRMATIVE DEFENSES**

    NOW COME Defendant, City of Highland Park, Michigan, by and through its attorneys, PERKINS LAW GROUP PLLC, and for their Answer to Plaintiff's Complaint, state the following:

## **INTRODUCTION AND NATURE OF THE CASE**

1.     Defendant neither admits nor denies the allegations contained in paragraph 1 of Plaintiff's Complaint because Defendant lack sufficient information or knowledge to form a belief as to the truth of the matters asserted.

## JURISDICTION

2.      Defendant denies as untrue the allegations in paragraph 2 of Plaintiff's Complaint.

3.      Defendant admits the allegations in paragraph 3 of Plaintiff's Complaint.

4.      Defendant admits the allegations in paragraph 4 of Plaintiff's Complaint.

5.      Defendant admits the allegations in paragraph 5 of Plaintiff's Complaint.

6.      Defendant neither admits nor denies the allegations contained in paragraph 6 of Plaintiff's Complaint because Defendant lack sufficient information or knowledge to form a belief as to the truth of the matters asserted.

## THE PARTIES

7.      Defendant admits the allegations in paragraph 7 of Plaintiff's Complaint.

8.      Defendant admits the allegations in paragraph 8 of Plaintiff's Complaint.

9.      Defendant admits the allegations in paragraph 9 of Plaintiff's Complaint.

10.     Defendant neither admits nor denies the allegations contained in paragraph 10 of Plaintiff's Complaint because Defendant lack sufficient information or knowledge to form a belief as to the truth of the matters asserted.

11.     Defendant admits the allegations in paragraph 11 of Plaintiff's Complaint.

12.     Defendant neither admits nor denies the allegations contained in paragraph 12 of Plaintiff's Complaint because Defendant lack sufficient information or knowledge to form a belief as to the truth of the matters asserted.

13.     Defendant admits the allegations in paragraph 13 of Plaintiff's Complaint.

14.     Defendant neither admits nor denies the allegations contained in paragraph 14 of Plaintiff's Complaint because Defendant lack sufficient information or knowledge to form a belief as to the truth of the matters asserted.

**GENERAL ALLEGATIONS**

**a. Sewage Services Agreements and 1996 Settlement Agreement**

15.     Defendant incorporate by reference all preceding allegations as set forth in Plaintiffs' Complaint in Paragraphs 1 through 14 as though fully restated and set forth herein.

16.     Defendant neither admits nor denies the allegations contained in paragraph16 of Plaintiff's Complaint because Defendant lack sufficient information or knowledge to form a belief as to the truth of the matters asserted.

17.     Defendant neither admits nor denies the allegations contained in paragraph 17 of Plaintiff's Complaint because Defendant lack sufficient information or knowledge to form a belief as to the truth of the matters asserted.

18.     Defendant admits the allegations in paragraph 18 of Plaintiff's Complaint.

19.     Defendant neither admits nor denies the allegations contained in paragraph 19 of Plaintiff's Complaint because Defendant lack sufficient information or knowledge to form a belief as to the truth of the matters asserted.

20.     Defendant neither admits nor denies the allegations contained in paragraph 20 of Plaintiff's Complaint because Defendant lack sufficient information or knowledge to form a belief as to the truth of the matters asserted.

21.     Defendant denies as untrue the allegations in paragraph 21 of Plaintiff's Complaint.

22.     Defendant neither admits nor denies the allegations contained in paragraph 22 of Plaintiff's Complaint because Defendant lack sufficient information or knowledge to form a belief as to the truth of the matters asserted.

23.     Defendant admits the allegations in paragraph 23 of Plaintiff's Complaint.

24.     Defendant admits the allegations in paragraph 24 of Plaintiff's Complaint.

25.     Defendant neither admits nor denies the allegations contained in paragraph 25 of Plaintiff's Complaint because Defendant lack sufficient information or knowledge to form a belief as to the truth of the matters asserted.

26.     Defendant neither admits nor denies the allegations contained in paragraph 26 of Plaintiff's Complaint because Defendant lack sufficient information or knowledge to form a belief as to the truth of the matters asserted.

27.     Defendant admits the allegations in paragraph 27 of Plaintiff's Complaint.

28.     Defendant neither admits nor denies the allegations contained in paragraph 28 of Plaintiff's Complaint because Defendant lack sufficient information or knowledge to form a belief as to the truth of the matters asserted.

29.     Defendant neither admits nor denies the allegations contained in paragraph 29 of Plaintiff's Complaint because Defendant lack sufficient information or knowledge to form a belief as to the truth of the matters asserted.

30.     Defendant neither admits nor denies the allegations contained in paragraph 30 of Plaintiff's Complaint because Defendant lack sufficient information or knowledge to form a belief as to the truth of the matters asserted.

31.     Defendant neither admits nor denies the allegations contained in paragraph 31 of Plaintiff's Complaint because Defendant lack sufficient information or knowledge to form a belief as to the truth of the matters asserted.

32.     Defendant neither admits nor denies the allegations contained in paragraph 32 of Plaintiff's Complaint because Defendant lack sufficient information or knowledge to form a belief as to the truth of the matters asserted.

## b. Water Supply Services

33.     Defendant admits the allegations in paragraph 33 of Plaintiff's Complaint.

34.     Defendant admits the allegations in paragraph 34 of Plaintiff's Complaint.

35.     Defendant admits the allegations in paragraph 35 of Plaintiff's Complaint.

36.     Defendant admits the allegations in paragraph 36 of Plaintiff's Complaint.

37.     Defendant neither admits nor denies the allegations contained in paragraph 37 of Plaintiff's Complaint because Defendant lack sufficient information or knowledge to form a belief as to the truth of the matters asserted.

38.     Defendant denies the allegations in paragraph 38 of Plaintiff's Complaint.

39.    Defendant neither admits nor denies the allegations contained in paragraph 39 of Plaintiff's Complaint because Defendant lack sufficient information or knowledge to form a belief as to the truth of the matters asserted.

40.    Defendant denies as untrue the allegations in paragraph 40 of Plaintiff's Complaint.

41.    Defendant neither admits nor denies the allegations contained in paragraph 41 of Plaintiff's Complaint because Defendant lack sufficient information or knowledge to form a belief as to the truth of the matters asserted.

42.    Defendant admits the allegations in paragraph 42 of Plaintiff's Complaint.

43.    Defendant denies as untrue the allegations in paragraph 43 of Plaintiff's Complaint.

44.    Defendant neither admits nor denies the allegations contained in paragraph 44 of Plaintiff's Complaint because Defendant lack sufficient information or knowledge to form a belief as to the truth of the matters asserted.

45.    Defendant neither admits nor denies the allegations contained in paragraph 45 of Plaintiff's Complaint because Defendant lack sufficient information or knowledge to form a belief as to the truth of the matters asserted.

46.    Defendant denies as untrue the allegations in paragraph 46 of Plaintiff's Complaint.

47.    Defendant neither admits nor denies the allegations contained in paragraph 47 of Plaintiff's Complaint because Defendant lack sufficient information or knowledge to form a belief as to the truth of the matters asserted.

WHEREFORE, Defendant respectfully requests that this Court enter an Order dismissing Plaintiff's Complaint with prejudice and awarding Defendant its costs and fees associated with this suit and such other relief as this Court deems appropriate.

## COUNT I
## BREACH OF CONTRACT

48.    Defendant incorporate by reference all preceding allegations as set forth in Plaintiffs' Complaint in Paragraphs 1 through 47 as though fully restated and set forth herein.

49.     Defendant neither admits nor denies the allegations contained in paragraph 49 of Plaintiff's Complaint because Defendant lack sufficient information or knowledge to form a belief as to the truth of the matters asserted.

50.     Defendant neither admits nor denies the allegations contained in paragraph 50 of Plaintiff's Complaint because Defendant lack sufficient information or knowledge to form a belief as to the truth of the matters asserted.

51.     Defendant neither admits nor denies the allegations contained in paragraph 51 of Plaintiff's Complaint because Defendant lack sufficient information or knowledge to form a belief as to the truth of the matters asserted.

52.     Defendant neither admits nor denies the allegations contained in paragraph 52 of Plaintiff's Complaint because Defendant lack sufficient information or knowledge to form a belief as to the truth of the matters asserted.

53.     Defendant neither admits nor denies the allegations contained in paragraph 53 of Plaintiff's Complaint because Defendant lack sufficient information or knowledge to form a belief as to the truth of the matters asserted.

54.     Defendant denies as untrue the allegations in paragraph 54 of Plaintiff's Complaint.

55.     Defendant neither admits nor denies the allegations contained in paragraph 55 of Plaintiff's Complaint because Defendant lack sufficient information or knowledge to form a belief as to the truth of the matters asserted.

56.     Defendant neither admits nor denies the allegations contained in paragraph 56 of Plaintiff's Complaint because Defendant lack sufficient information or knowledge to form a belief as to the truth of the matters asserted.

57.     Defendant neither admits nor denies the allegations contained in paragraph 57 of Plaintiff's Complaint because Defendant lack sufficient information or knowledge to form a belief as to the truth of the matters asserted.

WHEREFORE, Defendant respectfully requests that this Court enter an Order dismissing Plaintiff's Complaint with prejudice and awarding Defendant its costs and fees associated with this suit and such other relief as this Court deems appropriate.

## COUNT II

## IMPLIED CONTRACT

58.   Defendant incorporate by reference all preceding allegations as set forth in Plaintiffs' Complaint in Paragraphs 1 through 57 as though fully restated and set forth herein.

59.   Defendant neither admits nor denies the allegations contained in paragraph 59 of Plaintiff's Complaint because Defendant lack sufficient information or knowledge to form a belief as to the truth of the matters asserted.

60.   Defendant neither admits nor denies the allegations contained in paragraph 60 of Plaintiff's Complaint because Defendant lack sufficient information or knowledge to form a belief as to the truth of the matters asserted.

61.   Defendant neither admits nor denies the allegations contained in paragraph 61 of Plaintiff's Complaint because Defendant lack sufficient information or knowledge to form a belief as to the truth of the matters asserted.

62.   Defendant neither admits nor denies the allegations contained in paragraph 62 of Plaintiff's Complaint because Defendant lack sufficient information or knowledge to form a belief as to the truth of the matters asserted.

63.   Defendant neither admits nor denies the allegations contained in paragraph 63 of Plaintiff's Complaint because Defendant lack sufficient information or knowledge to form a belief as to the truth of the matters asserted.

64.   Defendant neither admits nor denies the allegations contained in paragraph 64 of Plaintiff's Complaint because Defendant lack sufficient information or knowledge to form a belief as to the truth of the matters asserted.

65.   Defendant neither admits nor denies the allegations contained in paragraph 65 of Plaintiff's Complaint because Defendant lack sufficient information or knowledge to form a belief as to the truth of the matters asserted.

66.   Defendant neither admits nor denies the allegations contained in paragraph 66 of Plaintiff's Complaint because Defendant lack sufficient information or knowledge to form a belief as to the truth of the matters asserted.

WHEREFORE, Defendant respectfully requests that this Court enter an Order dismissing Plaintiff's Complaint with prejudice and awarding Defendant its costs and fees associated with this suit and such other relief as this Court deems appropriate.

## COUNT III
## QUANTUM MERUIT

67.     Defendant incorporate by reference all preceding allegations of Plaintiffs' Complaint as set forth in Paragraphs 1 through 66 as though fully restated and set forth herein.

68.     Defendant neither admits nor denies the allegations contained in paragraph 68 of Plaintiff's Complaint because Defendant lack sufficient information or knowledge to form a belief as to the truth of the matters asserted.

69.     Defendant neither admits nor denies the allegations contained in paragraph 69 of Plaintiff's Complaint because Defendant lack sufficient information or knowledge to form a belief as to the truth of the matters asserted.

70.     Defendant neither admits nor denies the allegations contained in paragraph 70 of Plaintiff's Complaint because Defendant lack sufficient information or knowledge to form a belief as to the truth of the matters asserted.

71.     Defendant neither admits nor denies the allegations contained in paragraph 71 of Plaintiff's Complaint because Defendant lack sufficient information or knowledge to form a belief as to the truth of the matters asserted.

72.     Defendant neither admits nor denies the allegations contained in paragraph 72 of Plaintiff's Complaint because Defendant lack sufficient information or knowledge to form a belief as to the truth of the matters asserted.

WHEREFORE, Defendant respectfully requests that this Court enter an Order dismissing Plaintiff's Complaint with prejudice and awarding Defendant its costs and fees associated with this suit and such other relief as this Court deems appropriate.

## ACCOUNT IV
## ACCOUNT STATED

73.    Defendant incorporate by reference all preceding allegations as set forth in Plaintiffs' Complaint in Paragraphs 1 through 72 as though fully restated and set forth herein.

74.    Defendant neither admits nor denies the allegations contained in paragraph 74 of Plaintiff's Complaint because Defendant lack sufficient information or knowledge to form a belief as to the truth of the matters asserted.

75.    Defendant neither admits nor denies the allegations contained in paragraph 75 of Plaintiff's Complaint because Defendant lack sufficient information or knowledge to form a belief as to the truth of the matters asserted.

76.    Defendant neither admits nor denies the allegations contained in paragraph 76 of Plaintiff's Complaint because Defendant lack sufficient information or knowledge to form a belief as to the truth of the matters asserted.

77.    Defendant neither admits nor denies the allegations contained in paragraph 77 of Plaintiff's Complaint because Defendant lack sufficient information or knowledge to form a belief as to the truth of the matters asserted.

78.    Defendant neither admits nor denies the allegations contained in paragraph 78 of Plaintiff's Complaint because Defendant lack sufficient information or knowledge to form a belief as to the truth of the matters asserted.

79.    Defendant neither admits nor denies the allegations contained in paragraph 79 of Plaintiff's Complaint because Defendant lack sufficient information or knowledge to form a belief as to the truth of the matters asserted.

80.    Defendant neither admits nor denies the allegations contained in paragraph 80 of Plaintiff's Complaint because Defendant lack sufficient information or knowledge to form a belief as to the truth of the matters asserted.

81.    Defendant neither admits nor denies the allegations contained in paragraph 81 of Plaintiff's Complaint because Defendant lack sufficient information or knowledge to form a belief as to the truth of the matters asserted.

82.    Defendant neither admits nor denies the allegations contained in paragraph 82 of Plaintiff's Complaint because Defendant lack sufficient information or knowledge to form a belief as to the truth of the matters asserted.

83. Defendant neither admits nor denies the allegations contained in paragraph 83 of Plaintiff's Complaint because Defendant lack sufficient information or knowledge to form a belief as to the truth of the matters asserted.

84. Defendant neither admits nor denies the allegations contained in paragraph 84 of Plaintiff's Complaint because Defendant lack sufficient information or knowledge to form a belief as to the truth of the matters asserted.

WHEREFORE, Defendant respectfully requests that this Court enter an Order dismissing Plaintiff's Complaint with prejudice and awarding Defendant its costs and fees associated with this suit and such other relief as this Court deems appropriate.

## COUNT V
## CONVERSION

85. Defendant incorporate by reference all preceding allegations as set forth in Plaintiffs' Complaint in Paragraphs 1 through 84 as though fully restated and set forth herein.

86. Defendant neither admits nor denies the allegations contained in paragraph 86 of Plaintiff's Complaint because Defendant lack sufficient information or knowledge to form a belief as to the truth of the matters asserted.

87. Defendant neither admits nor denies the allegations contained in paragraph 87 of Plaintiff's Complaint because Defendant lack sufficient information or knowledge to form a belief as to the truth of the matters asserted.

88. Defendant neither admits nor denies the allegations contained in paragraph 88 of Plaintiff's Complaint because Defendant lack sufficient information or knowledge to form a belief as to the truth of the matters asserted.

89. Defendant neither admits nor denies the allegations in paragraph 89 of Plaintiff's Complaint to the extent it contains a legal conclusion to which no answer is required. To the extent this Court deems an answer required, Defendant denies the allegations contained in paragraph 89 of Plaintiff's Complaint to the extent they are applicable to Defendant.

90. Defendant neither admits nor denies the allegations in paragraph 90 of Plaintiff's

Complaint to the extent it contains a legal conclusion to which no answer is required. To the extent this Court deems an answer required, Defendant denies the allegations contained in paragraph 90 of Plaintiff's Complaint to the extent they are applicable to Defendant.

WHEREFORE, Defendant respectfully requests that this Court enter an Order dismissing Plaintiff's Complaint with prejudice and awarding Defendant its costs and fees associated with this suit and such other relief as this Court deems appropriate.

## **IRREPARABLE HARM**

91.    Defendant incorporate by reference all preceding allegations as set forth in Plaintiffs' Complaint in Paragraphs 1 through 90 as though fully restated and set forth herein

92.    Defendant neither admits nor denies the allegations contained in paragraph 92 of Plaintiff's Complaint because Defendant lack sufficient information or knowledge to form a belief as to the truth of the matters asserted.

93.    Defendant neither admits nor denies the allegations contained in paragraph 93 of Plaintiff's Complaint because Defendant lack sufficient information or knowledge to form a belief as to the truth of the matters asserted.

94.    Defendant neither admits nor denies the allegations contained in paragraph 94 of Plaintiff's Complaint because Defendant lack sufficient information or knowledge to form a belief as to the truth of the matters asserted.

95.    Defendant neither admits nor denies the allegations contained in paragraph 95 of Plaintiff's Complaint because Defendant lack sufficient information or knowledge to form a belief as to the truth of the matters asserted.

96.    Defendant neither admits nor denies the allegations contained in paragraph 96 of Plaintiff's Complaint because Defendant lack sufficient information or knowledge to form a belief as to the truth of the matters asserted.

97.    Defendant neither admits nor denies the allegations contained in paragraph 97 of Plaintiff's Complaint because Defendant lack sufficient information or knowledge to form a belief as to the truth of the matters asserted.

98. Defendant neither admits nor denies the allegations contained in paragraph 98 of Plaintiff's Complaint because Defendant lack sufficient information or knowledge to form a belief as to the truth of the matters asserted.

99. Defendant neither admits nor denies the allegations contained in paragraph 99 of Plaintiff's Complaint because Defendant lack sufficient information or knowledge to form a belief as to the truth of the matters asserted.

WHEREFORE, Defendant respectfully requests that this Court enter an Order dismissing Plaintiff's Complaint with prejudice and awarding Defendant its costs and fees associated with this suit and such other relief as this Court deems appropriate.

Respectfully Submitted,

_____
s/ Nikkiya T. Branch (P68844)
Todd Russell Perkins (P55623)
Attorney for Defendant
Perkins Law Group, PLLC.
615 Griswold, Suite 400
Detroit, MI 48226
(313) 964-1702
Fax (313) 964-1980

## AFFIRMATIVE DEFENSES

1. Plaintiff's claims are barred by its prior material breaches of contract.

2. Plaintiff's claims are barred by the equitable doctrines of estoppel, laches, waiver and/or unclean hands.

3. Plaintiff's claims are subject to set off .

4. Plaintiff's reliance on certain contractual conditions is barred by the Doctrine of Prevention and Plaintiff being complacent in the non occurrence of those conditions.

5.  The Contract is unconscionable.

6.  The Contract is Ambiguous.

7.  Plaintiff's claims are barred by the Statute of Frauds.

8.  Plaintiff's claims fail because it failed to Mitigate its Damages.

9.  Plaintiff has failed to state a claim upon which relief can be granted.

10. Plaintiff has charged Defendant much in excess of its proportionate share of costs as defined in Clean Water Act section 204(b)(1) relative to its size and population.

11. Plaintiff has failed to institute a system of user charges that reflects the poverty levels (as defined by federal guidelines) which persist in Highland Park as contemplated by the clean water act §204(b)(1) and regulation <u>40 CFR 35.2140</u>

Defendant reserves the right to assert additional defenses that may become known through the course of discovery.


WHEREFORE, Defendant respectfully requests that this Court enter an Order dismissing Plaintiff's Complaint with prejudice and awarding Defendant its costs and fees associated with this suit and such other relief as this Court deems appropriate.


Respectfully Submitted,


_____
s/ Nikkiya T. Branch (P68844)
Todd Russell Perkins (P55623)
Attorney for Defendant
Perkins Law Group, PLLC.
615 Griswold, Suite 400
Detroit, MI 48226
(313) 964-1702
Date: March 10, 2014                    Fax (313) 964-1980

# STATE OF MICHIGAN
# IN THE WAYNE COUNTY CIRCUIT COURT

CITY OF DETROIT, a Michigan
municipal corporation, THE DETROIT
WATER AND SEWERAGE
DEPARTMENT, a department or
branch of the City of Detroit

Civil Action No. <u>14-001974-CK</u>

   Plaintiffs/Counter-Defendant,   Hon. _____

vs.

CITY OF HIGHLAND PARK, a
municipal corporation.

   Defendant/Counter-Plaintiff.

---

WILLIAMS ACOSTA, PLLC.    TODD RUSSELL PERKINS (P55623)
Avery K. Williams (P34731)    NIKKIYA T. BRANCH (P68844)
Daimeon Cotton (P75563)    Attorneys for Defendant
Attorneys for Plaintiffs    Perkins Law Group, PLLC.
535 Griswold, Suite 1000    615 Griswold, Suite 400
Detroit, MI 48226    Detroit, MI 48226
(313) 963-3873    (313) 964-1702
AWilliams@williamsacosta.com    Fax (313) 964-1980

---

## COUNTER COMPLAINT

   NOW COMES Defendant/Counter-Plaintiff, City of Highland Park, Michigan, by and

through its attorneys, PERKINS LAW GROUP PLLC, and for their Counter Complaint, states as

follows:

## PARTIES

  1.   The Defendant/Counter-Plaintiff is a home rule city incorporated pursuant to

     Chapter 117 of the Compiled Laws of the State of Michigan.

  2.   The Plaintiff/Counter-Defendant City of Detroit is a home rule city incorporated

     pursuant to Chapter 117 of the Compiled Laws of the State of Michigan.

3.     The Plaintiff/Counter-Defendant Detroit Water Sewerage Department ("DWSD") is a department of the City of Detroit.

## JURISDICTION

4.     Jurisdiction is vested in this Court pursuant to MCR 2.605 for the purpose of declaring the parties' respective rights with regard to a settlement agreement contract and also to enforce the settlement agreement contract in this matter.

## GENERAL ALLEGATIONS

5.     Defendant/Counter-Plaintiff incorporates by reference all preceding allegations as set forth in Paragraphs 1-4 as though fully restated and set forth herein.

6.     On June 18, 1996, the City of Highland Park, City of Detroit acting through its DWSD, and Chrysler Corporation, entered into a settlement agreement.

7.     The settlement agreement states that the City of Highland Park is required to collect money from the users or city property owners at a rate of $22.66 kcf to pay for sewer services.

8.     The settlement agreement creates a payment obligation secured by sewer user fees and a rate increase covenant and does not require the City of Highland Park to guarantee collections, and the taxpayers of the City of Highland Park, as a whole, are not responsible to subsidize the sewer users under the Michigan constitution. Article 10, § 12, of the Constitution of Michigan (1908) provides:

 "The credit of the State shall not be granted to nor in aid of any person, association or corporation, public or private."

 Article 8, § 25, of the same document provides:

"No city or village shall have power * * * to loan its credit, nor to assess, levy or collect any tax or assessment for other than a public purpose."

A gift or donation of money or property by the city would, in our opinion, constitute a violation of both the constitutional provisions quoted above. *People, ex rel. Detroit & Howell R. Co.,* v. *Salem,* 20 Mich 452 (4 Am Rep 400); *Bay City* v. *State Treasurer,* 23 Mich 499; *Dodge* v. *Van Buren Circuit Judge,* 118 Mich 189; [***12] *Michigan Sugar Co.* v. *Auditor General,* 124 Mich 674 (56 LRA 329, 83 Am St Rep 354); *Michigan Corn Improvement Association* v. *Auditor General,* 150 Mich 69; *Detroit Museum of Art* v. *Engel,* 187 Mich 432.

9.   The settlement agreement outlines the City of Highland Park's obligations, which specifically provides a rate covenant, the method of collection, disbursement to the City of Detroit, and the deposit into an escrow account, which were agreed to by the parties, as follows:

a.   Highland Park will adopt a water/wastewater rate increase applicable to service provided by Highland Park to its customers in the amount of 14% and 68%, respectively, or a composite increase of 44%.   The resulting water rate will be $12.05 per kef and resulting wastewater rate will be $22.66 per kef. The rate increase will be effective July 1, 1996 on all bills rendered on or after August l, 1996, As a condition precedent to Detroit's acceptance of this settlement agreement, Highland Park shall provide Detroit with a certified copy of the City Council resolution enacting such rate increase. [**Exhibit A: Settlement Agreement, dated June 18, 1996, pg. 6, ¶1(a)**].

b.   Highland Park further covenants to take whatever further lawful measures that may be necessary to meet timely  its obligations to Detroit  under  the terms of  the  June 8, 1983 Sewage Service Contract between them. [**Exhibit A: Settlement Agreement, dated June 18, 1996, pg. 6, ¶1(b)**].

c.   Beginning August 1, 1996 and thereafter, Highland Park shall deposit into said account, on a daily basis, 65% of any and all amounts received by it in payment of bills for water or wastewater treatment services rendered by it to its customers.  Any and all amounts so deposited shall be held in trust solely for the benefit of the City of Detroit and shall be paid over to the City of Detroit through its Detroit Water and Sewerage Department; on a monthly

basis, on or before the l0th day of each month. [**Exhibit A:  Settlement Agreement, dated June 18, 1996, pgs. 7-8, ¶6(a)**].

    d.  Highland Park shall make the financial and accounting records of its Water and Sewerage Department, including bank statements from the above-referenced escrow account, available  for  inspection, review  and  copying by Detroit within 15 days after receipt of a written request for such inspection and review. Any inspection, review and copying shall be conducted by Detroit during normal business hours.  [**Exhibit A:  Settlement Agreement, dated June 18, 1996, pg. 8, ¶6(b)**].

    e.  Detroit shall first apply any and all amounts received by it from the above-referenced escrow account to satisfy or reduce any existing arrears and then to current services. In the event that any such payments by Highland Park to Detroit result in a surplus in excess of any   arrears and current services, such surplus then to be returned to Highland Park within 5 days of the end of the month in which such surplus was created.  [**Exhibit A:  Settlement Agreement, dated June 18, 1996, pg. 8, ¶6(c)**].

    f.  In the event that Highland Park fails to pay Detroit for current or future services, Detroit may take any action it deems necessary or appropriate to obtain and ensure payment for the same and to seek any further relief as may be appropriate under the circumstances.  [**Exhibit A:  Settlement Agreement, dated June 18, 1996, pg. 10, ¶11**].

10.    Pursuant to the Settlement Agreement entered into by the parties, the United States District Court for the Eastern District of Michigan, Southern Division (Civil Action No. 92-cv-76775-DT and Civil Action No. 94-cv-73135-DT, Honorable John Feikens, presiding) entered a consent judgment.  [**Exhibit B: Amended Consent Judgment**].

11.    The Amended Consent Judgment confirmed the Settlement Agreement, as follows:

    a.  Detroit, Highland Park and Chrysler, having advised this Court and the U.S. Court of Appeals for the Sixth Circuit that they mutually desire to amicably resolve the disputes among and between them; having entered into a

settlement agreement; having stipulated to the dismissal of the pending
appeals and the entry of this Consent Judgment; and Highland Park, having
adopted a composite water/wastewater rate increase applicable to service
provided by Highland Park to its citizens in the composite amount of 44%
on all bills rendered on or after July 1, 1996, the resulting rate being
$l2.05 per kcf and the resulting wastewater rate being $22.66 per kcf; and the
Court being duly advised in the premises; [**Exhibit B: Amended Consent
Judgment, pg. 3**].

b.  NOW THEREFORE, IT IS ORDERED as follows:

    i.  Pursuant to the Stipulation of Dismissal and Disbursement of Escrow
Funds entered by the U.S Court of Appeals for the Sixth Circuit, and
this Court's Order of Withdrawal and Closure of Escrow Account,
$4.5 million of the funds currently being held by the U.S. District
Court for the Eastern District of Michigan, Southern Division, shall be
disbursed forthwith to the Board of Water Commissioners, City of
Detroit, and the balance of said escrow account, plus any and all
interest accrued thereon (less any fees authorized by the Judicial
Conference of the United States), shall be disbursed forthwith to
Highland Park. [**Exhibit B:  Amended Consent Judgment, pg. 3,
¶1**].

    ii.  The sum of $4.5 million to be received by Detroit from the U.S.
District Court shall be applied as follows [**Exhibit B:  Amended
Consent Judgment, pg. 4, ¶2(a)-(b)**]:

        1.  (a) $701,665 .05 shall be applied to satisfy arrears incurred by
Highland Park to Detroit   for the period December 1994
through March 1996;

        2.  (b) The balance thereof, or $3,799,335.95, shall be applied by
Detroit toward satisfaction of the unpaid balance of the
Judgments entered in   favor of Detroit against Highland Park
in civil actions nos. 92-CV 76775 and 94-CV-73135 referred to
above.

iii. Chrysler shall pay to Highland Park the sum of $2 million upon entry of this Amended Consent Judgment. [**Exhibit B: Amended Consent Judgment, pg. 4, ¶3**].

iv. The Court's October 19, 1994, Writ of Mandamus shall be and hereby is set aside, and paragraphs 2 and 3 of the Court's February 28, 1995 Order For Satisfaction Of Judgments are likewise set aside. [**Exhibit B: Amended Consent Judgment, pg. 4, ¶4**].

v. Highland Park shall maintain the existing escrow account at Omni Bank, account no. 651-000-127. Highland Park shall continue to deposit into said account, on a daily basis, through July 31,1996, 55% of any and all amounts received by it in payment of bills for water or wastewater treatment services rendered by it to its customers. Beginning August 1, 1996 and thereafter, Highland Park shall deposit into said account, on a daily basis, 65% of any and all amounts received by it in payment of bills for water or wastewater treatment services rendered by it to its customers. Any and all amounts so deposited shall be held in trust solely for the benefit of the City of Detroit and shall be paid over to the City of Detroit through its Detroit Water and Sewerage Department, on a monthly basis, on or before the l0th day of each month. [**Exhibit B: Amended Consent Judgment, pgs. 4-5, ¶5(a)**].

12. The amended consent judgment's provision related to the escrow account deposit was agreed to be an accord and satisfaction of existing arrears ***and then current services***.

13. The amended consent judgment and settlement agreement provides that any surplus goes to the City of Highland Park, but does not provide that any deficit be covered by an additional rate increase or from any other source.

14. The only source of payment for water and sewer services is the escrow account Detroit has no further recourse, and therefore may not seek judgment against any other funds of the City of Highland Park.

15.     The settlement agreement provides that the City of Highland Park is required to deposit "***any and all amounts received" but not the amount billed by the City of Detroit.***[1] (emphasis added).

16.     The City of Highland Park City Council has passed a resolution, effective March 12, 2014, to ensure compliance with its duty to collect the rate increase and make necessary deposits, which includes: (1) an amnesty program for customers to pay immediately 50% of arrearages or 80% of arrearages in equal installments over the next 12 months or otherwise have these arrearages added to this tax bill over a period of twelve months; and (2) other provisions to ensure timely payment.[*See* **Exhibit C:  City of Highland Park City Council Resolution**].

<u>**COUNT I**</u>
<u>**DECLARATORY JUDGMENT**</u>

17.     Defendant/Counter-Plaintiff incorporates by reference all preceding allegations as set forth in Paragraphs 1-15 as though fully restated and set forth herein.

18.     In accordance with MCR 2.605 and the other applicable rules relating to declaratory judgments, Defendant/Counter-Plaintiff seeks to have this Honorable Court declare that the parties' respective rights, as contained in the 1996 Settlement Agreement and the Amended Consent Judgment, are in full force and effect.

WHEREFORE, Defendant/Counter-Plaintiff, City of Highland Park, respectfully requests this Honorable Court to declare and award the following relief:

A.      That the rate covenant contained in the settlement agreement and amended consent judgment remains in full force and effect resulting in a water rate at $12.05 per kef and a wastewater rate at $22.66 per kef;

B.      That the method of collection, deposit into an escrow account, and disbursement to the City of Detroit contained in the settlement agreement

---

[1] The 1930's agreements entered into by the parties, superseded by the settlement agreement, make it clear that if a specific amount is required to be paid the City of Detroit knew how to say that.

and amended consent judgment remains in full force and effect resulting in the City of Highland Park's sole obligations for water and sewerage services owed to the City of Detroit and DWSD consisting of the City of Highland Park depositing into said escrow account, on a daily basis, 65% of any and all amounts received by it in payment of bills for water or wastewater treatment services rendered by the City of Detroit and DWSD to its customers, and further that any and all amounts so deposited shall be held in trust solely for the benefit of the City of Detroit and shall be paid over to the City of Detroit through its Detroit Water and Sewerage Department (DWSD), on a monthly basis, on or before the l0th day of each month;

C.     Such other equitable relief as is proper in the facts and circumstances of this case, including costs and attorney fees so wrongfully sustained.


Respectfully Submitted,

_____
s/ Nikkiya T. Branch (P68844)
Todd Russell Perkins (P55623)
Attorney for Defendant
Perkins Law Group, PLLC
615 Griswold, Suite 400
Detroit, MI 48226
(313) 964-1702
Date: March 10, 2014                    Fax (313) 964-1980

# EXHIBIT B

<u>SETTLEMENT AGREEMENT</u>

THIS SETTLEMENT AGREEMENT (hereinafter "Agreement") is made this 18th day of June, 1996, among and between the CITY OF DETROIT, a municipal corporation, acting through its Board of Water Commissioners and the Detroit Water and Sewerage Department (hereinafter "Detroit"), the CITY OF HIGHLAND PARK, a municipal corporation (hereinafter "Highland Park"), and CHRYSLER CORPORATION, a Delaware corporation (hereinafter "Chrysler").

WHEREAS, Detroit provides sewage treatment and disposal services to Highland Park and its citizens, pursuant to a certain Sewage Service Contract dated June 8, 1983, in which Highland Park agreed, among other things, to pay Detroit for those services at such rates as Detroit may establish from time to time; and

WHEREAS, Chrysler and Highland Park entered into an agreement dated December 1, 1993, whereby Chrysler agreed to pay Highland Park $30 million in various installments and the last installment in the amount of $5 million is due on December 1, 1996; and

WHEREAS, on November 22, 1992, Detroit instituted suit against Highland Park in the U.S. District Court for the Eastern District of Michigan, Southern Division, in civil action no. 92-CV-76775 to recover arrears due from Highland Park to Detroit for sewage wastewater treatment services provided to Highland Park by Detroit; and

WHEREAS, Detroit obtained a Judgment against Highland Park in civil action no. 92-CV-76775 on June 28, 1993, in the amount of $8,093,865.02, for wastewater treatment services provided through March 29, 1993; and

WHEREAS, on August 12, 1994, Detroit instituted suit against Highland Park in the U.S. District Court for the Eastern District of Michigan, Southern Division, in civil action no. 94-CV-73135 to recover arrears due from Highland Park to Detroit for sewage wastewater treatment services provided to Highland Park by Detroit after March 29, 1993; and

WHEREAS, on October 19, 1994, the U.S. District Court, in civil action no. 92-CV-76775 issued a Writ of Mandamus requiring Highland Park to place the full amount of the June 28, 1993 Judgment on its next tax roll; and

WHEREAS, Highland Park filed a motion to set aside or, in the alternative, to reconsider the Writ of Mandamus entered on October 19, 1994, which was denied by Order of the District Court dated November 18, 1994; and

WHEREAS, Highland Park filed a motion to set aside the Judgment or the Writ of Mandamus under Rule 60(b)(6) and for an

evidentiary hearing on the merits which was denied by Order of the District Court dated December 22, 1994; and

WHEREAS, on January 12, 1995, Highland Park filed a Notice of Appeal from the December 22, 1994 order of the District Court denying Highland Park's post-judgment motion to set aside the Writ of Mandamus, being Appeal No. 95-1076 in the U.S. Court of Appeals for the Sixth Circuit; and

WHEREAS, Chrysler was granted leave to intervene in civil action no. 92-CV-76775 by Order of the District Court dated February 2, 1995; and

WHEREAS, Detroit obtained a second Judgment against Highland Park in civil action no. 94-CV-73135, on February 21, 1995, in the amount of $2,505,210.44 for wastewater treatment services provided through November 1994; and

WHEREAS, on February 28, 1995, the District Court entered a post-judgment Order For Satisfaction Of Judgments, requiring, among other things, that Highland Park pay to Detroit the amount of $1,800,000 within one week from the date of the order and that Chrysler pay directly to Detroit monies otherwise due to Highland Park under a certain agreement between Chrysler and Highland Park dated December 1, 1993; and

WHEREAS, pursuant to the District Court's February 28, 1995 Order For Satisfaction Of Judgments, Highland Park paid to Detroit $1,800,000 on March 7, 1995; and

WHEREAS, on March 24, 1995, Chrysler filed a Notice of Appeal with the U.S. Court of Appeals for the Sixth Circuit

from the post-judgment Order For Satisfaction Of Judgment of the District Court dated February 28, 1995, being appeal no. 95-1373, alleging among other things, that the District Court's October 19, 1994 Writ of Mandamus was unconstitutional and further that the District Court's order requiring it to pay directly to Detroit the monies otherwise due to Highland Park under the December 1, 1993 agreement was unlawful; and

WHEREAS, Detroit maintains and has maintained that the October 19, 1994 Writ of Mandamus and the February 28, 1995 Order For Satisfaction of Judgments issued by the District Court are lawful, valid orders binding upon both Highland Park and Chrysler and should be affirmed by the U.S. Court of Appeals for the Sixth Circuit; and

WHEREAS, during the pendency of the above-described appeals, the U.S. Court of Appeals for the Sixth Circuit entered an amended order on November 30, 1995, granting a motion by Highland Park and Chrysler to stay that portion of the district court's post-judgment order requiring Chrysler to make direct payment to Detroit monies Chrysler owed Highland Park on the condition that the payments be placed in an escrow account, provided further that alternatively, on the agreement of the parties, the money may be deposited with the Clerk of the U.S. District Court, Eastern District of Michigan, Southern Division (the "Court Escrow"); and

WHEREAS, pursuant to the above-described November 30, 1995 Order of the U.S. Court of Appeals for the Sixth Circuit,

-4-

and with the agreement of the parties, Chrysler has paid into the Court Escrow the sum of $8 million, otherwise due to Highland Park under the December 1, 1993 Agreement between them; and

WHEREAS, the above appeals have been briefed by the parties and oral argument has been heard by the U.S. Court of Appeals for the Sixth Circuit on December 5, 1995; and

WHEREAS, during the pendency of the above-referenced appeals, Highland Park has fallen further into arrears for wastewater treatment services provided by Detroit from December 1994 through the service month of March 1996 (after credit for a payment of $146,817.76 received by Detroit in May, 1996), in the amount of $701,665.05; and

WHEREAS, Detroit, Highland Park and Chrysler mutually desire to amicably resolve the disputes among and between them; to avoid the delays and uncertainties attendant upon further protracted, burdensome and costly litigation; and to provide a means by which Highland Park will be able to satisfy its current and future obligations to Detroit for wastewater treatment services; and

WHEREAS, Chrysler, in order to avoid the risks inherent in litigation and in furtherance of its real estate interests in Highland Park, will (1) provide an advance payment of $2 million on or before June 18, 1996 to Highland Park; (2) stagger payment to Highland Park of the remaining $3 million (both of which payments are due pursuant to the 1993 Agreement between Chrysler

and Highland); and (3) pay $2 million to Detroit not otherwise due or payable to Highland Park.

NOW THEREFORE, it is mutually agreed as follows:

1.    (a)  Highland Park will adopt a water/wastewater rate increase applicable to service provided by Highland Park to its customers in the amount of 14% and 68%, respectively, or a composite increase of 44%. The resulting water rate will be $12.05 per kcf and resulting wastewater rate will be $22.66 per kcf. The rate increase will be effective July 1, 1996 on all bills rendered on or after August 1, 1996. As a condition precedent to Detroit's acceptance of this settlement agreement, Highland Park shall provide Detroit with a certified copy of the City Council resolution enacting such rate increase.

(b)  Highland Park further covenants to take whatever further lawful measures that may be necessary to meet timely its obligations to Detroit under the terms of the June 8, 1983 Sewage Service Contract between them.

2.    Chrysler shall pay to Highland Park the sum of $2 million on or before June 18, 1996.

3.    On or before June 18, 1996, Highland Park shall enter into a Stipulation, in the U.S. Court of Appeals for the Sixth Circuit, with Detroit and Chrysler, to dismiss the appeals pending in that Court and to obtain an order providing that $4.5 million of the funds currently being held in the Court Escrow by the United States District for the Eastern District of Michigan, Southern Division, pursuant to the Court's November 30, 1995 Order, be disbursed to Detroit, and that the

-6-

balance of the Court Escrow, plus any and all interest accrued thereon (less any fees authorized by the Judicial Conference of the United States), be disbursed to Highland Park.

4.   The sum of $4.5 million to be received by Detroit from the U.S. District Court, shall be applied as follows:

(a)   $701,665.05 shall be applied to satisfy arrears incurred by Highland Park to Detroit for the period December 1994 through March 1996;

(b)   The balance thereof, or $3,798,335.95, shall be applied by Detroit toward satisfaction of the unpaid balance of the Judgments entered in favor of Detroit against Highland Park in civil actions nos. 92-CV-76775 and 94-CV-73135 referred to above.

5.   (a) The parties will further stipulate to the entry of an Amended Consent Judgment, in the form and content attached hereto, and entry of an Order of Withdrawal and Closure of Escrow Account, in the U.S. District Court.

(b)   The mutual rights and obligations of the parties to this Settlement Agreement are contractual and not a mere recital, and shall remain in full force and effect, notwithstanding entry of the Consent Judgment.

6.   (a) Highland Park shall maintain the existing escrow account at Omni Bank, account no. 651-000-127. Highland Park shall continue to deposit into said account, on a daily basis, through July 31, 1996, 55% of any and all amounts received by it in payment of bills for water or wastewater treatment services rendered by it to its customers. Beginning

-7-

August 1, 1996 and thereafter, Highland Park shall deposit into said account, on a daily basis, 65% of any and all amounts received by it in payment of bills for water or wastewater treatment services rendered by it to its customers. Any and all amounts so deposited shall be held in trust solely for the benefit of the City of Detroit and shall be paid over to the City of Detroit through its Detroit Water and Sewerage Department, on a monthly basis, on or before the 10th day of each month.

(b) Highland Park shall make the financial and accounting records of its Water and Sewerage Department, including bank statements from the above-referenced escrow account, available for inspection, review and copying by Detroit within 15 days after receipt of a written request for such inspection and review. Any inspection, review and copying shall be conducted by Detroit during normal business hours.

(c) Detroit shall first apply any and all amounts received by it from the above-referenced escrow account to satisfy or reduce any existing arrears and then to current services. In the event that any such payments by Highland Park to Detroit result in a surplus in excess of any arrears and current services, such surplus will be returned to Highland Park within 5 days of the end of the month in which such surplus was created.

7. On or before June 18, 1996, Highland Park shall execute and deliver to Detroit a promissory note in the amount

-8-

of $1 million, payable July 1, 1997 (the "Highland Park" Note). On or before June 18, 1996, Chrysler shall execute and deliver a promissory note to Highland Park in the amount of $1 million payable July 1, 1997 (the "Chrysler A Note"). On or before June 18, 1996, Highland Park shall assign to Detroit all of its right, title and interest in the Chrysler A Note, which assignment shall have immediate effect. Detroit will accept such assignment in full and complete discharge of Highland Park's obligation to it under the Highland Park Note.

8.   On or before June 18, 1996, Chrysler shall execute and deliver to Detroit a promissory note in the amount of $500,000 payable July 1, 1997 (the "Chrysler B Note"), and a promissory note in the amount of $1.5 million payable July 1, 1998 (the "Chrysler C Note").

9.   Upon receipt by Detroit of $4.5 million from the Court Escrow as provided in paragraphs 3 and 4 above, and receipt by Detroit of the Highland Park Note, the Assignment by Highland Park to Detroit of the Chrysler A Note, the Chrysler B Note and the Chrysler C Note, Detroit will file full and complete satisfactions of judgments in civil actions no. 92-CV-76775 and 94-CV-73135.

10.  All written notices or other communications concerning the Settlement Agreement shall be delivered or mailed to the following addresses:

(1) Highland Park:          City Clerk
                            City of Highland Park
                            3 Gerald Avenue
                            Highland Park, Michigan 48203

(2) Detroit:                    Detroit Board of Water
                                Commissioners
                                506 Water Board Building
                                735 Randolph Street
                                Detroit, Michigan 48226

(3) Chrysler:                   Office of the General Counsel
                                Automotive Legal Affairs
                                1000 Chrysler Drive
                                Auburn Hills, Michigan 48326

11. In the event that Highland Park fails to pay Detroit for current or future services, Detroit may take any action it deems necessary or appropriate to obtain and ensure payment for the same and to seek any further relief as may be appropriate under the circumstances.

12. (a) This Settlement Agreement shall take effect upon its execution by the Director of the Detroit Water and Sewerage Department on behalf of the City of Detroit; the Honorable Linsey Porter, Mayor of the City of Highland Park; an authorized representative of Chrysler; approval by the Board of Water Commissioners and the City Council of the City of Detroit; approval by the City Council of the City of Highland Park; entry of the Amended Consent Judgment referred to in paragraph 5 above; receipt by Detroit of the monies referred to in paragraphs 3 and 4 above; and execution and delivery of the promissory notes and assignment referred to in paragraphs 7 and 8 above.

(b) The approval of this Settlement Agreement by the Board of Water Commissioners and the City Council of the City of Detroit shall be obtained on or before June 12, 1996. Detroit will provide to Highland Park a certified copy of the

-10-

resolution of the Board of Water Commissioners and the City Council approving this Settlement Agreement on or before June 17, 1996.

(c)   The approval of this Settlement Agreement by the City Council of the City of Highland Park shall be obtained on or before June 17, 1996.   Highland Park will provide to Detroit a certified copy of the resolution of its City Council approving this Settlement Agreement on or before June 18, 1996.

IN WITNESS WHEREOF, this Agreement has been executed on the date first above written.

CITY OF DETROIT, a
municipal corporation

By: _____
    STEPHEN GORDEN

Its: Director, Detroit Water
     and Sewerage Department

CITY OF HIGHLAND PARK, a
municipal corporation

By: _____
    LINSEY PORTER

Its: _____ MAYOR _____

CHRYSLER CORPORATION, a
Delaware corporation

By: _____
    W. FRANK FOUNTAIN

Its: Vice President
     Government Affairs

CITY OF HIGHLAND PARK, a
municipal corporation

By: _____

Its: _____ CITY CLERK _____

6273

-11-

# EXHIBIT C

## Wholesale Customer Information

The following table lists the wholesale municipal customers, the date of initiation of service with the System and various details of the contracts. For Fiscal Year 2005, these customers provided approximately 50% of the gross operating revenues of the System.

### Summary of Wholesale Sewerage Treatment Contracts

| | Total Billed Flow Mcf FY 2005 | Total Billed Revenue FY 2005 [1] | Contract Date | Term of Contract | Years Remaining in Contract |
|---|---|---|---|---|---|
| Wayne County - Rouge Valley | 3,295,723 | 32,495,316 | 1961 | 50 Years | 7 |
| S. O. C. S. D. D. [2] | 2,848,332 | 27,945,675 | 1962 | 50 Years | 8 |
| Macomb County [3] | 1,931,455 | 25,153,989 | 1967 | 35 Years | |
| Evergreen – Farmington | 2,120,723 | 21,568,976 | 1958 | 50 Years | 4 |
| Clinton - Oakland [3] | 1,503,089 | 16,621,200 | 1968 | 50 Years | 14 |
| Wayne County – Northeast | 1,503,063 | 14,149,866 | 1961 | [6] | |
| Dearborn – West | 596,594 | 5,526,766 | 1961 | 50 Years | 7 |
| Dearborn – East [4] | 544,113 | 5,454,238 | 1957 | [6] | |
| Macomb County - Interim Agreement | 201,955 | 2,630,128 | 1975 | [7] | |
| Highland Park [4] | 220,837 | 4,082,524 | 1949 | [8] | |
| Hamtramck [4, 5] | 82,461 | 1,915,576 | 1941 | [8] | |
| Grosse Pointe Farms [4] | 80,808 | 1,493,343 | 1941 | [8] | |
| Dearborn – Northeast [4] | 41,361 | 992,964 | 1955 | [8] | |
| Grosse Pointe Park | 113,767 | 383,952 | 1940 | [8] | |
| Melvindale | 95,219 | 906,578 | 1977 | 35 Years | 8 |
| Grosse Pointe [4] | 42,253 | 748,242 | 1940 | [8] | |
| Farmington | 69,990 | 663,134 | 1956 | [6] | |
| Center Line | 60,138 | 655,608 | 1960 | [6] | |
| Allen Park | 41,750 | 371,978 | 1974 | 35 Years | 5 |
| Harper Woods | 6,519 | 166,280 | 1958 | [8] | |
| Wayne County #6 [4] | 3,560 | 86,112 | 1950 | 10 Years [8] | |
| Redford Township [4] | 1,888 | 71,924 | 1940 | [8] | |
| Wayne County #3 [4] | 259 | 23,164 | 1950 | 10 Years | |

Mcf = Thousand cubic feet.
[1] Billed revenue does not include surcharges to wholesale area industrial users for pollutant discharges in excess of Bond Ordinance limits or Industrial Waste Control charges.
[2] Southeastern Oakland County Sewage Disposal District.
[3] Billings include transportation charges for the use of system interceptors specially constructed for those areas.
[4] Billed flow does not include estimated storm drainage and infiltration.
[5] Account currently showing delinquent balances.
[6] Minimum term expired; automatic renewal may be canceled with one year's notice.
[7] Original contract for period of 6 years to be renewed annually.
[8] Duration is indefinite with no initial term. Contracts with indefinite term are generally terminable either by mutual consent or within a specified term of years after notice of termination has been given.

Source: The Department

-25-

**Wholesale Customer Information**

The following table lists the wholesale municipal customers, the date of initiation of service with the Sewage Disposal System and various details of the contracts.  Over 57% of the Sewage Disposal System's estimated operating revenues for the Fiscal Year ended June 30, 2008, were derived from wholesale customers and the balance from retail customers and miscellaneous other income sources.

**Summary of Wholesale Sewerage Treatment Contracts**

| | Total Billed Flow Mcf FY 2008 | Total Billed Revenue FY 2008 (1) | Contract Date | Term of Contract | Years Remaining in Contract |
|---|---|---|---|---|---|
| Wayne County - Rouge Valley | 3,477,254 | 36,389,754 | 1961 | 50 Years | 2 |
| Macomb County (3) | 2,121,170 | 32,897,289 | 1967 | 35 Years | |
| S. O. C. S. D. D. (2) | 2,952,352 | 29,656,043 | 1962 | 50 Years | 3 |
| Evergreen – Farmington | 2,316,838 | 25,084,922 | 1958 | 50 Years | |
| Clinton - Oakland (3) | 1,515,812 | 17,317,664 | 1968 | 50 Years | 9 |
| Wayne County – Northeast | 1,518,356 | 15,477,575 | 1961 | (6) | |
| Dearborn – West | 594,472 | 5,848,583 | 1961 | 50 Years | 2 |
| Dearborn - East (4) | 506,640 | 5,728,476 | 1957 | (6) | |
| Highland Park (4) | 177,542 | 3,666,450 | 1949 | (7) | |
| Hamtramck  (4, 5) | 76,157 | 2,257,075 | 1941 | (7) | |
| Grosse Pointe Farms (4) | 79,187 | 1,623,185 | 1941 | (7) | |
| Grosse Pointe Park | 115,930 | 1,204,722 | 1940 | (7) | |
| Dearborn - Northeast (4) | 38,126 | 929,871 | 1955 | (7) | |
| Melvindale | 86,166 | 887,532 | 1977 | 35 Years | 3 |
| Center Line | 64,842 | 763,064 | 1960 | (6) | |
| Farmington | 72,612 | 753,013 | 1956 | (6) | |
| Grosse Pointe (4) | 36,369 | 734,650 | 1940 | (7) | |
| Allen Park | 44,130 | 454,163 | 1974 | 35 Years | |
| Harper Woods | 6,210 | 156,655 | 1958 | (7) | |
| Wayne County #6 (4) | 3,456 | 100,607 | 1950 | 10 Years | |
| Redford Township (4) | 1,557 | 78,078 | 1940 | (7) | |
| Wayne County #3 (4) | 198 | 26,687 | 1950 | 10 Years | |

Mcf = Thousand cubic feet.
(1)  Billed revenue does not include surcharges to wholesale area industrial users for pollutant discharges in excess of Bond Ordinance limits or Industrial Waste Control charges.
(2)  Southeastern Oakland County Sewage Disposal District.
(3)  Billings include transportation charges for the use of system interceptors specially constructed for those areas.
(4)  Billed flow does not include estimated storm drainage and infiltration.
(5)  Account currently showing delinquent balances.
(6)  Minimum term expired; automatic renewal may be canceled with one year's notice.
(7)  Duration is indefinite with no initial term.  Contracts with indefinite term are generally terminable either by mutual consent or within a specified term of years after notice of termination has been given.
Source:  The Department

## Wholesale Sewerage Treatment Contracts

| Wholesale Customers | Total Billed Flow Mcf FY 2011 | Total Billed Revenue FY 2011[1] | Contract Date | Term of Contract |
|---|---|---|---|---|
| OMID | 3,467,283 | 51,216,403 | 2010 | 30 Years |
| Wayne County - Rouge Valley | 3,365,086 | 41,807,733 | 1961 | [5] |
| S. O. C. S. D. D.[2] | 2,972,975 | 35,810,320 | 1962 | 50 Years |
| Evergreen – Farmington | 1,876,971 | 24,951,389 | 1958 | [5] |
| Wayne County – Northeast | 1,620,339 | 19,146,923 | 1961 | [5] |
| Dearborn – West | 567,934 | 6,770,430 | 1961 | [5] |
| Dearborn - East[3],[4] | 489,421 | 6,509,598 | 1957 | [5] |
| Highland Park[3] | 151,053 | 4,490,709 | 1949 | [6] |
| Hamtramck[3] | 64,800 | 3,249,930 | 1941 | [6] |
| Grosse Pointe Farms[3] | 74,990 | 1,857,469 | 1941 | [6] |
| Grosse Pointe Park | 91,839 | 1,151,516 | 1940 | [6] |
| Grosse Pointe[3] | 32,332 | 1,043,154 | 1940 | [6] |
| Dearborn - Northeast[3] | 85,121 | 1,039,811 | 1955 | [6] |
| Melvindale | 71,072 | 868,644 | 1977 | 35 Years |
| Farmington | 57,072 | 800,063 | 2008 | [6] |
| Center Line | 28,775 | 786,684 | 2008 | 15 Years |
| Allen Park | 42,611 | 494,090 | 1974 | [5] |
| Harper Woods[3] | 5,720 | 152,154 | 1958 | [6] |
| Redford Township[3] | 3,230 | 118,285 | 1940 | [6] |
| Wayne County #6[3] | 1,604 | 115,174 | 1950 | [5] |
| Wayne County #3[3] | 286 | 39,926 | 1950 | [5] |

Mcf = Thousand cubic feet.

[1]   Billed revenue does not include surcharges to wholesale area industrial users for pollutant discharges in excess of the Bond Ordinance limits or Industrial Waste Control charges.

[2]   Southeastern Oakland County Sewage Disposal District.

[3]   Billed flow does not include estimated storm drainage and infiltration.

[4]   Account currently showing delinquent balances.

[5]   Minimum term expired; automatic renewal may be canceled with one year's notice.

[6]   Duration is indefinite with no initial term.  Contracts with indefinite term are generally terminable either by mutual consent or within a specified period after a notice of termination has been given.

SOURCE:  The Department.

## The Plant

The Plant, which is among the largest in the world, was originally constructed in 1940 to provide primary treatment of sewage emanating from the City and surrounding communities, and was improved in the mid 1960s with construction of sludge incinerators and filters, and dry ash handling facilities.  The Plant was further improved starting in 1970 when construction commenced on secondary treatment processes, including aerated activated sludge units, final clarifiers and additional primary treatment capacity.

Primary treatment of sewage at the Plant is provided by 16 clarifiers or settling basins.  Secondary treatment is provided in one air aeration basin, three oxygen aeration basins and 25 final clarifiers.  Removal of phosphorus is accomplished with ferrous chloride (pickle liquor) and polymer feeding mechanisms, which operate in conjunction with the primary treatment processes.

Chlorine gas is used for disinfection of effluent prior to discharge into the Detroit River.  Incineration of dewatered sludge occurs in 14 multiple hearth incinerators.  The Department engages contractors for disposal of the ash produced by incineration of sludge cake, for screenings from preliminary treatment, and for disposal of a portion of the sludge cake that is not incinerated.

43

Series 2012A, 2010, 2006D, 2006BC, 2006A, 2005ABC, 2004A, 2003B, 2003A, 2001D1_D2, 2001C1_C1, 2001C2, 2001E, 2001AB, 1999A, 1998AB

**Wholesale Sewerage Treatment Contracts**
(Mcf = thousands of cubic feet)

| Wholesale Customers | Total Billed Flow Mcf FY 2013 | Total Billed Revenue FY 2013 | Contract Date | Term of Contract |
|---|---|---|---|---|
| Oakland Macomb Interceptor District | 3,348,484 | 62,302,424 | 2009 | 30 Years |
| Wayne County- Rouge Valley | 2,792,997 | 44,972,847 | 1961 | 50 Years |
| Oakland County- George W. Kuhn Drain | 2,566,319 | 38,148,325 | 1962 | |
| Oakland County- Evergreen Farmington Dist. | 1,635,006 | 27,556,982 | 1958 | 50 Years |
| Wayne County - Northeast | 1,324,062 | 19,293,968 | 1961 | |
| Dearborn - East | 421,187 | 7,014,200 | 1957 | |
| Dearborn - West | 510,176 | 6,995,894 | 1961 | 50 Years |
| Highland Park | 105,589 | 5,007,724 | N/A | |
| Hamtramck | 62,447 | 3,586,927 | 1941 | |
| Grosse Pointe Farms | 147,651 | 2,462,068 | 1941 | |
| Grosse Pointe Park | 90,065 | 1,273,953 | 1940 | |
| Melvindale | 75,107 | 1,165,444 | 1977 | 35 Years |
| Dearborn - Northeast | 30,127 | 1,155,095 | 1955 | |
| Farmington | 54,361 | 854,232 | 1956 | |
| Center Line | 50,702 | 833,383 | 2008 | 15 Years |
| Grosse Pointe | 25,594 | 758,053 | 1940 | |
| Allen Park | 35,475 | 516,419 | 1974 | 35 Years |
| Harper Woods | 5,814 | 196,010 | 1958 | |
| Wayne County # 6 | 3,292 | 127,713 | 1951 | 10 Years |
| Redford Township | 1,692 | 107,509 | 1940 | |
| Wayne County # 3 | 314 | 41,262 | 1950 | 10 Years |

Series 2014 C1-C8, 2012A, 2010, 2006D, 2006BC, 2006A, 2005ABC, 2004A, 2003B, 2003A, 2001D1_D2, 2001C1_C1, 2001C2, 2001E, 2001AB, 1999A, 1998AB

**Wholesale Sewerage Treatment Contracts**

Fiscal Year Ended June 30

| Wholesale Customers | Total Billed Flow Mcf FY 2014 | Total Billed Revenue FY 2014 | Contract Date | Term of Contract | Years Remaining in Contract |
|---|---|---|---|---|---|
| Oakland Macomb Interceptor District | 3,421,342 | $71,972,397 | 2009 | 30 Years | |
| Wayne County- Rouge Valley | 3,236,511 | $51,181,360 | 1961 | 50 Years | |
| Oakland County- George W. Kuhn Drain | 2,823,146 | $41,658,188 | 1962 | | |
| Oakland County- Evergreen Farmington Dist. | 1,707,570 | $29,198,838 | 1958 | 50 Years | |
| Wayne County - Northeast | 1,344,036 | $20,406,419 | 1961 | | |
| Dearborn - East | 450,602 | $7,174,438 | 1957 | | |
| Dearborn - West | 598,452 | $7,668,651 | 1961 | 50 Years | |
| Highland Park | 109,927 | $6,887,428 | N/A | | |
| Hamtramck | 61,725 | $3,941,094 | 1941 | | |
| Grosse Pointe Farms | 154,088 | $2,502,113 | 1941 | | |
| Grosse Pointe Park | 97,872 | $1,244,951 | 1940 | | |
| Melvindale | 82,489 | $1,275,075 | 1977 | 35 Years | |
| Dearborn - Northeast | 28,485 | $1,425,457 | 1955 | | |
| Farmington | 75,476 | $1,074,471 | 1956 | | |
| Center Line | 54,589 | $900,791 | 2008 | 15 Years | |
| Grosse Pointe | 30,007 | $711,784 | 1940 | | |
| Allen Park | 42,338 | $594,733 | 1974 | 35 Years | |
| Harper Woods | 5,657 | $242,834 | 1958 | | |
| Wayne County # 6 | 3,076 | $138,114 | 1951 | 10 Years | |
| Redford Township | 1,546 | $118,755 | 1940 | | |
| Wayne County # 3 | 268 | 71,951 | 1950 | 10 Years | |

# EXHIBIT D



# CITY OF DETROIT
# SEWAGE DISPOSAL FUND

Basic Financial Statements
and Required Supplementary Information

June 30, 2005 and 2004

(With Independent Auditors' Report Thereon)

**CITY OF DETROIT**
**SEWAGE DISPOSAL FUND**

**Table of Contents**

|  | Page(s) |
|---|---|
| Independent Auditors' Report | 1 – 2 |
| Basic Financial Statements: | |
|     Statements of Net Assets | 3 – 4 |
|     Statements of Revenues, Expenses, and Changes in Fund Net Assets | 5 |
|     Statements of Cash Flows | 6 |
|     Notes to Basic Financial Statements | 7 – 24 |
| Required Supplementary Information (Unaudited) | 25 |



**KPMG LLP**
Suite 1200
150 West Jefferson
Detroit, MI 48226-4429

## Independent Auditors' Report

The Board of Water Commissioners,
   the Honorable Mayor, and
   Members of the City Council
City of Detroit, Michigan:

We have audited the accompanying basic financial statements of the Sewage Disposal Fund (the Fund), an Enterprise fund of the City of Detroit, Michigan (the City), as of and for the years ended June 30, 2005 and 2004, as listed in the table of contents. These financial statements are the responsibility of the Fund's management. Our responsibility is to express an opinion on these financial statements based on our audits.

We conducted our audits in accordance with auditing standards generally accepted in the United States of America and the standards applicable to financial audits contained in *Government Auditing Standards*, issued by the Comptroller General of the United States. Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the financial statements are free of material misstatement. An audit includes consideration of internal control over financial reporting as a basis for designing audit procedures that are appropriate in the circumstances, but not for the purpose of expressing an opinion on the effectiveness of the City's internal control over financial reporting of the Fund. Accordingly, we express no such opinion. An audit also includes examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements. An audit also includes assessing the accounting principles used and the significant estimates made by management, as well as evaluating the overall financial statement presentation. We believe that our audits provide a reasonable basis for our opinion.

As discussed in note 1, the financial statements referred to above present only the Sewage Disposal Fund of the City of Detroit, Michigan and are not intended to present fairly the financial position of the City of Detroit, Michigan as of June 30, 2005 and 2004, and the changes in its financial position, and, where applicable, cash flows for the years then ended, in conformity with U.S. generally accepted accounting principles.

In our opinion, the financial statements referred to above present fairly, in all material respects, the financial position of the Sewage Disposal Fund of the City of Detroit, Michigan as of June 30, 2005 and 2004, and the changes in its net assets and its cash flows for the years then ended, in conformity with U.S. generally accepted accounting principles.

In accordance with *Government Auditing Standards*, we have also issued a report dated March 31, 2006 on our consideration of the Fund's internal control over financial reporting and on our tests of its compliance with certain provisions of laws, regulations, contracts, and grant agreements and other matters. The purpose of that report is to describe the scope of our testing of internal control over financial reporting and compliance and the results of that testing, and not to provide an opinion on the internal control over

KPMG LLP, a U.S. limited liability partnership, is the U.S.
member firm of KPMG International, a Swiss cooperative.



financial reporting or on compliance. That report is an integral part of an audit performed in accordance with *Government Auditing Standards* and should be considered in assessing the results of our audit.

The Fund has not presented Management's Discussion and Analysis, which U.S. generally accepted accounting principles have determined is necessary to supplement, although not required to be part of, the basic financial statements.

The schedule of funding progress on page 25 is not a required part of the basic financial statements but is supplementary information required by U.S. generally accepted accounting principles. We have applied certain limited procedures, which consisted principally of inquiries of management regarding the methods of measurement and presentation of the required supplementary information. However, we did not audit the information and express no opinion on it.

KPMG LLP

March 31, 2006

2

**CITY OF DETROIT**
**SEWAGE DISPOSAL FUND**

Statements of Net Assets

June 30, 2005 and 2004

| Assets | | 2005 | 2004 |
|---|---|---:|---:|
| Current assets: | | | |
| Investments | $ | 47,948,538 | 40,242,687 |
| Due from other funds | | 66,388,078 | 40,413,894 |
| Accounts receivable (including $41,695,332 and $45,030,242 for unbilled sewage services and net of allowance for doubtful accounts of $64,482,340 and $42,901,655 for June 30, 2005 and 2004, respectively) | | 88,501,230 | 112,592,864 |
| Rate adjustments receivable from customers | | 12,174,737 | 21,842,391 |
| Prepaid expenses | | 381,847 | 5,880 |
| Inventories | | 11,173,380 | 10,890,503 |
| Restricted cash | | 12,289,108 | 31,905,215 |
| Restricted investments | | 275,424,204 | 349,717,460 |
| Restricted due from other funds | | 37,638,549 | 20,688,810 |
| Total current assets | | 551,919,671 | 628,299,704 |
| Noncurrent assets: | | | |
| Restricted long-term investments | | 308,770,507 | 261,766,757 |
| Net pension asset | | 7,850,281 | — |
| Noncurrent rate adjustments receivable from customers | | 44,946,430 | 13,430,669 |
| Issuance costs – pension obligation certificates of participation | | 286,646 | — |
| Unamortized bond issuance costs | | 35,433,200 | 31,105,792 |
| Capital assets: | | | |
| Land | | 13,876,751 | 13,876,751 |
| Structures | | 1,143,914,922 | 891,488,855 |
| Interceptors, regulators, and improvements | | 542,769,689 | 532,455,750 |
| Equipment | | 708,031,859 | 572,095,371 |
| Construction work in progress | | 1,219,986,063 | 1,203,738,078 |
| Total capital assets | | 3,628,579,284 | 3,213,654,805 |
| Less accumulated depreciation | | (681,127,715) | (637,571,035) |
| Net capital assets | | 2,947,451,569 | 2,576,083,770 |
| Total noncurrent assets | | 3,344,738,633 | 2,882,386,988 |
| Total assets | $ | 3,896,658,304 | 3,510,686,692 |

3

(Continued)

**CITY OF DETROIT**
**SEWAGE DISPOSAL FUND**

Statements of Net Assets

June 30, 2005 and 2004

| Liabilities and Net Assets | | 2005 | 2004 |
|---|---|---|---|
| Current liabilities: | | | |
| Current liabilities payable from current assets: | | | |
| Book cash overdraft | $ | 758,762 | 134,189 |
| Accounts and contracts payable | | 7,683,870 | 13,928,353 |
| Due to other funds | | 53,133,721 | 34,675,106 |
| Accrued salaries and wages | | 1,629,152 | 1,455,830 |
| Rate adjustments payable to customers | | 4,938,657 | 4,048,127 |
| Accrued workers' compensation | | 895,155 | 1,181,346 |
| Accrued compensated absences | | 5,556,011 | 6,051,544 |
| Other current accrued liabilities | | 754,691 | 360,864 |
| Total current liabilities payable from current assets | | 75,350,019 | 61,835,359 |
| Current liabilities payable from restricted assets: | | | |
| Revenue bonds and revolving loan payable within one year | | 50,035,000 | 44,825,000 |
| Accrued bond interest payable | | 38,654,433 | 25,691,034 |
| Other liabilities | | 89,017 | — |
| Accounts and contracts payable | | 62,465,874 | 78,922,676 |
| Due to other funds | | 11,074,002 | 5,207,146 |
| Total current liabilities payable from restricted assets | | 162,318,326 | 154,645,856 |
| Total current liabilities | | 237,668,345 | 216,481,215 |
| Long-term liabilities: | | | |
| Revenue bonds and revolving loan payable | | 2,609,004,255 | 2,321,850,625 |
| Pension obligation certificates of participation payable | | 8,760,811 | — |
| Deferred swap termination fees | | 2,286,256 | 14,056,137 |
| Rate adjustments payable to customers | | 7,054,465 | 5,329,657 |
| Accrued workers' compensation | | 3,832,814 | 4,025,338 |
| Accrued compensated absences | | 8,361,795 | 6,106,719 |
| Total long-term liabilities | | 2,639,300,396 | 2,351,368,476 |
| Total liabilities | | 2,876,968,741 | 2,567,849,691 |
| Net assets: | | | |
| Invested in capital assets, net of related debt | | 646,808,681 | 610,829,187 |
| Restricted for capital acquisitions and bond payments | | 166,369,102 | 130,303,233 |
| Unrestricted | | 206,511,780 | 201,704,581 |
| Total net assets | $ | 1,019,689,563 | 942,837,001 |

See accompanying notes to basic financial statements.

4

**CITY OF DETROIT**
**SEWAGE DISPOSAL FUND**

Statements of Revenues, Expenses, and Changes in Fund Net Assets

Years ended June 30, 2005 and 2004

|  | 2005 | 2004 |
|---|---|---|
| Operating revenues: | | |
| General customers | $ 146,456,155 | 135,752,132 |
| Suburban customers | 158,120,913 | 170,810,298 |
| City departments | 281,062 | 998,336 |
| Sewage surcharge | 5,914,639 | 3,155,337 |
| Miscellaneous | 2,815,506 | 3,856,227 |
| Total operating revenues, net | 313,588,275 | 314,572,330 |
| Operating expenses before depreciation: | | |
| Sewage treatment plant | 103,536,940 | 108,834,440 |
| Interceptors and regulators | 740,870 | 182,574 |
| Sewer pumping stations | 3,122,298 | 5,076,606 |
| Sewer maintenance and engineering | 12,348,658 | 15,566,222 |
| Combined sewage overflow control basins | 511,252 | 1,141,192 |
| Commercial | 5,698,629 | 6,321,194 |
| Administrative and general | 37,441,707 | 40,624,344 |
| Total operating expenses before depreciation | 163,400,354 | 177,746,572 |
| Operating income before depreciation | 150,187,921 | 136,825,758 |
| Depreciation | 44,053,316 | 50,085,670 |
| Total operating income | 106,134,605 | 86,740,088 |
| Nonoperating revenues (expenses): | | |
| Earnings on investments | 14,930,952 | 8,017,586 |
| Interest expense, net of capitalized interest | (44,205,957) | (59,629,554) |
| Miscellaneous | (7,038) | (4,699,023) |
| Total nonoperating expense | (29,282,043) | (56,310,991) |
| Increase in net assets | 76,852,562 | 30,429,097 |
| Net assets – beginning of year | 942,837,001 | 912,407,904 |
| Net assets – end of year | $ 1,019,689,563 | 942,837,001 |

See accompanying notes to basic financial statements.

5

**CITY OF DETROIT**
**SEWAGE DISPOSAL FUND**

Statements of Cash Flows

Years ended June 30, 2005 and 2004

| | 2005 | 2004 |
|---|---|---|
| Cash flows from operating activities: | | |
| Receipts from customers | $ 326,617,651 | 323,241,563 |
| Internal activity – payments to other funds | (18,598,461) | (3,467,351) |
| Payments to suppliers | (124,774,098) | (109,592,661) |
| Payments to the General Retirement System in excess of annual required contributions | (7,850,281) | — |
| Payments to employees | (68,354,090) | (43,049,784) |
| Net cash provided by operating activities | 107,040,721 | 167,131,767 |
| Cash flows from noncapital and related financing activities: | | |
| Proceeds from issuance of pension obligation certificates of participation | 8,760,811 | — |
| Issuance costs – pension obligation certificates of participation | (286,646) | — |
| Bank overdraft | 758,762 | 134,189 |
| Net cash provided by noncapital and related activities | 9,232,927 | 134,189 |
| Cash flows from capital and related activities: | | |
| Acquisition and construction of capital assets, net | (364,680,084) | (354,410,519) |
| Principal paid on revenue bond maturities and revolving loan | (32,590,000) | (38,745,000) |
| Interest paid on revenue bonds | (82,010,501) | (113,346,957) |
| Principal paid on refunded debt | (108,765,000) | (103,845,000) |
| Proceeds from bond issuance and increase in revolving note payable, net | 426,848,891 | 208,532,328 |
| Swap termination fee | (11,750,000) | 14,056,137 |
| Other receipts | — | 410,035 |
| Unamortized discount and bond issuance cost | 2,542,333 | 2,644,404 |
| Net cash used in capital and related financing activities | (170,404,361) | (384,704,572) |
| Cash flows from investing activities: | | |
| Proceeds from sales and maturities of investments | 651,726,904 | 847,618,237 |
| Purchase of investments | (632,143,250) | (651,726,904) |
| Interest received on investments | 14,930,952 | 8,017,587 |
| Net cash provided by investing activities | 34,514,606 | 203,908,920 |
| Net decrease in cash | (19,616,107) | (13,529,696) |
| Cash at beginning of year | 31,905,215 | 45,434,911 |
| Cash at end of year | $ 12,289,108 | 31,905,215 |
| Reconciliation of operating income to net cash provided by operating activities: | | |
| Operating income | $ 106,134,605 | 86,740,088 |
| Adjustments to reconcile operating income to net cash provided by operating activities | | |
| Depreciation | 44,053,316 | 50,085,670 |
| Provision for uncollectible accounts | 21,580,685 | 5,237,411 |
| Changes in certain assets and liabilities: | | |
| (Increase) decrease in accounts receivable | 2,510,949 | (10,074,723) |
| Increase in rate refund receivable from customers | (21,982,296) | (6,468,196) |
| (Increase) decrease in prepaid expenses | (375,967) | 29,477,360 |
| (Increase) decrease in inventories | (282,877) | 3,365,569 |
| Increase in net pension asset | (7,850,281) | — |
| Increase (decrease) in accounts and contracts payable | (22,701,285) | 5,412,445 |
| Increase in accrued salaries and wages | 173,323 | 257,530 |
| Increase in rate refund payable to customers | 2,615,338 | 4,041,931 |
| Increase in other accrued liabilities and accrued compensated absences and accrued workers' compensation | 1,763,672 | 2,524,033 |
| Net change in due (to) from other funds | (18,598,461) | (3,467,351) |
| Net cash provided by operating activities | $ 107,040,721 | 167,131,767 |

See accompanying notes to basic financial statements.

6



**CITY OF DETROIT
SEWAGE DISPOSAL FUND**

Basic Financial Statements

June 30, 2014

(With Independent Auditors' Report Thereon)

**CITY OF DETROIT**
**SEWAGE DISPOSAL FUND**

**Table of Contents**

|  | Page(s) |
|---|---|
| Independent Auditors' Report | 1–2 |
| Basic Financial Statements: |  |
| Statement of Fund Net Position | 3-4 |
| Statement of Revenues, Expenses, and Changes in Fund Net Position | 5 |
| Statement of Cash Flows | 6 |
| Notes to Basic Financial Statements | 7–72 |



**KPMG LLP**
Suite 1900
150 West Jefferson
Detroit, MI 48226

**Independent Auditors' Report**

The Board of Water Commissioners,
   the Honorable Mayor Michael E. Duggan, and
   the Honorable Members of the City Council
City of Detroit, Michigan:

We have audited the accompanying financial statements of the Sewer Fund (the Fund), an enterprise fund of the City of Detroit, Michigan (the City), as of and for the year ended June 30, 2014, and the related notes to the financial statements, which collectively comprise the Fund's basic financial statements as listed in the table of contents.

*Management's Responsibility for the Financial Statements*

Management is responsible for the preparation and fair presentation of these financial statements in accordance with U.S. generally accepted accounting principles; this includes the design, implementation, and maintenance of internal control relevant to the preparation and fair presentation of financial statements that are free from material misstatement, whether due to fraud or error.

*Auditors' Responsibility*

Our responsibility is to express an opinion on these financial statements based on our audit. We conducted our audit in accordance with auditing standards generally accepted in the United States of America. Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the financial statements are free from material misstatement.

An audit involves performing procedures to obtain audit evidence about the amounts and disclosures in the financial statements. The procedures selected depend on the auditors' judgment, including the assessment of the risks of material misstatement of the financial statements, whether due to fraud or error. In making those risk assessments, the auditor considers internal control relevant to the entity's preparation and fair presentation of the financial statements in order to design audit procedures that are appropriate in the circumstances, but not for the purpose of expressing an opinion on the effectiveness of the entity's internal control. Accordingly, we express no such opinion. An audit also includes evaluating the appropriateness of accounting policies used and the reasonableness of significant accounting estimates made by management, as well as evaluating the overall presentation of the financial statements.

We believe that the audit evidence we have obtained is sufficient and appropriate to provide a basis for our audit opinion.

*Opinion*

In our opinion, the financial statements referred to above present fairly, in all material respects, the financial position of the Sewer Fund as of June 30, 2014, and the changes in its financial position, and its cash flows for the year then ended in accordance with U.S. generally accepted accounting principles.

KPMG LLP is a Delaware limited liability partnership, the U.S. member firm of KPMG International Cooperative ("KPMG International"), a Swiss entity.



***Emphasis of Matter***

*Emphasis of Matter Regarding Bankruptcy Filing*

As discussed in Note 17 to the financial statements, on July 18, 2013 the City filed a voluntary petition under Chapter 9 of the Bankruptcy Code. On November 12, 2014, the Bankruptcy Court entered an order confirming the City's Eighth Amended Plan of Adjustment ("Plan"). The Plan became effective in accordance with its terms on December 10, 2014, and the City exited bankruptcy. Our opinion is not modified with respect to this matter.

*Emphasis of Matter Regarding Adoption of New Accounting Pronouncement*

As discussed in Note 2 (q) to the financial statements, in 2014, the Fund adopted the provisions of Governmental Accounting Standards Board (GASB) Statement No. 65, *Items Previously Reported as Assets and Liabilities*. As a result, beginning net position was restated as bond issuance costs, except any portion related to prepaid insurance costs, are now recognized as an expense in the period incurred. Bond issuance costs were previously reported as an asset and recognized as an expense in a systematic and rational manner over the duration of the related debt. Our opinion is not modified with respect to this matter.

*Emphasis of Matter Regarding Fund Financial Statements*

As discussed in note 1, the basic financial statements present only the Sewer Fund and do not purport to, and do not, present fairly the financial position of the City of Detroit, Michigan, as of June 30, 2014, the changes in its financial position, or, where applicable, its cash flows for the year then ended in accordance with accounting principles generally accepted in the United States of America. Our opinion is not modified with respect to this matter.

***Other Matters***

*Required Supplementary Information*

Management has omitted management's discussion and analysis, schedules of employer contributions, and schedules of funding progress that U.S. generally accepted accounting principles require to be presented to supplement the basic financial statements. Such missing information, although not a part of the basic financial statements, is required by the Governmental Accounting Standards Board who considers it to be an essential part of financial reporting for placing the basic financial statements in an appropriate operational, economic, or historical context. Our opinion on the basic financial statements is not affected by this missing information.



Detroit, Michigan
May 29, 2015

2

**CITY OF DETROIT**
**SEWAGE DISPOSAL FUND**

Statement of Fund Net Position

June 30, 2014

| | | |
|---|---|---:|
| Current assets: | | |
| Cash and cash equivalents | $ | 96,127,434 |
| Investments | | 20,771,621 |
| Accounts receivable: | | |
| Billed accounts receivable | | 164,108,845 |
| Unbilled accounts receivable | | 70,590,364 |
| Other accounts receivable | | 6,422,001 |
| Allowance for doubtful accounts | | (108,044,238) |
| Total accounts receivable, net | | 133,076,972 |
| Restricted: | | |
| Cash and cash equivalents | | 152,554,687 |
| Investments | | 19,487,688 |
| Due from other funds | | 7,435,471 |
| Due from fiduciary funds | | 1,639,051 |
| Inventories | | 9,384,419 |
| Prepaid expenses and other current assets | | 787,731 |
| Total current assets | | 441,265,074 |
| Noncurrent assets: | | |
| Restricted: | | |
| Cash and cash equivalents | | 52,137,290 |
| Investments | | 68,058,347 |
| Other receivables | | 7,523,336 |
| Net pension asset | | 90,144,213 |
| Prepaid insurance on debt | | 20,670,224 |
| Capital assets: | | |
| Assets not subject to depreciation | | 289,850,348 |
| Assets subject to depreciation, net | | 2,548,144,492 |
| Total capital assets, net | | 2,837,994,840 |
| Total noncurrent assets | | 3,076,528,250 |
| Total assets | $ | 3,517,793,324 |
| Deferred outflows of resources | | 214,536,819 |

See accompanying notes to basic financial statements.

**CITY OF DETROIT**
**SEWAGE DISPOSAL FUND**

Statement of Fund Net Position

June 30, 2014

| | | |
|---|---|---:|
| Current liabilities: | | |
| Accounts and contracts payable | $ | 63,013,252 |
| Accrued salaries and wages | | 620,423 |
| Due to other funds | | 22,743,136 |
| Due to fiduciary funds | | 1,365,525 |
| Revenue bonds and state revolving loans | | 86,495,000 |
| Pension obligation certificates of participation | | 2,041,421 |
| Debt due to insurer subrogee | | 3,876,257 |
| Other accrued liabilities | | 16,003,280 |
| Accrued interest payable | | 71,473,338 |
| Accrued other postemployment benefits | | 1,111,555 |
| Accrued compensated absences | | 1,565,150 |
| Accrued workers' compensation | | 507,000 |
| Claims and judgments | | 1,527,458 |
| Total current liabilities | | 272,342,795 |
| Long-term liabilities: | | |
| Revenue bonds and state revolving loans, net | | 3,259,316,826 |
| Pension obligation certificates of participation, net | | 83,802,009 |
| Accrued other postemployment benefits | | 254,116 |
| Accrued compensated absences | | 3,178,793 |
| Accrued workers' compensation | | 3,185,000 |
| Other accrued liabilities | | 15,217,513 |
| Claims and judgments | | 1,177,500 |
| Derivative instruments – swap liability | | 19,073,402 |
| Total long-term liabilities | | 3,385,205,159 |
| Total liabilities | | 3,657,547,954 |
| Deferred inflows of resources | | 3,738,739 |
| Fund net position: | | |
| Net investment in capital assets | | 22,834,100 |
| Restricted: | | |
| Restricted for capital acquisitions | | 44,123,303 |
| Restricted for debt service | | 176,641,371 |
| Unrestricted deficit | | (172,555,324) |
| Total fund net position | $ | 71,043,450 |

See accompanying notes to basic financial statements.

4

**CITY OF DETROIT
SEWAGE DISPOSAL FUND**

Statement of Revenues, Expenses, and Changes in Fund Net Position

Year ended June 30, 2014

| | |
|---|---:|
| Operating revenues: | |
| General customers | $ 207,522,787 |
| Suburban customers | 257,264,293 |
| City departments | 569,361 |
| Sewage surcharge | 5,830,344 |
| Miscellaneous | 4,584,059 |
| Total operating revenues | 475,770,844 |
| Operating expenses: | |
| Wastewater treatment plant | 121,892,512 |
| Pumping stations | 10,847,365 |
| Combined sewage overflow control basins | 6,818,858 |
| Interceptors | 2,262,504 |
| Sewer | 11,816,146 |
| Industrial waste control | 3,759,584 |
| Meters | 16,977 |
| Commercial | 6,423,961 |
| Administrative and general | 42,213,604 |
| Other items: | |
| Net OPEB obligation | 1,121,642 |
| Nonrecurring capital asset adjustment | 21,996,104 |
| Total operating expenses before depreciation | 229,169,257 |
| Depreciation | 118,409,025 |
| Total operating expenses | 347,578,282 |
| Operating income | 128,192,562 |
| Nonoperating revenues (expenses): | |
| Investment earnings (losses): | |
| Earnings on investment activity | 2,832,781 |
| Change in fair value of derivatives | (491,902) |
| Interest expense, net of capitalized interest | (135,145,219) |
| Amortization of bond issuance costs and deferrals | (13,963,557) |
| Miscellaneous expenses | (11,573,635) |
| Total nonoperating expenses net | (158,341,532) |
| Decrease in fund net position before special item | (30,148,970) |
| Special item – OPEB plan termination | 70,201,066 |
| Increase in fund net position | 40,052,096 |
| Fund net position – beginning of year, restated (See note 2(q)) | 30,991,354 |
| Fund net position – end of year | $ 71,043,450 |

See accompanying notes to basic financial statements.

5

**CITY OF DETROIT**
**SEWAGE DISPOSAL FUND**

Statement of Cash Flows

Year ended June 30, 2014

| | | |
|---|---:|---:|
| Cash flows from operating activities: | | |
| Receipts from customers | $ | 475,207,954 |
| Internal activity – payments to other funds | | (21,977,299) |
| Payments to suppliers | | (105,305,127) |
| Payments to employees | | (64,948,994) |
| Net cash provided by operating activities | | 282,976,534 |
| Cash flows from noncapital financing activities: | | |
| Interest paid on pension obligation certificates of participation | | (2,494,649) |
| Miscellaneous nonoperating expenses | | (11,573,635) |
| Net cash used in noncapital financing activities | | (14,068,284) |
| Cash flow from capital and related financing activities: | | |
| Acquisition and construction of capital assets | | (118,350,724) |
| Principal paid on revenue bonds and state revolving loans | | (78,245,000) |
| Interest paid on revenue bonds and state revolving loans | | (145,306,061) |
| Proceeds from issuance of state revolving loans | | 12,705,851 |
| Net cash used in capital and related financing activities | | (329,195,934) |
| Cash flows from investing activities: | | |
| Proceeds from sales and maturities of investments | | 84,773,753 |
| Purchase of investments | | (60,523,125) |
| Interest received on investments | | 1,135,070 |
| Net cash provided by investing activities | | 25,385,698 |
| Net decrease in cash and cash equivalents | | (34,901,986) |
| Cash and cash equivalents at beginning of year, as adjusted | | 335,721,397 |
| Cash and cash equivalents at end of year | $ | 300,819,411 |
| Reconciliation of operating income to net cash provided by operating activities: | | |
| Operating income | | 128,192,562 |
| Adjustments to reconcile operating income to net cash provided by operating activities: | | |
| Depreciation | | 118,409,025 |
| Nonrecurring capital asset adjustment | | 21,996,104 |
| Loss on disposal of capital assets | | 10,573,894 |
| Changes in assets and liabilities: | | |
| Accounts receivable | | (562,890) |
| Due from other funds | | (7,435,471) |
| Inventories | | 378,384 |
| Prepaid expenses | | 65,461 |
| Net pension asset | | (3,895,750) |
| Accounts and contracts payable | | 12,524,879 |
| Accrued salaries and wages | | 17,703 |
| Due to other funds | | (14,541,828) |
| Due to fiduciary funds | | 1,136,329 |
| Other accrued liabilities, accrued compensated absences, and accrued workers' compensation | | 12,481,532 |
| Other postemployment benefits obligation | | 1,121,642 |
| Claims and judgments payable | | 2,514,958 |
| Net cash provided by operating activities | $ | 282,976,534 |
| Noncash capital financing activities: | | |
| Fair value of derivatives | $ | 491,902 |
| Prior period adjustment | | 21,367,325 |
| Special item – OPEB plan termination | | (70,201,066) |

See accompanying notes to basic financial statements.

6